## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V., | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | |
| GRUPO TRADECO, S.A. DE C.V., TRADECO INFRAESTRUCTURA, S.A. DE C.V. | § § § § | |
| *Defendants*, | § § | Case No. _____ |
| vs. | § § | Admiralty |
| TRADECO INFRAESTRUCTURA, S.A. DE C.V., TRADECO INFRASTRUCTURE, INC., TRADECO INGENIERIA, S.A. DE C.V., INNOVACIONES TÉCHNICAS EN CIMENTACIÓN, S.A. DE C.V., TCO CONCRETE, INC., TEXAS DEPARTMENT OF TRANSPORTATION | § § § § § § § § § | |
| *Garnishees*. | § § | |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT &
## APPLICATION FOR INTERIM RELIEF

Plaintiff Ranger Offshore Mexico, S. de R.L. de C.V. ("*Ranger*") complains of Defendant

Grupo Tradeco, S.A. de C.V. ("*Grupo Tradeco*") and Defendant Tradeco Infraestructura, S.A. de

C.V. ("*Tradeco*").  Ranger also provides formal notice to and service on Garnishees as follows:

Garnishee-Defendant Tradeco, Garnishee Tradeco Infrastructure, Inc., Garnishee Tradeco

Ingenieria, S.A. De C.V., Garnishee Innovaciones Téchnicas en Cimentación, S.A. de C.V., TCO

Concrete, Inc., Texas Department of Transportation (collectively, "*Garnishees*").

### INTRODUCTION

1.      This is an action in admiralty. *See* FED. R. CIV. PRO. 9(h); 28 U.S.C. §1333.

2.      Ranger's claims against Grupo Tradeco are subject to this Court's admiralty jurisdiction.

3.      Ranger's pre-arbitration claims against Tradeco are subject to this Court's admiralty jurisdiction.

4.      Ranger seeks interim relief in the form of maritime attachment under Rule B of the Supplemental Rules. *See* FED. R. CIV. PRO., SUPP. B.

5.      Ranger seeks to attach  assets of Tradeco in advance of its arbitration proceeding.

6.      Ranger anticipates attachment of Tradeco's assets will occur in ancillary proceedings in other districts outside the Southern District of Texas.

7.      Ranger seeks to attach assets of Grupo Tradeco in advance of a determination of its other claims that are appropriately before this Court.

### PARTIES

8.      Plaintiff Ranger Offshore Mexico, S. de R.L. de C.V. is a Mexican corporation with its principal place of business in Ciudad del Carmen, Mexico.

9.      Defendant Grupo Tradeco, S.A. de C.V. is a Mexican corporation with its principal place of business in Mexico City, Mexico.

10.      Defendant-Garnishee Tradeco Infraestructura, S.A. de C.V. is a Mexican corporation with its principal place of business in Mexico City, Mexico.  It sometimes does business as Tradeco Infraestructura, Inc.

11.      Garnishee Tradeco Infrastructure, Inc. is a Texas Corporation with its principal place of business in The Woodlands, Texas, located at 10077 Grogans Mill Road, Suite 540, The

Woodlands, Texas 77380. The Garnishee also sometimes does business as Best Recruiting Strategies.

12.     Garnishee Tradeco Ingenieria, S.A. De C.V. is a Mexican corporation with its principal place of business in Mexico City, Mexico. It sometimes does business as Tradeco Ingenieria, Inc.

13.     Garnishee Innovaciones Téchnicas en Cimentación, S.A. de C.V. is a Mexican corporation with its principal place of business in Mexico City, Mexico.

14.     Garnishee TCO Concrete, Inc. is a Delaware corporation with its principal place of business in Houston, Texas, located at 11913 FM 529 Road, Houston, Texas 77041.

15.     Garnishee Texas Department of Transportation ("*TxDOT*") is a public entity of the State of Texas.  TxDOT is a Garnishee because it has awarded multiple civil construction contracts to Tradeco.

JURISDICTION AND VENUE

16.     The matter sounds in the Court's admiralty jurisdiction. *See* FED. R. CIV. PRO. 9(h); 28 U.S.C. §1333.

17.     Venue is proper in Houston, Texas (and, therefore, the Southern District of Texas) because Ranger, Tradeco, and Grupo Tradeco agreed to submit their disputes to a forum of competent jurisdiction in the venue of Houston, Texas.[1]

---

[1]     Attached as "**Exhibit A-1**" is a true and correct copy of the BIMCO Time Charter Party for Offshore Service Vessels between Ranger and Tradeco for the charter of the *MV Lewek Toucan* and dated January 31, 2014 (the "*Charter Party Agreement*").  Box 34 reflects "Houston" as the place of dispute resolution.

