**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V.,** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **Civil Action No. 4:15-CV-00635** |
| **TRADECO INFRAESTRUCTURA, S.A. DE C.V. ; ET AL.,** | § § § | **Admiralty** |
| *Defendants.* | § § | |

<u>**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO**</u>
<u>**DEFENDANTS' MOTION FOR VACATUR**</u>

Ranger Offshore Mexico, S. De R.L. De C.V. ("Ranger") submits this Response Brief in Opposition to Defendants Grupo Tradeco, S.A. de C.V. ("Grupo") and Tradeco Infraestructura, S.A. de C.V.'s ("Tradeco," and collectively with Grupo, "Defendants" or "Respondents") Motion for Vacatur filed April 30, 2017 (the "Motion"), ECF No. 64.

**I.**
<u>**INTRODUCTION**</u>

The parties to this case arbitrated their charter party dispute before an eminently qualified panel assembled pursuant to the terms of the charter and the rules of the Houston Maritime Arbitrators Association. The parties had the opportunity to present extensive documentary evidence and witness testimony and argue their respective positions over the course of nine days. After due deliberation, the panel awarded Ranger most, but not all, of its unpaid charter hire claim. The panel then entertained submissions on fees and costs, again awarding Ranger some, but not all, of its claims in this regard. After addressing a final request for correction of mathematical and typographical errors, the panel declared its work done and its award

final. Dissatisfied with these results, Respondents now ask this Court to vacate the panel's awards. Because Respondents offer no basis in law or fact for disturbing the arbitrators' decisions, their request should be denied.

## II.
## BACKGROUND

On January 31, 2014, Ranger and Tradeco entered a modified BIMCO Time Charter Party for Offshore Service Vessels (the "Time Charter"). *See* Ex. A-1, BIMCO Time Charter Party for Offshore Service Vessels. The subject of the Time Charter was the M/V Lewek Toucan (the "Toucan"), a multi-purpose offshore vessel intended for use in connection with a project for Petróleos Mexicanos. *Id*. Clauses 34 and 39 of the Time Charter provided for arbitration in Houston under the Rules of the Houston Maritime Arbitrators Association ("HMAA"). *Id*.

Following Tradeco's failure to timely pay the charter hire and related expenses for several months, Ranger agreed to suspend the Time Charter in exchange for a promise from Tradeco to pay the outstanding debt on a revised payment schedule. Tradeco agreed and the parties memorialized the terms of suspension in an amendment to the Time Charter entered June 13, 2014 (the "Charter Amendment"). Ex. A-2, Time Charter Amendment. The Charter Amendment included Tradeco's stipulation that a total of $5,948,558.15 was past due and owing for charter hire and ancillary charges. *Id*. at ¶ 2. It also included a revised payment schedule wherein Tradeco promised to satisfy its unpaid debt through a series of six pagarés, or Mexican promissory notes, due every month from June to November 2014. *Id*. at ¶ 3(a). Two of these pagarés were signed and delivered to Ranger; the remaining four were signed but not delivered. The debt owed under the Charter Amendment exceeded $4 million (the "Pre-Suspension Debt").

On May 27, 2014, Grupo executed a Charter Party Guarantee (the "Guarantee") with Ranger. Ex. A-3, Charter Party Guarantee. Clauses 5 and 6 of the Guarantee provide that Grupo "unconditionally and irrevocably guarantee[d]" to pay all amounts due and owing under the Time Charter. Under the terms of the Guarantee, Grupo became the "primary obligor" of Tradeco's past and future debts.

Following suspension, Tradeco re-chartered the vessel from June until November 2014, but again failed to pay hire when due. Thus, in addition to the Pre-Suspension Debt stipulated in the Charter Amendment, Respondents amassed a separate debt running from re-delivery of the vessel until the charter was scheduled to end (the "Post-Suspension Debt"). The total amount owed by Tradeco for the Pre-Suspension and Post-Suspension Debt equaled nearly $20 million.

### III.
### PROCEDURAL BACKGROUND

Ranger instituted arbitration on March 12, 2015, to recover the debt owed under the terms of the Time Charter, the Guarantee, and the Charter Amendment. Ranger and Tradeco arbitrated their dispute before a three member arbitration panel (the "Panel") over a nine-day period from May 23 to June 1, 2016.   On September 30, 2016, the Panel issued a Partial Final Award finding in favor of Ranger and awarding it much of its requested relief. Ex. A-4, Partial Final Award.  On January 30, 2017, the Panel issued a Final Award resolving the remaining claims for fees, costs and interest, and ruling on the applicability and effect of Mexico's value-added tax. Ex. A-5, Final Award. On January 26, 2017, the Panel advised the parties that it would "remain impaneled for 30 days to hear any motions for clarification or correction of *clerical* or *arithmetical* mistakes that may be filed." (emphasis added). Ex. A-6, January 26, 2016 E-mail Correspondence from the Panel.

