# EXHIBIT A-2

## AMENDMENT No. 1

### To that BIMCO Time Charter Party for Offshore Service Vessels Between Ranger Offshore Mexico and Tradeco Infraestructura

THIS AMENDMENT No. 1 to that certain BIMCO Time Charter Party for Offshore Service Vessels (this "Amendment") is dated as of June 13, 2014, by and between Ranger Offshore Mexico, S. de R.L. de C.V. ("Owners") and Tradeco Infraestructura, S.A de C.V. ("Charterers"). Owners and Charterers may be hereafter sometimes referred to individually as a "Party" and collectively as the "Parties".

WHEREAS, Owners and Charterers entered into that certain BIMCO Time Charter Party for Offshore Service Vessels in Houston, Texas and dated January 31, 2014 for the vessel MV Lewek Toucan (the "Charter") and the Parties wish to amend the Charter in certain respects as set out below.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements hereinafter set forth, the Parties hereby agree as follows:

1. For the convenience of the Charterers, the Charter will be suspended with the effective date of April 14, 2014 as of 11:59 P.M. U.S. Central Time for a period of not more than 85 days, and an option to Owners to continue the suspension for a period necessary to complete the project, voyage or well in progress, such time not to exceed 65 days. During the period of suspension neither Charterers nor Owners shall have any obligation under the Charter to the other Party, other than as stated herein. Charterers consent to Owners temporarily taking possession and control of the MV Lewek Toucan ("Vessel") for the Charter suspension period. All costs incurred in demobilization for the suspension period, storage, or other charges incurred for the benefit of Charterers during suspension period and cost of mobilization after the suspension period will be charged to Charterers. Charterers shall have the right to have a surveyor participate, without charge, in any off hire survey of the Vessel conducted at the conclusion of the suspension period.

2. Charterers acknowledge that USD 5,948,558.15 in charterhire and related ancillary charges are past due and owing to Owners ("Past Due Charges").

3. Charterers agree to pay the Past Due Charges as follows:

    a. Unconditional and unqualified Pagares in a form acceptable to Owners with Charterers and Grupo Tradeco, S.A. De C.V. as co-makers and co-obligors as follows:

        i. Pagare 1 for USD   600,000.00 payable no later than June 30, 2014.
        ii. Pagare 2 for USD 1,189,711.63 payable no later than July 31, 2014.
        iii. Pagare 3 for USD 1,189,711.63 payable no later than August 29, 2014.
        iv. Pagare 4 for USD 989,711.63 payable no later than September 30, 2014.
        v. Pagare 5 for USD 989,711.63 payable no later than October 31, 2014.
        vi. Pagare 6 for USD 989,711.63 payable no later than November 28, 2014.

    b. In this act the Charters gives to Owners the Pagare 1 and Pagare 2 as well, in the understanding that once Charterers or Grupo Tradeco pay Pagare 1, Owners must have the obligation to returned it and Charters will gives the Pagare 3 and the same process will be with the subsequent Pagares.

   c. In addition to the unqualified and unconditional Pagares listed above, within 2 weeks from this date, Charterers shall provide written instructions, in a form acceptable to Owners, to its banking institution that holds in trust the funds from Pemex related to the Akal project instructing it to immediately release those funds it holds to Owners directly to satisfy Pagares 3, 4, 5, and 6 in the event the primary co-obligors and co-makers fail to do so when due. The fact that there are no funds in the trust or there are inadequate funds in the trust or that the banking institution fails to pay any or all amounts to Owners will not relieve Charterers and Grupo Tradeco, S.A. De C.V. from their liability on Pagares 3, 4, 5, or 6.

4. After the period of suspension and between August 10 and September 7, Owners will re-deliver the Vessel to Charterers at the Carmen Sea Buoy. Upon the conclusion of the suspension period and upon re-delivery, the Vessel will return to "on hire" status under the Charter for the original remaining full firm period of 48 days plus an additional 85 days firm.

5. Owners shall provide Charterers with 2 weeks' notice of re-delivery of the Vessel.

6. At least 2 weeks before re-delivery of the Vessel, Charterers shall provide to Owners an irrevocable bank letter of credit equal to 30 days' charterhire in a form acceptable to Owners that allows Owners to immediately draw upon in the event of a charterhire payment default.

7. If Charterers default or breach any of the obligations set out above, including payment default on any Pagare, or any of their obligations in the Charter, Owners shall have the immediate right to any or all of the following: suspend performance of the Charter; withdraw the Vessel from the Charter; terminate the Charter; declare Charterers to be in fundamental breach of the Charter; and Owners shall be free to pursue all of its rights and remedies, none of which have been waived by entering into this Amendment, including the right to arbitration of the charter; enforcement of the charter guarantee; enforcement of the Pagares, all in any sequence or combination of remedies, the choosing of any particular right or remedy in any sequence or combination shall not act as a waiver or relinquishment of any other.

No other rates, terms or conditions of the Charter are changed by this Amendment. Other than the Charter, this Amendment, and the Parent Company Charter Guarantee, there are no other agreements, oral or written, related thereto.

IN WITNESS WHEREOF, Owners and Charterers have duly executed this Amendment as of the date below.

AGREED AND ACCEPTED:

| OWNERS | CHARTERERS |
|---|---|
| By: *[signature]* | By: Tradeco *[signature]* |
| Name: Thomas F. Cunningham | Name: David Espinosa G. |
| Title: Exec. VP | Title: V.P. |
| Date: 13/6/2014 | Date: 13/Junio/2014 |