Attached as "**Exhibit A-2**" is a true and correct copy of the BIMCO Charter Party Guarantee - Charterers' Guarantee of Sums Payable and Liabilities under Time Charter Party between Ranger and Grupo Tradeco dated May 27, 2014 (the "*Guarantee*").  Box 8 of the Guarantee reflects "Houston, Texas for jurisdiction and venue."

## CONDITIONS PRECEDENT

18.    All conditions precedent have occurred or been performed. *See* FED. R. CIV. PRO.

9(c).  Specifically, written demand for payment was provided on January 26, 2015.[2]

## STATEMENT OF FACTS

### *Principal Parties*

19.    Formed in 2010, Ranger provides marine and subsea construction support

services to the offshore oil and gas industry.  Its customers include Subsea 7 and Swiber Limited.

20.    Ranger is a wholly-owned subsidiary of Ranger Offshore, Inc. (collectively, the

"*Ranger Companies*").

21.    The Ranger Companies' core business is to provide marine construction and

diving services to its customers, including pipeline repairs and abandonments, wellhead repairs

and abandonments, conductor stub and pile removals, underwater burning and welding, rig

support and rig move site surveys, debris removal and salvage, pipeline and platform anode

retrofits, and hot taps and subsea valve operations.

22.    The Ranger Companies often utilize a portable saturation diving system that

allows them to provide offshore diving services at greater depths.  They own four saturation

diving packages and ten service diving packages that they use for the benefit of their customers.

In connection with these packages, they own and operate four-point anchor vessels and

dynamically positioned dive support vessels.

23.    Tradeco is a wholly-owned subsidiary of Grupo Tradeco.

24.    Grupo Tradeco is a parent company to many other wholly-owned subsidiaries.

---

[2]    Attached as "**Exhibit A-3**" is a true and correct copy of a letter dated January 26, 2015 (the "*Demand*").
Per the terms of the Guarantee, "[Grupo Tradeco] unconditionally and irrevocably guarantees (as primary
obligor and not by way of secondary liability only) to pay any Guaranteed Amount within ten (10) banking
days (in the [Grupo Tradeco's] county of residence) following a Demand . . . ." (Ex. A-2).

25.     The Grupo Tradeco companies, including Tradeco, engage in construction and infrastructure development.   They are involved in the construction of highways, bridges, hospitals, penitentiary centers, industrial plants, office buildings, EPC projects, tunnels, infrastructure development, and the rendering of off-shore services. (http://www.tradeco.com/en/us.html).

26.     Grupo Tradeco's stated mission is to have an active participation in the coordination, planning, and execution of infrastructure projects, in both private and public sectors, among which are highway and railways projects, containment and generation projects, and ports, developing processes that allow the optimization of resources and the continuous improvement of their operations, both domestic and abroad.

27.     Grupo Tradeco has few employees.

28.     Tradeco has over 5,000 employees.

29.     Tradeco does business in Texas.

30.     Tradeco has won bids with TxDOT for infrastructure development work in Texas.

31.     Tradeco won a bid to construct new roadway lanes for U.S. Highway 290, bidding 153 million USD.

32.     On this project to construct new roadway lanes for U.S. Highway 290, it has been paid, at least 55 million USD.

33.     Tradeco won a bid as the lead contractor for an expansion/repair project of I-10 from Resler Drive to Executive Center Boulevard in El Paso, Texas, bidding 153 million USD.

34.     Tradeco also undertook the widening and reconstruction of 8.79 miles of Highway 437 in Bell County, Texas.

35.     Tradeco also worked on the widening from two to four lanes of Concord Street in Beaumont, Texas from Lucas Drive to Highway SH 105.

36.     Tradeco also won the bid to construct the 2.19 mile IH-610 to IH-45 interchange.

37.     Upon information and belief, Tradeco's officers and directors are as follows:

    a.   Federico Alberto Martínez Urmeneta, President;

    b.   Porfirio Fernando Beristáin Gómez, Vice President;

    c.   Fernando Beristáin Rodríguez, Vice President;

    d.   Jorge Martin Herrera Montano, Director;

    e.   Yves Loustalot-Laclette Macías, Vice President;

    f.   Hilario Orozco Unzueta, Vice President;

    g.   Raul Reza Navarrete, Director;

    h.   Sergio Toscano Del Olmo, Vice President;

    i.   Federico Torres Jaime, Technical Manager; and

    j.   Sergio Arturo Gomez Diaz, Coordinator.