Respondents submitted their Motion for Correction and Clarification to the Panel on February 22, 2017. Ex. A-7, Respondents' Motion for Clarification. Respondents' motion, which acknowledged the Panel's invitation to correct any "clerical or arithmetical mistakes," presented two issues (1) the correction of a typographical error affecting a date, and (2) clarification of what the Panel meant by the term "executed" when discussing the pagarés in the Partial Final Award. *Id*. at 2.

The Panel issued an order of clarification on March 1, 2017, correcting the wrongly-printed date on the Partial Final Award and clarifying the meaning of "executed" when describing the pagarés. Ex. A-8, Disposition of Motion for Correction and Clarification. On that same day, the Panel declared its status "Functus Officio." Ex. A-9, March 1, 2017 E-mail Correspondence from the Panel.

Tradeco filed its Motion on April 30, 2017, alleging (1) the Panel went outside its contractual authority in awarding attorney's fees, costs and expenses to Ranger, (2) the Panel imperfectly executed a Final Award, and (3) the Panel prejudiced Tradeco by denying its prior request to postpone the final hearing.  ECF No. 64. This response addresses each of these points.

## IV.
## <u>ARGUMENT & AUTHORITIES</u>

A court considering vacatur of an arbitration award under the Federal Arbitration Act ("FAA") applies a very deferential standard of review. 9 U.S.C. § 1 et seq. As Respondents note in their Motion, judicial review of an arbitrator's decision is "extraordinarily narrow" under the FAA. *See* ECF No. 64, ¶¶ 15–16; *Williams v. Cigna Fin. Advisors Inc.*, 197 F.3d 752, 758-61 (5th Cir. 1999)*.  The party moving to vacate an arbitration award carries a high burden of proof. *Id*.; *Amazonas, S.A. v. Aguaytia Energy Del Peru, S.R. Ltda.*, 256 F. Supp. 2d 594, 599 (S.D. Tex. 2002). The Fifth Circuit will sustain the award if the Tribunal "draws its essence" and

4

authority from the contract, even if it disagrees with the arbitrators' ultimate determination. *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013). "To vacate or modify an arbitration award, the arbitrator's award must be 'so unfounded in reason and fact, so unconnected with the wording and purpose of the [contract,] as to 'manifest an infidelity to the obligation of the arbitrator.' " *Id.* (quoting *Bhd. of R.R. Trainmen v. Cent. of Ga. Ry.*, 415 F.2d 403, 415 (5th Cir. 1969)). These standards, when properly applied, result in vacatur "in only very unusual circumstances." *Williams v. CIGNA Fin. Advisors Inc.*, 197 F .3d 752, 757 (5th Cir. 1999).

The FAA provides four grounds for vacating a domestic arbitral award:[1] (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(A); *Cigna Fin. Advisors*, 197 F.3d at 758–61; *Aguaytia Energy Del Peru*, 256 F. Supp. 2d at 599. Respondents' arguments are said to implicate the latter two grounds. Respondents fail, however, to establish any prejudice or misconduct or demonstrate that the Panel exceeded its powers or imperfectly executed its Final Award.

---

[1] 9 U.S.C. § 10(A) is applicable to the current award, which is properly classified as "non-domestic." A "non-domestic" award involves parties that are not citizens of the United States but whose seat of arbitration was in the United States. The FAA includes Chapter 1 (§§ 1–16), which governs domestic awards, and Chapter 2 (§§ 201–208), which governs foreign awards. Non-domestic awards are governed by both Chapters and, accordingly, are subject to vacatur under Section 10.

**A.    THE PANEL DID NOT EXCEED ITS POWER BY AWARDING FEES , COSTS AND EXPENSES TO RANGER.**

"[A]n arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties—the 'essence' of the contract." *Timegate Studios*, 713 F.3d at 802–03. To establish that the Panel "exceeded its authority" where, as here, the arbitration clause granted the Panel broad authority to arbitrate "any and all differences and disputes of whatsoever nature arising out of this contract," Respondents must show that the relief awarded by the Panel did not arise out of or relate to the agreements to arbitrate. *See Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 402–04 (5th Cir. 2007), *overruled on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576, 584–86 (2008).  Respondents must prove (1) the Panel did not have authority to grant an award for fees and costs to Ranger and (2) Ranger did not incur the fees and costs awarded by the Panel. Respondents have not proved either.

### 1.    The Panel Had Authority to Award Attorney's Fees, Costs & Expenses.

The Tribunal had authority to award attorney's fees, costs and expenses pursuant to the HMAA Rules as well as the language of the Time Charter, Charter Amendment and Guarantee between the parties. HMAA Rule 8.3(b) states that an arbitration panel "should award reasonable attorney's fees and legal expenses," where provided "by any applicable agreement between the parties or by any applicable statute." HOUSTON MARITIME ARBITRATORS ASSOCIATION, *Arbitration Rules*, http://www.hmaatexas.org/arbitration-rules (last visited June 30, 2017).  Rule 8.3(c) provides that, "[u]nless otherwise agreed by the parties, the costs of the arbitration are to be awarded at the discretion of the arbitrator[s]. In such an Award, the Arbitrator[s] may include as costs: the fees and expenses of the Arbitrator and expert witnesses; any other expenses incurred in connection with the arbitral proceedings."  *Id*.