38.     Upon information and belief, Grupo Tradeco's officers and directors are as follows:

    a.   Federico Alberto Martinez Urmeneta, President and Chairman of the Board of Directors;

    b.   David Ignacio Espinosa Guzmán, Vice President;

    c.   Carlos González Macías, Secretary;

    d.   Carlos Rene Cortés Gallardo, Chief Counsel;

    e.   Carlost Alfredo Gaytán Bordón, General Counsel;

    f.   Fernando Beristáin Rodríguez, Finance Director; and

       g.  Gonzalo Parra Palacios, Manager.

39.    Upon information and belief, the following entities are also wholly-owned subsidiaries of Grupo Tradeco:

       a.  Tradeco Infrastructure, Inc.;

       b.  Tradeco Ingenieria, S.A. De C.V.;

       c.  Innovaciones Téchnicas en Cimentación, S.A. de C.V.;

       d.  TCO Concrete, Inc.;

       e.  Tradeco Industrial Supply LLC;

       f.  Tradeco Urbana S.A. de C.V.;

       g.  Innovaciones Técnicas de Cimentación S.A. de C.V.;

       h.  Compañía Mexicana de Taxis Aéreos S.A. de C.V.;

       i.  Avance Concesionairias S.A. de C.V.;

       j.  Operaciones y Rentas Costa Afuera S.A. de C.V.;

       k.  Cometa USA, Inc.;

       l.  Tradeco Internacional;

       m.  BestLabor S.A. de C.V.; and

       n.  Marcadores de Pavimento S.A. de C.V.

### *The Charter Party Agreement*

40.    Ranger and Tradeco executed the Charter Party Agreement on January 31, 2014. (Ex. A-1, at 1).

41.    Under the Charter Party Agreement, Tradeco chartered from Ranger the *M/V Lewek Toucan* (the "*Vessel*"), a multipurpose offshore support vessel with dive support capabilities and totaling 88.4 meters in length. (Ex. A-1, at 1, 16).

42.     The hire period was for one hundred twenty (120) days, with delivery of the Vessel to Tradeco in Ingleside, Texas. (Ex. A-1, at 1).

43.     The regular charter hire is 98,000 USD per day, excluding value-added tax. (Ex. A-1, at 1).

44.     In addition to the charter hire, the parties agreed that Tradeco would reimburse or pay other enumerated costs expected to be incurred in connection with the charter. (*See generally* Ex. A-1).

45.     The charter period began at Noon on Sunday, February 3, 2014. (Ex. A-1, at 20).

46.     From Noon on Sunday, February 3, 2014 until the Vessel reached the Carmen sea-buoy, Ranger and Tradeco agreed to a reduced charter hire of 88,000 USD per day. (Ex. A-1, at 20).

47.     Ranger timely delivered the Vessel to Tradeco at Ingleside, Texas.

48.     Tradeco accepted delivery of the Vessel at Ingleside, Texas without taking exception.

49.     The Charter Party Agreement does not limit the use of the Vessel on behalf of any Tradeco customer or collection of customers.

50.     The Charter Party Agreement also does not require a specific location for Tradeco's use of the Vessel.

51.     Delivery of the Vessel was not contingent on acceptance of the Vessel by Petróleos Mexicanos or its subsidiaries/affiliates ("*Pemex*").

52.     Tradeco's payment obligations under the Charter Party Agreement are not contingent on payment to Tradeco by Pemex.

53.     The Charter Party Agreement "is the entire agreement of the parties, which supersedes all previous written or oral understandings and which may not be modified except by a written amendment signed by both parties." (Ex. A-1, at para. 38).

### Ongoing Late Payment and Empty Promises

54.     Tradeco continually failed to timely pay Ranger for hire and other payments due for the charter of the Vessel.

55.     Under the Charter Party Agreement, Tradeco agreed to pay 3.4 million USD to Ranger on February 4, 2014. (Ex. A-1, at 21).

56.     Tradeco missed this February 4, 2014 deadline.  Instead, on February 7, 2014, Tradeco paid only 3,000,440.46 USD.[3]

57.     On February 19, 2014, Tradeco requested additional time to pay the approximately remaining 300,000 USD of the initial payment promised by Tradeco.