The Time Charter provides in relevant part that arbitration "awards made in pursuance to this Clause may include costs, including a reasonable allowance for attorney's fees, and judgment may be entered upon any Award made hereunder in any Court having jurisdiction in the premises." Ex A-1, ¶ 39. This provision is taken directly from the HMAA's standard three-person arbitration clause and makes clear that the Panel should award attorney's fees and legal expenses where provided by the agreement. *See* HMAA Rule 8.3(b).

The Guarantee also required an award of fees and costs. Clause 1(a) defines "Guaranteed Amount(s)" to include, among other things, "any recoverable costs and expenses that may be incurred by [Ranger] in enforcing any of [its] rights under or in connection with the Charter Party, whether in legal proceedings or otherwise." Ex. A-3, lines 9–10. Clause 7 likewise contains Grupo's express agreement "that it will reimburse [Ranger] on demand for all costs, charges and expenses *incurred* by [Ranger] in maintaining, exercising or enforcing any of [its] rights or powers under the Guarantee." *Id.* at lines 83–85 (emphasis added).[2] *W.-S. Life Assurance Co. v. Kaleh*, CV H-13-1869, 2016 WL 3554934, at *18 (S.D. Tex. June 16, 2016) (holding plaintiff was entitled to recover attorneys' fees and costs pursuant to guarantee language providing that "any costs or expenses in protecting or enforcing [plaintiff's] rights under this Guarantee . . . will be due on demand"). At bottom, the Panel had clear authority to award fees and costs.[3]

---

[2] The Guarantee is clear and unambiguous and was enforced according to its terms. *See W.-S. Life Assurance Co. v. Kaleh*, CV H-13-1869, 2016 WL 3554934, at *18 (S.D. Tex. June 16, 2016) (holding plaintiff was entitled to recover attorneys' fees and costs pursuant to guarantee language providing that "any costs or expenses in protecting or enforcing [plaintiff's] rights under this Guarantee . . . will be due on demand").

[3] There is nothing extraordinary about an award of fees and costs in a maritime arbitration proceeding. Respondents themselves requested attorneys' fees in their own defense statement. *See* Ex. A-10, Second Amended Counterclaim and Statement of Defense at 20. Based on the evidence submitted and Respondents' own submissions, the Panel had clear authority to award fees and costs. *See* Terence Coghlin et al., Time Charters § 29A.89 at 551-552 (7th ed. 2014) (*quoting Jebsen Carriers Ltd. v. Gravetal Bolivia S.A.*, SMA No. 3525, 1999 WL 3496590 (Arb. at N.Y. 1999) at *15).

2.    **The Final Award Should Not Be Disturbed Because of How Ranger's Legal Bills Were Addressed.**

Respondents contend that the "Panel exceeded its powers when it made an award of fees and costs that were not incurred by a party to the arbitration." ECF No. 64, ¶ 20.  In presenting their claim, Respondents note that the invoices charging the fees and costs awarded by the Panel were addressed to Ranger's parent company, Ranger Offshore, Inc. *Id*. at ¶¶ 19. Because Ranger Offshore, Inc. was not a party to the arbitration, Respondents say, these fees and costs should not have been awarded. *See id*. at ¶¶ 19-20.  This argument is procedurally improper and without any merit.

First, Respondents never objected to or otherwise preserved any argument regarding the name on the invoices during arbitration—this despite having access to the invoices with ample opportunity to review and address them before the proceedings were concluded.[4]  Respondents' silence in arbitration is remarkable given (1) the amount of time they had to brief the recoverability of attorneys' fees and costs and (2) the volume of material they eventually submitted.  After the Panel ruled on the merits, Respondents had roughly seven weeks to prepare arguments addressing fees and costs, including three with Ranger's legal brief and evidence already in hand. *Compare* Ex. A-4 at 38 *with* Ex. A-11, Respondents' Response to Ranger's Motion for Fees at 24. Respondents presented their arguments through two separate briefs, spanning more than 150 pages of argument and evidentiary material. *See* Ex. A-11; *See* Ex. A-13, Respondents' Sur-reply in Opposition to Ranger's Motion for Fees and Costs.  Yet nowhere in these voluminous submissions did Respondents even remotely suggest that Ranger's fees and

---

[4] For example, during arbitration Respondents used as exhibits the same invoices upon which they now seek vacatur. *See* Ex. A-12, Excerpts of Invoices for Legal Fees Incurred by Ranger submitted by Respondents in their Response to Claimant's Motion for an Award for Costs.

costs were somehow unrecoverable as amounts "incurred" by Ranger Offshore, Inc. That results in waiver.