58.     Tradeco would not actually make additional payment until over five months later.

59.     As of April 14, 2014 at 11:59 P.M., the outstanding balance of the charter hire and related ancillary charges totaled 5,948,558.15 USD.

60.     Tradeco agreed to make a "good faith payment" to Ranger of 1 million USD no later than April 16, 2014.  Tradeco failed to do so.

61.     Tradeco agreed to make a "good faith payment" to Ranger of 4.8 million USD no later than May 15, 2014.  Tradeco failed to do so.

62.     Tradeco agreed to pay 500,000 USD by June 4, 2014.  Tradeco failed to do so.

---

[3]     Historically, Tradeco paid Ranger in Mexican pesos. For the benefit of the Court and to avoid confusion, these amounts are converted to U.S. Dollars ("*USD*").  Any minor inconsistencies in conversion rate shall not be deemed an admission by Ranger for the benefit of either party.

63.    Tradeco again agreed to pay 500,000 USD—this time by June 20, 2014.  Tradeco failed to do so.

64.    During the course of their relationship, Tradeco continually made empty promises of payments that were past due.

65.    On April 7, 2014, David Ignacio Espinosa Guzmán, Grupo Tradeco's Vice President, wrote "[Tradeco] will honor those commitments to be made."

66.    On May 23, 2014, Eduardo Andrés Benton Zavala, a representative of Tradeco and/or Grupo Tradeco, wrote "our main interest at last is change you're [sic] perception of us with this commitment and change the page."

67.    On May 28, 2014, in connection with execution of the Guarantee (*see infra* paras. 73 to 75), Eduardo Andrés Benton Zavala wrote "we're showing you the great effort from us and that we trust in this relationship in order to continue in the best terms for everyone."

### *Suspension of the Charter and Execution of Additional Documents*

68.    In March 2014, the underlying work for which Tradeco chartered the Vessel was allegedly suspended.[4]

69.    Tradeco requested Ranger to temporarily suspend the Charter Party Agreement and to seek to charter the Vessel elsewhere for other work.

70.    Ranger agreed to suspend the Charter Party Agreement and to then charter the Vessel to Subsea 7[5] for 85 days beginning April 15, 2014, with an option to extend an additional 65 days.[6]

---

[4]    Tradeco claims to have chartered the Vessel expecting to do work for Pemex.  However, Tradeco's obligations under the Charter Party Agreement were never contingent on this work.

[5]    Subsea 7 is a global contractor with a focus on seabed-to-surface engineering, construction and services to the offshore industry.

[6]    These terms are reflected in the Amendment No. 1 to the Charter Party Agreement, discussed *infra*.

71.     Subsea 7 chartered the Vessel to do work for Pemex during the period of suspension.

72.     The suspension of the Charter Party Agreement temporarily suspended Tradeco's incurrence of charterhire and related expenses under the Charter Party Agreement.

73.     Due to the events referenced above <u>and</u> the outstanding monies owed by Tradeco to Ranger, the parties executed additional documents to resolve Tradeco's outstanding obligations.

74.     The Guarantee was executed on May 27, 2014. (Ex. A-2).

75.     The Guarantee was executed by Tradeco's parent company, Grupo Tradeco.

76.     Ranger and Tradeco also executed Amendment No. 1 to the Charter Party Agreement on June 13, 2014 (the "*Amendment*").[7]

77.     The Amendment memorialized the parties' agreement related to the suspension of the Charter Party Agreement.

78.     The Amendment acknowledged an outstanding balance under the Charter Party Agreement as totaling 5,948,558.15 USD on April 14, 2014 at 11:59 P.M.

79.     During the suspension, Tradeco made one payment on July 14, 2014 for 200,000 USD.

### *Continuation of the Charter*

80.     Under the Amendment, Ranger promised to end the suspension of the Charter Party Agreement between August 10, 2014, and September 7, 2014 (hereinafter the "*second*

---

[7]     A true and correct copy of the Amendment is attached hereto as "**Exhibit A-4**."

*delivery*") at which time the Vessel would return to "on hire" status under the Charter Party Agreement. (Ex. A-4, at 2).