It is well settled that a party cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. *See Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002) (noting that "[a] party should not be able to sit idle through an arbitration and then, after an adverse result, collaterally attack" based on "grounds not raised before the arbitrators."). Indeed, "[i]f a party were allowed to withhold objections until its appearance in federal court, this would extinguish any benefit of an arbitration contract as arbitrators would rarely, if ever, be fully apprised of the issues before them." *Saipem Am., Inc. v. Wellingotn Underwriting Agencies, Ltd.*, 4:07-CV-03080, 2008 WL 2276210 (S.D. Tex. Mar. 18, 2008) (citation and quotation marks omitted), aff'd sub nom. *Saipem Am. v. Wellington Underwriting Agencies Ltd.*, 335 Fed. Appx. 377 (5th Cir. 2009); *see also Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local* 731, 990 F.2d 957, 960 (7th Cir.1993); *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 806 (Tex. App.—Dallas 2008, pet. denied) (finding that, under the FAA and TAA, respondent should not have been granted vacatur on counterclaims not addressed in previous motions).[5]

Respondents did not object to or raise any issue concerning the name on the invoices prior to their attempt to vacate the award. The argument is waived and cannot support vacatur now. *See Fountoulakis v. Stonhard, Inc*., CIV.A.3:02-CV-2434-D, 2003 WL 21075931, at *7–8 (N.D. Tex. May 9, 2003) (holding that party waived right to seek vacatur of attorney's fee award by failing to object to the recoverability of attorneys' fees and costs during arbitration).

---

[5] The standard is no different for international arbitrations. According to the UNCITRAL Model Law on International Commercial Arbitration at Article 4, a party who fails to object to a known factual or legal issue during arbitral proceeding "shall be deemed to have waived his right to object."

In any case, the fact that legal bills were addressed to Ranger's U.S. parent does not mean that Ranger did not incur those bills. Ranger's counsel obviously represented their client and incurred fees on its behalf. The fact that those fees were paid by a separate entity is of no significance. Respondents simply conflate the meaning of "incurred" and "paid." These terms are not synonymous. *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 875 F. Supp. 165, 179 (S.D.N.Y. 1994) (rejecting same argument regarding fees and costs and noting that "'paid' and 'incurred' are not synonymous" because "[t]he former means '[t]o give money to in return for goods or services rendered,' while the latter means '[t]o become liable or subject to.'") (citation omitted). Ranger Offshore, Inc.'s choice to make payments for legal services on behalf of its subsidiary by no means changes how the costs were incurred. Nor does it provide any basis for vacating the award. *See Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 111 F.3d 588, 591 (8th Cir. 1997) (rejecting argument that prevailing party was not entitled to recover the fees and costs paid by an affiliate non-party entity where the contract provided for recovery of all fees "incurred" with no restriction to all fees "paid"); *Trinity*, 875 F. Supp. at 179 (same).

What's more, the record evidence demonstrates that the attorneys' fees and costs awarded by the Panel were in fact *incurred* by Ranger, not Ranger Offshore, Inc. A prevailing party may recover all reasonably *incurred* attorney fees. *See Coleman v. Houston ISD*, 202 F.3d 264, 266 (5th Cir. 1999); *see also Newby v. Enron Corp.*, 586 F. Supp. 2d 732, 822 (S.D. Tex. 2008). In other words, it was up to the Panel to determine whether the evidence reasonably established who *incurred* the charges in relation to the dispute, not who *paid* them. The language of the Guarantee affirms this point by providing reimbursement "for all costs, charges and expenses *incurred* by the Owners [Ranger]" in exercising its rights or powers under the Guarantee. Ex. A-3, Section 7 (emphasis added). "Cost is incurred when the task is performed for a party and an

obligation to pay is created." *Corthera, Inc. v. Scottsdale Ins. Co.*, No. 14-cv-05014-EMC, 2016 U.S. Dist. LEXIS 8388, at *21 (N.D. Cal. Jan. 22, 2016); *cf. Favata v. Nat'l Oilwell Varco, LP*, No. 2:12-CV-82, 2014 U.S. Dist. LEXIS 158629, at *11–12 (S.D. Tex. Nov. 10, 2014). This can be shown through a "declaration under penalty of perjury that the costs were correct and reasonably incurred." *United Teacher Assocs. Ins. Co v. Union Labor Life Ins. Co.*, 414 F.3d 558, 574 (5th Cir. 2005).