81.    Ranger notified Tradeco that second delivery would occur August 15, 2014 at 12:01 a.m.

82.    Tradeco's payment obligations beginning at second delivery were not subject to Pemex's acceptance of the Vessel.

83.    In advance of the second delivery, Ranger arranged for a survey of the Vessel.

84.    Ranger invited Tradeco to attend the survey of the Vessel.

85.    This survey took place August 15-16, 2014.

86.    Tradeco participated in the survey.

87.    On August 18, 2014, Tradeco claimed that the Vessel was not permitted by Pemex to return to the project because of its condition.

88.    Tradeco and Ranger arranged a suitability survey to be conducted on the Vessel by London Offshore Consultants Mexico, S.A. de C.V. on August 22, 2014.

89.    Ranger assisted in the effort to complete a "suitability survey," but did so subject to its position that the suitability survey was not required by the agreements, and with an express understanding that the survey did not impact the fact that the Vessel was already on-hire to Tradeco beginning August 15, 2014 at 12:01 a.m.

90.    After second delivery, Tradeco did not immediately commence its work with Pemex.

91.    Ranger offered to suspend the Charter Party Agreement again to use the Vessel for work for another party.

92.    Ranger communicated the prospect of this opportunity to Tradeco on August 22, 2014.

93.    Ranger again communicated this opportunity to Tradeco on August 25, 2014.

94.    Tradeco did not authorize Ranger to proceed with another suspension but, instead, insisted on its own urgent need for the Vessel on August 25, 2014.

95.    On August 25, 2014, Tradeco President, Federico Alberto Martínez Urmeneta confirmed that Tradeco needed the Vessel "right away."

96.    Based on Tradeco's assurances, Ranger could not take advantage of the other opportunity.

97.    Nonetheless, Tradeco failed to provide an irrevocable bank letter of credit equal to 30 days' charterhire as required by the Amendment.[8]

98.    On August 29, 2014, Tradeco made a payment to Ranger of 500,000 USD.

99.    In September 2014, Tradeco notified Ranger of a new sand-bagging project it expected from Pemex for the Vessel.

100.    On September 12, 2014, Tradeco President, Federico Alberto Martínez Urmeneta confirmed "[w]e want the L Tucan here."

101.    The "L Tucan" is the Vessel.

102.    The new sand-bagging project for which Tradeco expected to use the Vessel did not occur.

103.    Under the June 13, 2014 Amendment to the Charter Party Agreement, this second period of charter hire was to conclude December 25, 2014.

---

[8]    The Amendment requires Tradeco to "provide to [Ranger] an irrevocable bank letter of credit equal to 30 days' charterhire in a form acceptable to [Ranger] that allows [Ranger] to immediately draw upon in the event of a charterhire payment default." (Ex. A-4, at 2).

*Collection Efforts*

80.     Tradeco wrongfully, repeatedly, and without good cause withheld payment to Ranger.

81.     Under the Charter Party Agreement Ranger rightfully billed Tradeco 24,289,309.50 USD.[9]

82.     Up to the date of the filing of this suit, Ranger has been trying to work with Tradeco to secure payment of the outstanding debt.

83.     Most recently, Ranger's efforts to get paid resulted in a 630,550 USD payment from Tradeco on February 18, 2015.

84.     Nonetheless, formal dispute resolution has become necessary.

85.     Grupo Tradeco is in default of the Guarantee.

86.     Ranger sent a Demand, as defined by Section 6(a), to Grupo Tradeco. (*See* Ex. A-2).

87.     The Demand was hand-delivered to Grupo Tradeco at the address stated in Box 3 of the Guarantee on January 26, 2015.

88.     Ten (10) banking days have passed and Grupo Tradeco has not paid the Guaranteed Amount(s), as defined by Section 1. (*See* Ex. A-2).

89.     Based on the above and the affidavit of Yara Cyntia Gual Angeles, Grupo Tradeco is in default of its obligations under the Guarantee.[10]

---

[9]     Attached as "**Exhibit A-5**" are true and correct copies of the invoices sent to Tradeco under the Charter Party Agreement, as amended.

[10]    A true and correct copy of the affidavit/declaration of Yara Cyntia Gual Angeles is attached hereto as "**Exhibit B**," establishing the delivery of the Demand.