The record evidence demonstrates that Ranger itself incurred the fees, costs and expenses awarded by the Panel in exercising its rights against Respondents. Counsel for Ranger verified through sworn declarations that the fees and costs requested by Ranger (and awarded by the Panel) were indeed incurred by Ranger. *See, e.g.*, Ex. A-14, Affidavit of John F. Sullivan III, ¶¶ 1, 3, 28; Ex. A-15, Declaration of James P. Lam, ¶¶ 3–4, 15; Ex. A-16, Declaration of Alexander C. Chae, ¶¶ 3–4, 7; Ex. A-17, Declaration of Roger Morales Banuet, ¶¶ 4, 11.[6]

Respondents' attack on Ranger's fees and costs award based on the identity of the payer—again, a position not raised in any prior briefing or at any point in arbitration—is wholly without merit. Respondents have failed to show that the Panel exceeded its authority by going beyond the matters submitted to the arbitrators or the scope of the arbitration. *See Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012) (explaining courts apply "exceedingly deferential" review of arbitration awards). Their request for vacatur should, therefore, be denied.

**B.    THE PANEL ISSUED A BINDING AND FINAL AWARD.**

Respondents next complain that the Panel improperly issued the Final Award by making it contingent upon the resolution of matters that can only be resolved by a Mexican court. ECF

---

[6] Furthermore, in the very invoices referenced by Respondents, detailed descriptions regarding the nature of work indicate that the legal work was done for Ranger, as the only Ranger entity party to the "Tradeco Lawsuit," and not Ranger Offshore, Inc. *See, e.g.*, ECF No. 64-9 at 11.

No. 64, ¶¶ 21–22. Respondents misconstrue the language of the Panel in its clarification and seek to impose a substantive pre-condition to the finality of the award when, in fact, one does not exist. The Panel was clear and unambiguous in imposing liability on Respondents to pay over four millions dollars on the Pre-Suspension Debt. The Panel's subsequent clarification did no more than explain the usage of a particular word in the Panel's Final Award.

### 1.   The Panel did Not Imperfectly Execute Its Authority with Respect to the Pre-Suspension Debt.

A district court may vacate an arbitration award when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An arbitral award that is "final and definite" is one that "resolve[s] all the issues submitted to arbitration . . . definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *McVay v. Halliburton Energy Servs.*, 608 F. App'x 222, 225 (5th Cir. 2015) (citing *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)). The Panel, in its Final Award dated January 30, 2017, settled all remaining claims and defenses submitted to arbitration. Ex. A-5 at 11, incorporating the Partial Final Award at pgs. 37–38. In connection with issuing its Final Award, and having "concluded its assigned responsibilities" of settling all claims, the Panel permitted both parties to submit motions to resolve "clarification or correction of *clerical* or *arithmetical* mistakes." *See* Ex. A-6 (emphasis added). In other words, the Panel agreed to remain empaneled for one reason and one reason only: to address any clerical mistakes made in the Final Award. It made no invitation for new arguments on the the merits or finality of the award.

Nor did the Panel's discussion of the meaning of "execute," as used in addressing the pagarés, undermine the finality of the award. Early on, the Panel recognized that the pagarés

were of potential significance because they were, by their terms, enforceable in Mexico. *See* Ex. A-18, Order Granting Ranger's Motion for Partial Summary Disposition on Respondents' Pre-Suspension Debt at 3. Of the six pagarés, however, only two had actually been delivered to Ranger. *See id*. The Panel ultimately determined that it was without jurisdiction to afford relief as to the two delivered pagarés, but could include the amounts of the other four pagarés in its award because those instruments had never been delivered.[7] Tradeco offered no evidence that the undelivered pagarés were, despite their non-delivery, collectible by Ranger under Mexican law. This was made plain by the Panel's clarification: "To be perfectly clear, the evidence supports a conclusion that two Pagares were validly signed and delivered by Tradeco to Ranger, but that the remaining four were not executed in the sense of being delivered to Ranger although they may have been executed in the sense of being signed." Ex. A-8, ¶ 2

As the Panel further observed in its clarification order, exactly what was required in order for the pagarés was ultimately a question of Mexican law. *Id.* But it was up to Tradeco, not Ranger, to provide the Tribunal with a legal basis for excluding the amounts of the undelivered pagarés from the Final Award. Absent any evidence that the undelivered pagarés were collectible under Mexican law, the Panel included the amounts of those pagarés in the Final Award. Ex. A-4 at 14. This was a sound resolution of an issue the Panel had to address in order to arbitrate the parties' dispute, and not one that would ordinarily by subject to review by a

---

[7] The Panel first made this determination at the pre-hearing phase of the arbitration, when it granted Ranger's Motion for Partial Summary Disposition on the Stipulated Amount of Respondents' Pre-Suspension Debt. *See* Ex. A-18 at 3. That decision was delivered roughly five months before the Partial Final Award, which re-affirmed Ranger's right to recover the amounts represented by the undelivered pagarés for the same reason as stated before (i.e., no evidence of delivery by Tradeco). *See* Ex. A-4 at 14 ("[T]here is no evidence that the remaining four Pagarés were ever executed or delivered by Tradeco to Ranger[,]" and therefore "Ranger retains the right to recover the stipulated amounts represented by those remaining Pagarés."). In other words, to accept Respondents' argument that the Panel's clarification "communicated the conditional nature of the award of the Pre-Suspension Amounts," is to accept that the Panel—in issuing a post-award order designed to address "clerical" and "arithmetical" mistakes—abruptly reversed course and abrogated its two prior rulings awarding Ranger the sums reflected by the undelivered pagarés. Such a position is clearly absurd.