*Summary of Calculations*

90.     The following chart represents a summary of the invoices submitted from Ranger to Tradeco under the Charter Party Agreement, the payments made to Ranger under the Charter Party Agreement, and a summary of the outstanding balance due under the Charter Party Agreement:

### INVOICES

| No. | Date | Total U.S.Cy. |
|---|---|---|
| 14MX-1006 | 2/1/2014 | $ 3,145,804.00 |
| 14MX-1006MXN | 2/1/2014 | $ 200,796.00 |
| 1012 14MX | 2/25/2014 | $ 3,352,400.00 |
| 1012 14MX | 2/27/2014 | $ 72,994.91 |
| 1013 14MX | 3/3/2014 | $ 3,410,400.00 |
| 1017 14MX | 3/7/2014 | $ 379,463.38 |
| 14MX-1035-R | 6/4/2014 | $ 433,380.32 |
| NC 14MX-01 | 6/4/2014 | $ (2,046,240.00) |
| 14MX-1050 | 8/15/2014 | $ 3,410,400.00 |
| 14MX-1059 | 10/6/2014 | $ 3,410,400.00 |
| 14MX-1058 | 11/3/2014 | $ 220,870.89 |
| 14MX-1060 | 11/3/2014 | $ 8,298,640.00 |
| | | $ 24,289,309.50 |

### PAYMENTS

| Bank | Date | Amount |
|---|---|---|
| | 2/7/2014 | $ 2,800,392.30 |
| | 2/7/2014 | $ 200,048.16 |
| Banco Base | 7/15/2014 | $ 200,000.00 |
| | 8/29/2014 | $ 500,000.00 |
| invex Banco | 2/18/2015 | $ 630,550.00 |
| | | $ 4,330,990.46 |

### SUMMARY

| Description | Amount |
|---|---|
| Total Invoiced | $ 24,289,309.50 |
| Less Payments | $ (4,330,990.46) |
| | $ 19,958,319.04 |

REQUEST FOR INTERIM RELIEF

Ranger is entitled to attach property of both Tradeco and Grupo Tradeco to secure payment for its claims.

## A.    Supplemental Rule B

91.    The Supplemental Rules provide for maritime attachment and garnishment. FED. R. CIV. PRO., SUPP. A(1)(A)(i).  Rule B(1) of the Supplemental Rules provides, in part,

> (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

> (b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

> (c) If the plaintiff or the plaintiff's attorney certifies that exigent circumstances make court review impracticable, the clerk must issue the summons and process of attachment and garnishment. The plaintiff has the burden in any post-attachment hearing under Rule E(4)(f) to show that exigent circumstances existed.

FED. R. CIV. PRO., SUPP. B(1)(a)-(c).

## B.    Ranger is entitled to interim measures as to Tradeco pending arbitration.

92.    The Federal Arbitration Act permits a federal court to grant pre-award attachment for admiralty claims. *See* 9 U.S.C. §8 ("If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court

shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.").

93.    Tradeco can be found within the district.

94.    Therefore, subject to the applicability of Supplemental Rule B, Ranger intends to pursue contemporaneous proceedings in other districts where Tradeco has attachable assets but cannot be found.

95.    These ancillary proceedings may be subject to this Court's ultimate jurisdiction to enter its decree upon the award at the conclusion of the arbitration proceeding. *See* 9 U.S.C. §8.

**C.    Ranger is entitled to interim measures as to Grupo Tradeco.**

96.    Grupo Tradeco cannot be found within the district.

97.    Assets belonging to Grupo Tradeco can be found within this district.

98.    Assets belonging to Grupo Tradeco are in the hands of the Garnishees.

99.    Therefore, attachment under Supplemental Rule B is appropriate.

**CAUSES OF ACTION**

**A.    Complaint in Aid of Arbitration between Ranger and Tradeco**

100.    Ranger intends to institute an arbitration proceeding against Tradeco arising from Tradeco's breaches of the Charter Party Agreement.

101.    Ranger requests this Court maintain jurisdiction over this dispute during the pendency of its arbitration with Tradeco for, among other things, entering a judgment upon the arbitral award.  *See* 9 U.S.C. §8.

**B.    Breach of Contract -- Grupo Tradeco**

102.    The Guarantee provides: "[T]he Guarantor [Grupo Tradeco] hereby unconditionally and irrevocably guarantees (as primary obligor and not by way of secondary

liability only) to pay any Guaranteed Amount within ten (10) banking days (in the Guarantor's country of residence) following a Demand." (Ex. A-2, at Sec. 2(a)).

103.    Before exercising its rights under the Guarantee, Ranger is not obligated to make any demand of Tradeco. (Ex. A-2, at Sec. 5(a)).