court. The Panel's clarification did not modify the amount awarded to Ranger; it merely noted that the ultimate collectability of the undelivered pagarés remained a matter of Mexican law.[8] This did not disturb the Panel's prior decisions addressing the connection between the undelivered pagarés and amounts awarded Ranger.[9]

### 2.    Alternatively, if the Court Finds Ambiguity in the Final Award, it is Within the Court's Power to Request Clarification from the Panel.

Even if this Court determines an ambiguity exists in the Final Award or clarification order, there are a number of recognized exceptions to the "Functus Officio" rule under which the Court may request additional clarification regarding any issue with the pagarés. *See, e.g., Colonial Penn Ins. Co. v. Omaha Indemnity Co.*, 943 F.2d 327, 332–33 (3rd Cir. 1991) (finding that a district court can remand a case to the arbitrators for clarification as an exception to the "Functus Officio" rule); *accord T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329 (2d Cir. 2010); *Brown v. Witco Corp.*, 340 F.3d 209 (5th Cir. 2003). This Court is within its authority to either (1) request that the Panel submit additional clarification regarding the pagarés, so long as the Panel does not materially alter the substance of the Final Award or effectively reverse former determinations, or (2) the Court itself may modify or correct an award where the award is imperfect in matter of form *not* affecting the merits of the controversy. *Id.* For these reasons, there is no justifiable ground for vacatur of the Final Award.

### C.    THE PANEL PROPERLY DENIED RESPONDENTS' REQUEST FOR POSTPONEMENT.

Finally, Respondents allege that the award should be vacated because the Panel failed to postpone the arbitration hearing. ECF No. 64, ¶ 23. Respondents claim the Panel's refusal to

---

[8] Thus if Ranger were to collect the Final Award in full and then pursue collection of the four pagarés in Mexico (which it would not do), a Mexican tribunal would presumably decide first whether the undelivered pagarés were enforceable at all, and, if so, whether Ranger had already received payment for them.

[9] *See, e.g.*, Ex. A-4 at 14 ("[T]here is no evidence that the remaining four Pagarés were ever executed or delivered by Tradeco to Ranger[,]" and therefore "Ranger retains the right to recover the stipulated amounts represented by those remaining Pagarés."); Ex. A-18 at 3.

14

abate the hearing based on a motion they filed less than two months before the scheduled hearing date demonstrated misconduct by the Panel and was unfairly prejudicial. *Id*.

This argument is untenable in law and fact. First, the standard of review for denial of postponement considers only whether the tribunal had a reasonable basis for refusing to postpone. Here the Panel clearly did, as expressed in its order denying abatement. *See* Ex. A-19, April 23, 2016 Order Denying Respondents' Motion to Dismiss or Abate Arbitration. Second, Respondents cannot show any unfair prejudice flowing from the Panel's decision. Respondents have no basis to vacate the award.

**1.    The Panel Reasonably Denied Respondents' Request.**

A court's review of an arbitrator's refusal to grant a postponement is confined to determining whether the refusal to postpone was a result of misconduct. *Agarwal v. Agrawal*, 775 F. Supp. 588, 590 (E.D.N.Y.), *aff'd*, 969 F.2d 1041 (2d Cir. 1992); *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 736 (N.D. Tex. 1997). If there is any reasonable basis for the arbitrator's decision not to postpone a hearing, the court should not intervene. *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006); *Sungard Energy Sys. v. Gas Transmission Nw. Corp.*, 551 F. Supp. 2d 608, 613 (S.D. Tex. 2008); *DVC-JPW Invs. v. Gershman*, 5 F.3d 1172, 1174 (8th Cir. 1993). In this case, the Panel acted reasonably and within the scope of its discretion in refusing to postpone.