104.     Before exercising its rights under the Guarantee, Ranger is not obligated to take any action or obtain judgment in any court against Tradeco. (Ex. A-2, at Sec. 5(b)).

105.    Grupo Tradeco, as guarantor, steps into the shoes of Tradeco for purposes of the Charter Party Agreement and is directly liable for its breach.

106.    The Guarantee is a valid, enforceable agreement. A signed true and correct copy is attached as Exhibit A-2.

107.    Ranger performed and/or tendered performance of all its contractual obligations that were not excused under the Guarantee and underlying Charter Party Agreement.

108.    Grupo Tradeco breached its obligations under the Guarantee by its failure to timely pay the Guaranteed Amount.

109.    Grupo Tradeco's breach caused Ranger damages.

**C.    Claim for Attorney Fees and Costs -- Grupo Tradeco**

110.    Under the Guarantee, the Guaranteed Amount includes "any recoverable costs and expenses that may be incurred by [Ranger] in enforcing any of their rights under or in connection with the [Charter Party Agreement], whether in legal proceedings or otherwise." (Ex. A-2).

111.    Therefore, in connection with its claim for breach of the Guarantee, Ranger requests this Court order Grupo Tradeco to pay its attorney fees incurred to collect the debts and such expenses similarly incurred.

**D.      Interest Entitlement under Charter Party Agreement and Guarantee**

112.    Both the Charter Party Agreement and the Guarantee entitle Ranger to collect interest under certain circumstances from Tradeco and Grupo Tradeco, respectively.

113.    The Charter Party Agreement provides "[i]f payment is not received by [Ranger] within 5 banking days following the due date [Ranger] [is] entitled to charge interest at the rate stated in Box 25 on the amount outstanding from and including the due date until payment is received." (Ex. A-1, at Sec. 12(e)).

114.    Box 25 provides the interest rate as "8% APR." (Ex. A-1, at 2).

115.    The Guarantee provides "[T]he Guarantor [Grupo Tradeco] hereby unconditionally and irrevocably guarantees (as primary obligor and not by way of secondary liability only) to pay any Guaranteed Amount within ten (10) banking days (in the Guarantor's country of residence) following a Demand, together with interest at the rate as stated in Box 7 per annum from the due date for payment by the Charterers [Tradeco] to the date of payment by the Guarantor." (Ex. A-2, at Sec. 2(a)).

116.    Box 7 provides the "[r]ate of interest per annum" as "12%." (Ex. A-2, at 1).

### Prayer

Based on the foregoing, Plaintiff Ranger Offshore Mexico, S. de R.L. de C.V. prays for the following:

> a.  Process issue against Defendants and that said Defendant be cited to appear and answer the allegations of this Complaint;

> b.  If Defendant Grupo Tradeco, S.A. de C.V. cannot be found within this district, then all of its property within this district be attached in the sum of 19,958,319.04  USD (reflecting the outstanding balance on the invoices) with contractual interest thereupon and costs;

> c.  That Defendant Grupo Tradeco, S.A. de C.V.'s property be sold under the direction of the Court and the proceedings of the sale brought into the Court as appropriate under Federal Rule of Civil Procedure, Supplemental Rule E;

> d.  That the Court, after issuance, service and execution of the process herein, direct Plaintiff Ranger Offshore Mexico, S. de R.L. de C.V. and Defendant Tradeco Infraestructura, S.A. de C.V. to arbitration and retain jurisdiction to enter its decree upon the award as provided by 9 U.S.C. §8;

> e.  That Judgment be rendered in its favor against Defendant Grupo Tradeco, S.A. de C.V. in the amount of 19,958,319.04 USD, plus attorney fees and costs, plus pre- and post-judgment interest as allowed by applicable agreements;

> f.  That Plaintiff Ranger Offshore Mexico, S. de R.L. de C.V. be granted such other and further relief as it may lawfully be entitled.

Respectfully submitted,

/s/ Brett J. Young
Brett J. Young, Attorney in Charge
State Bar No. 24042203
SDOT: 566989
brett.young@klgates.com

Of Counsel:
Elizabeth A. Gilman
State Bar No. 24069265
SDOT:  006637
beth.gilman@klgates.com

K&L Gates, LLP
1000 Main Street, Suite 2550
Houston, Texas  77002
713/815-7300 (Telephone)
713/815-7301 (Facsimile)

ATTORNEYS FOR PLAINTIFF
**RANGER OFFSHORE MEXICO,
S. DE R.L. DE C.V.**