The Panel considered and ruled on Respondents' request for postponement, and clearly found that there was no justifiable reason for delaying the hearing. In so doing, the Panel rightfully refused to disrupt the arbitration following Respondents' so-called "recent" discovery of terms contained in (1) a Cooperation Agreement, which had no bearing on the case, and (2) a

Master Service Agreement, which never went into effect (collectively the "Mexican Agreements").[10]

The Panel's order denying postponement first noted that, with respect to questions of jurisdiction, the Panel had acted in reliance on an agreed order dated March 12, 2015, which stated that "[t]he parties have advised there are no pending or anticipated parallel or duplicative proceedings … ." Ex. A-19 at 2.  As Respondents contend, the Mexican Agreements allegedly pre-dated the Time Charter and, accordingly, the Panel found Respondents' "new-found" discovery of the terms of these agreements—made 119 days into arbitration—unconvincing.  Respondents offered no evidence to explain their delay, which was particularly problematic because, as the Panel put it, granting their request "would delay or terminate these proceedings after a full year of pre-arbitration activity and just four weeks before scheduled hearings."  *Id.* at 1; *see generally Sungard Energy Sys. Inc. v. Gas Transmission Nw. Corp.*, 551 F. Supp. 2d 608, 613 (S.D. Tex. 2008) (finding no misconduct where arbitration panel could have reasonably concluded that denying party's request to postpone would help avoid "scheduling conflicts among the parties, their witnesses, and the three panelists").

The Panel also took issue with Respondents' complete failure to address the unambiguous arbitration clause in the Time Charter, which afforded the Panel the ability to resolve "any and all differences and disputes of whatsoever nature arising out of this contract."  *See id*; Ex. A-19 at 2.  According to the Panel, missing from Respondents' plea for dismissal was "any acknowledgement that [they] ha[d] proceeded with pre-arbitration activity up until the present without ever questioning the validity, scope or intent of the charter party arbitration provision."  *Id.* The Panel considered both parties' positions and found that

---

[10] At the time of this sudden "discovery," Respondents had been in possession of the Mexican Agreements for more than a year. Ex. A-20, Ranger's Response to Motion to Motion for Summary Disposition to Dismiss, or Alternatively, Abate, at 2.

Respondents had framed their arguments around a "creative and selective reading" of the Time Charter, Charter Amendment and Guarantee. *Id.* The Panel was therefore unpersuaded.

Respondents' motion was both late and unsupported by the controlling agreements. It was also in direct conflict with a position they previously asserted before this Court. In April 2015, before the Panel was selected, Tradeco moved to compel to arbitration of Ranger's claims against Grupo that were then pending in this Court. *See* ECF No. 13. Tradeco's motion, which the Court granted in full, unambiguously asserted the Panel's proper jurisdiction to resolve the dispute. *See generally id.* Accordingly, Respondents were judicially estopped from challenging the Panel's jurisdiction based on their late assumption of a contrary position. *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 334–35 (5th Cir. 2004) (stating that under the doctrine of judicial estoppel, a party may not later assume a contrary position just because his interests have changed); *see also Hill v. Wackenhut Services Intern.*, 971 F. Supp. 2d 5, 14 (D.D.C. 2013) (applying the doctrine of judicial estoppel in arbitration). Because the Panel demonstrated multiple reasonable bases for refusing to postpone the final hearing date, Respondents cannot prove any misconduct by the Panel in making its decision.

### 2.   Respondents Cannot Prove they were Prejudiced.

To vacate the Final Award under section 10(a)(3), Respondents must not only demonstrate that the Panel was "guilty of misconduct" but also that "the rights of [Respondents] have been prejudiced" by such misconduct to such an extent that they were "deprived of a fair hearing." 9 U.S.C. § 10(a)(3); *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3rd Cir. 1968), *cert. denied*, 89 S.Ct 378 (1968); *Prestige Ford v. Ford Dealer Computer Srvs., Inc.*, 324 F.3d 391, 394 (5th Cir. 2003). Respondents cannot come close to hitting this mark.

Respondents assert that the law in Mexico may have been more favorable to their defense of force majeure, but they fail to explain how the Mexican Agreements were in any way relevant to the parties' rights and obligations under the Time Charter, Guarantee and Charter Amendment. ECF No. 64, ¶ 23.[11] The Panel had the jurisdiction to adjudicate this issue, which it did when it ordered that the "arbitration will proceed as originally conceived and agreed, in accordance with the arbitration clause found" in the Time Charter. Ex. A-18 at 3. The Panel's interpretation of this clause drew from the "essence" of the contract, which directed "any and all disputes of whatsoever nature arising out of this contract shall be put to arbitration in the City of Houston, Texas." Ex. A-1 at Clause 39. *See Timegate Studios*, 713 F.3d 797, 802 (5th Cir. 2013) (noting arbitration award will be left undisturbed unless the arbitrator "has utterly contorted the evident purpose and intent of the parties").

Notably, the Panel invited Respondents to produce evidence showing that the Mexican Agreements were "both material and relevant to issues that arise in this arbitration." Ex. A-19 at 3. Respondents never did, and they should not be heard to claim prejudice now.

### D.    RESPONDENTS MAY SEEK VACATUR ONLY IN THIS COURT.

As a final point, Respondents ask this Court to transfer issues regarding enforcement or vacatur to Mexico, stating that Ranger's pursuit of enforcement of the Final Award in Mexico demonstrates that the courts of Mexico should be left to decide all remaining issues. ECF No. 64, ¶¶ 24–25. Respondents' argument is without merit and does not reflect the law regarding arbitration enforcement proceedings.

---

[11] Whether the Master Service Agreement even qualified as a an enforceable contract is highly in doubt since the parties failed to mutually execute the draft. *See Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410 (5th Cir. 1996) (citing *Simmons & Simmons Const. Co. v. Rea*, 286 S.W.2d 415, 419 (1955) ("If parties negotiating a contract intend to require signatures, then a contract is not formed unless both parties sign the contract"); *see also* Ex. A-20 at 10– 11. But even assuming the Mexican Agreements had some binding effect on the parties, the fact remains that neither impacted the Time Charter, Charter Amendment or Guarantee, as the Mexican Agreements contemplated obligations separate and apart from the Time Charter, Charter Amendment. *See id*. at 12–15.

Respondents are obligated, as the losing party, to seek to set aside an award in the district court where the award was made, i.e., at the seat of arbitration.[12] As referenced by Respondents in their Motion, this Court maintains jurisdiction over the enforcement of the arbitration award not only because it was the seat of arbitration, but also because of Ranger's former garnishment action.  ECF No. 64, ¶¶ 24–25.

Competent jurisdiction in a United States court, however, does not preclude Ranger from properly seeking enforcement in Mexico, where Respondents retain sufficient assets to satisfy an award. *See* Código de Comercio [CCom], art. 1422, Diario Oficial de la Federación [DOF] 7-10-1889, últimas reformas DOF 13-6-2014 (Mex.).[13]  Ranger recognizes, however, that the Mexican court may stay enforcement proceedings or deny enforcement of the award pending the outcome of these annulment proceedings.  *Id.* at arts. 1462–63.

---

[12] *See* 9 U.S.C. § 9, 207. Article 9 states that when "no court is specified in the agreement of the parties, then such application [for vacatur] may be made to the United States court in and for the district within which such award was made."  The New York Convention also allows a losing party to seek to vacate or annul an award only in (i) the country where the award was made [the seat] or (ii) the country whose procedural laws were utilized for the arbitration. Articles V.1.(e) and VI. Those countries have "primary jurisdiction" over the arbitral award. *See M&C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 847-49 (6th Cir. 1996) ("We hold ... that such a motion to vacate may be heard only in the courts of the country where the arbitration occurred or in the courts of any country whose procedural law was specifically invoked in the contract calling for arbitration of contractual disputes."); *see also Karaha Bodas Co., LLC. v. Perushahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 289-290 (5th Cir. 2004).

[13] Respondents appear to suggest that Ranger has improperly initiated enforcement proceedings in Mexico without advising "counsel" for Respondents in this case.  *See* ECF No. 64 ¶¶ 24–25. Respondents cite no authority in support of this suggestion.  In any event, not only have Respondents received notice of these proceedings, they have made appearances and are actively participating in them.  *See* Ex. B, Declaration of Vicente Bañuelos.

# V.
## <u>CONCLUSION & PRAYER</u>

For the foregoing reasons, Plaintiff Ranger Offshore Mexico, S. De R.L. De C.V.

respectfully requests the following relief:

    (i)      An order denying Respondents' Motion for Vacatur;

    (ii)     in the alternative, an order requesting additional clarification from the Panel or correction as discussed herein; and

    (iii)    any such other and further relief, general and specific, at law or in equity, to which Plaintiff may show itself justly entitled.

Dated: June 30, 2017

Respectfully submitted,

**K&L Gates, LLP**

/s/ John F. Sullivan III
John F. Sullivan III
Texas State Bar No. 1948510
S.D. Texas I.D. No. 9761
john.sullivan@klgates.com
Elizabeth  A. Gilman
Texas State Bar No. 24069265
S.D. Texas I.D. No. 1120022
beth.gilmore@klgates.com
John D. Wagner
Texas State Bar No. 24090451
S.D. Texas I.D. No. 2433520
devin.wagner@klgates.com
1000 Main Street, Suite 2550
Houston, Texas 77002
Phone: (713) 815-7300
Fax: (713) 815-7301

Julius H. Hines
South Carolina Bar. No. 065472
S.D. Texas I.D. No. 2583013
Julius.hines@klgates.com
134 Meeting Street, Suite 500
Charleston, SC 29401
Phone: (843) 579-5660
Fax: (843) 579-5601

**ATTORNEYS FOR PLAINTIFF
RANGER OFFSHORE MEXICO,
S. DE R.L. DE C.V.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on all counsel of

record via the Court's ECF Filing requirements this 30th day of June, 2017:

    Michael K. Bell
    Jay T. Huffman
    Blank Rome LLP
    700 Louisiana Street, Suite 4000
    Houston, Texas  77002-2727

    Brent L. Vannoy
    Hughes Watters Askanase, L.L.P.
    1201 Louisiana Street, 28th Floor
    Houston, Texas 77002

                        /s/ John F. Sullivan III
                        John F. Sullivan III