# EXHIBIT
# A-11

## HOUSTON MARITIME ARBITRATORS ASSOCIATION

| | |
|---|---|
| **RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V.,** | § <br> § <br> § |
| *Claimant,* | § <br> § <br> § |
| **vs.** | § <br> § |
| **TRADECO INFRAESTRUCTURA, S.A. DE C.V.; GRUPO TRADECO, S.A. DE C.V.** | § <br> § <br> § <br> § |
| *Respondents.* | § |

---

### Respondent's Response to Ranger's Motion for an Award of Fees and Costs

---

Respondents Tradeco Infraestructura, S. A. de C.V. ("Tradeco") and Grupo Tradeco, S.A. de C.V. ("Grupo Tradeco" and together with Tradeco "Respondents") respectfully submit this response and request that the Panel: (1) deny Ranger all of its incurred and prospective attorneys' fees and costs and in the alternative (2) award an amount less than Ranger seeks.

### <u>INTRODUCTION</u>

The governing Charter Party Agreement allows for a discretionary, not mandatory, award of fees and costs for the arbitration.  In this regard Ranger seeks to recover over $2.533 million dollars.  As explained below, it would be appropriate to make no award.  But, at a miminum, that amount should be reduced by $1,076,548.09 and then further reduced by 29.3%.[1]

---

[1] Ranger sought damages of $23,333,953.08 but was awarded $16,491,713.88 against the principal obligor.

## ARGUMENT

**A.    Award is Discretionary.**

HMAA Rule 8.3(b) does not require an award of attorneys' fees to the prevailing party. Rather it states "If provided by any applicable agreement."  The applicable agreement is the BIMCO Time Charter Party for Offshore Vessels ("Charter Party") between Ranger and Tradeco.  The Charter Party includes an arbitration clause which includes the controlling provision: "[a]wards made pursuant to this Clause **may** include costs, including a reasonable allowance for attorney's fees."[2]   The Charter Party makes an award of fees and costs permissive not mandatory.

Before the Panel can award discretionary attorney's fees, the party requesting fees bears the burden of proving that the fees requested are reasonable and necessary.[3] The reasonableness of fees, a fact question, must be supported by competent evidence.[4] This rule applies even where the entitlement to fees is mandatory under a relevant statute.[5]

**B.    No Recover for Fees Not Incurred in Arbitration.**

The Charter Party's arbitration clause limits the scope of the costs and fees.  The award must not only be equitable, but within the scope of the agreement.  "Awards made pursuant to [Arbitration][6] may include costs and a reasonable allowance for attorney fees."  This is

---

[2] BIMCO Time Charter Party for Offshore Service Vessels of January 31, 2014, §39 Arbitration, emphasis added. The Time Charter Guarantee (the "Guarantee") provides for "recoverable costs and expenses," which in this instance can only be discretionary attorney fees and costs based on the Charter Party.  The Guarantee does not create an independent means to award fees and costs beyond what might be awarded under the Charter Party Arbitration provision.

[3] *See Dilston House Condo. Ass'n v. White*, 230 S.W.3d at 716-18.

[4] *See id.* at 716.

[5] *See id.* at 718.

[6] BIMCO Time Charter Party for Offshore Service Vessels of January 31, 2014. §39 Arbitration. "Awards made pursuant to ***this Clause*** may include costs and a reasonable allowance for attorney fees." emphasis added.  "This Clause is referring specifically to Clause 39 which is named **Arbitration.**  Arbitration is the only subject of the clause and in this sentence the words *this clause* should be read as meaning Arbitration.

reasonably interpreted to include those costs associated with prosecuting a dispute through arbitration only. Ranger contends that all costs and fees incurred after the original agreement was signed are recoverable. They are not. For example, Ranger seeks costs associated with negotiating the Amendment to the Charter Agreement[7], the fees and costs associated with maritime garnishment suits in New York and Florida,[8] (in contravention of Court orders that no fees and costs shall be awarded), and high priced consultants whose invoices are so broad as to preclude any analysis of their reasonableness or necessity. Ranger should not be awarded fees and costs incurred outside of arbitration.

Since the Panel can only consider awarding fees and costs arising out of the arbitration. Actions taken by Ranger outside of arbitration are counter to the remedies permitted under the Charter Party. ". . . for the sake of clarification, any and all differences and disputes of whatsoever nature arising out of this contract **shall** be put to arbitration . . ."[9] "Shall be put to arbitration" means arbitration is the only remedy to address the differences and disputes of the terms of the Charter Party. Ranger pursued numerous avenues outside of the scope of the Charter Party. These actions included three federal maritime garnishment actions, as well as consulting with a non-lawyer, Eddie Moses, and the politicians who comprised the Albright Stonebridge Group ("ASG"). None of those costs and fees are properly before the panel.[10]

---

[7] Gardere, Wynne & Sewell, L.L.P.'s entire fee is related to the negotiation of the Amendment agreement.
[8] K&L Gates, L.L.P. did not segregate fees. Control Risks and Phenix were investigations related to the garnishment actions. Respondents have identified, through extensive effort, a conservative amount of fees and costs associated with the failed garnishment actions in the amount of $257,443.47. Ranger's application should be reduced by this amount, at a minimum.
[9] Charter Party §39 Arbitration, emphasis added.
[10] "In order to show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

1.      **Unsuccessful Garnishments Not Part of Arbitration.**

Ranger pursued three garnishment actions which were completely unsuccessful.  Not a penny was garnished and two of the three garnishments were dismissed by means of court orders that disallowed recovery of fees and costs.  Ranger has failed to segregate fees and costs for the garnishments, leaving it to the Panel or to Respondents to attempt to do so.  Nevertheless, Respondents have made a good faith attempt to segregate these fees, and provide a conservative amount by which Ranger's claim should be reduced.  However, the exercise was not without the inherent risk of including fees which are not related to arbitration.

The New York and Florida Garnishment actions were dismissed without costs and fees sought or granted.[11]  Neither of those two actions nor the pending actions in the Southern District of Texas resulted in the capture of any assets.  The garnishments were completely unsuccessful and an extreme waste of Ranger's resources as the final result of "no attachable assets were discovered" was even admitted to by Ranger.[12]

Ranger retained Control Risk and Phenix to investigate and identify the assets of Respondents.[13]  Yet, despite there being no assets to garnish, Ranger filed three separate federal suits for maritime garnishment.  Either the investigations by Control Risk and Phenix were faulty and caused Ranger, to pursue the failed garnishment actions, or the investigations disclosed no assets and Ranger proceeded to file garnishments despite the investigations.  Either way, Respondents should not pay for the investigations.

---

[11] Ranger filed suit in the Southern District of New York on March 11, 2015.  Case No.: 1:15-cv-01806-AJN was dismissed on July 1, 2015.  Ranger did not request costs or fees in this case.  The Honorable Allison J. Nathan signed the order which included the following: "No costs are to be assessed to any party."  Ranger also filed suit in the Southern District of Florida on March 11, 2015.  Case No. 15-20985-CIV was also dismissed on July 1, 2015, also without an award of fees or costs. Attached as Exhibit "B"
[12] See J. Lam Declaration ¶11.
[13] See J. Lam Declaration ¶11.

**2.     No Fees for Settlement Consultants.**

Ranger seeks fees for Moses and ASG, which Ranger describes  variously as "Consultants" engaged for settlement.  The Charter Party does not provide for this category of costs.  Alternatively, this category of costs is encompassed by mediation costs, which the Charter Party expressly provides are <u>not</u> to be shifted.  "Unless otherwise agreed or specified in the mediation terms, each party **<u>shall</u>** bear its own costs incurred in the mediation and the parties shall share equally the mediator's costs and expenses."[14]

**a.     Albright Stonebridge Group's Fees were not for Arbitration.**

Ranger has provided copies of sixteen invoices from The Albright Stonebridge Group ("ASG").  Each of these invoices references these invoices are "Monthly consulting retainer fee per agreement dated June 5, 2015."[15]  The invoices were directed to:

> Ranger Offshore, Inc.
> 10370 Richmond Avenue, Suite 1000
> Houston, TX 77042
> Attn: Bill J. Lam, CEO

Ranger Offshore, Inc. is not a party before this Panel.  The Ranger is Ranger Offshore Mexico, S. de R.L. de C.V., and is the owner listed on the Charter Party.  Any consulting work related to this proceeding, the Amendment or the Charter Party can only have been incurred through Ranger Offshore Mexico, S. de R.L. de C.V. the entity in privity of contract with Tradeco Infrastructura, S.A. de C.V. who is the Charterer listed on the Charter Party and is the named respondent.

ASG's invoices are vague and ambiguous.  Each one simply states "Monthly consulting retainer fee per agreement dated June 5, 2015 for the month."  Each invoice is for a flat

---

[14] Charter Party §34(c)
[15] The consulting agreement was dated June 5, 2016 according to the invoices from ASG to Ranger Offshore, Inc. dated each month beginning with the invoice dated in June 23, 2015 and ending with the invoice dated July 14, 2016.

$10,000.00. It is impossible to determine by the invoices provided what specific actions were taken by ASG in the furtherance of the negotiating a resolution under the Charter Party, or whether such actions were even related to Ranger Offshore Mexico, S. de R.L. de C.V.'s Charter Party agreement with Tradeco Infrastructura, S.A. de C.V.

According to the Agreement between ASG and Ranger Offshore, Inc. dated June 5, 2015 the scope of the work to be performed by ASG had three main components which were "1. Maximize Recovery of Outstanding Debt. . . . 2. Navigating Current Business Landscape in Mexico. . . . 3. Advice on Business and Political Climate Beyond Mexico."[16] Most of the scope of work to be performed by ASG was not related to Tradeco at all. For this work ASG was to be paid a retainer of $10,000.00 plus expenses. The amount of the retainer fee that was attributable to Tradeco was not segregated and there is a legitimate question as to whether any of it was related to Tradeco. A separate payment provision was provided specific to Tradeco which provided a contingency fee of 7.5% if ASG successfully collected anything from Tradeco.

> In addition, for ASG's contributions in assisting the Company to achieve its objectives, Ranger shall pay to ASG a performance fee of 7.5% of total amounts recovered from Tradeco beyond the $5 Million due that has not been contested.[17]

This leads to the inference that the retainer fee was for ASG services relating to navigating the current business landscape in Mexico and advice on business and political climate beyond Mexico. Since ASG did not recover anything from Tradeco, no performance fee was ever paid, therefore no fees were incurred by Ranger for work performed by ASG regarding Tradeco.

James Lam testified that "ASG also corresponded with Petróleos Mexicanos regarding the dispute. . . . **ASG has also provided other services to Ranger. Those services were**

---

[16] Letter Agreement between Albright Stonebridge Group and Ranger Offshore, Inc. dated June 5, 2015. Attached as Exhibit "C".
[17] Id.

**provided pursuant other agreements**. . . ."[18]  Unfortunately, with ASG's vague and ambiguous invoices addressed to the non-party Ranger Offshore, Inc., it is simply impossible to determine whether the work allegedly performed by ASG regarding the Charter Party was reasonable under the circumstances or even related to the arbitration at all.  "Ranger seeks to continue doing business in Mexico, generally, and with Petróleos Mexicanos "PEMEX") specifically."[19]  In particular Lam testified that "ASG also corresponded with Petróleos Mexicanos regarding the dispute."[20]  Ranger's contention throughout this arbitration is that Pemex was not in privity of contract with Ranger in the Charter Agreement.  Neither Lam's Declaration nor ASG's invoices provide any clue as the nature and substance of ASG's interaction with PEMEX.

James Lam testified that negotiations continued after the arbitration proceedings were underway[21] "on June 5, 2015, Ranger engaged the Albright Stonebridge Group ("ASG") to assist with those negotiations."[22]  According to Lam, Ranger specifically retained ASG to negotiate a resolution to the dispute with Tradeco, and that other activities were pursuant to other agreements.  According to Lam, ASG was almost successful in securing a settlement.  Lam testified that:

> ASG facilitated and participated in many face-to-face meetings with management for Respondents.  ASG and Ranger believed that a settlement was consummated as of December 2015.  Settlement papers were drafted.  Nevertheless, Respondents refused to finalize the documents and this prospective settlement unraveled in January 2016.[23]

Further, K&L Gates' invoices only refer to ASG three times (on July 2, 2015, July 7, 2015 and August 17, 2016).[24]  None of the fees or costs from ASG should be awarded.

---

[18] J. Lam Dec. p. 3.
[19] Letter Agreement between Albright Stonebridge Group and Ranger Offshore, Inc. dated June 5, 2015, p 2.
[20] J. Lam Dec. p. 3.
[21] It should be noted that on March 10, 2015 Ranger filed their complaint against Tradeco
[22] J. Lam Dec. p. 2.
[23] J. Lam Dec. p. 3.
[24] K&L Invoices regarding ASG attached as Exhibit "E".

### b.    Eddie Moses' Fees Were Not for Arbitration.

Eddie Moses was retained by Ranger "to provide further assistance in negotiations with Tradeco."[25]  Eddie Moses is not an attorney.  He is an industry consultant who was hired to help collect a debt outside of arbitration.  "He continued to meet extensively with Tradeco personnel in an ongoing effort to collect the debt, including during the pendency of the arbitration."[26]  Since Mr. Moses is not an attorney, he could only help negotiate a non-judicial settlement.  The amount of time spent by Eddie Moses meeting with Tradeco is limited at best.[27]

Much of the argument for excluding AGS' fee and costs applies to Mr. Moses regarding fees incurred outside the realm of arbitration.  There was no written contract produced between Mr. Moses and Ranger outlining their agreement and scope of work.  The scope and amount of his work is not recorded in writing at all since Moses did not submit detailed invoices to Ranger.

He was given a monthly check or checks totaling $12,500.00 each month.  Ranger paid his expenses including his entire monthly cell phone bill.

Moses testified that his involvement with Tradeco was all but finished as of March 2015.[28]  Moses' work in the matter may have substantially diminished, but Moses's pay checks did not.  By the time legal proceedings started, Mr. Moses' time spent on the matter was extremely limited, so much so, that it does not appear that he first communicated with K&L Gates until over a year after K&L Gates was retained.  Their first time entry regarding Eddie Moses was February 9, 2016.[29]  This indicates that Mr. Moses' time spent was outside of the arbitration process with counsel or he wasn't actually working on the Tradeco matter which is in

---

[25] J. Lam Declaration p 2.
[26] Id.
[27] See Declaration of Eduardo Andres Benton Zavalla, Attached as Exhibit "G", which outlines the amount of time Eddie Moses met and communicated with Tradeco.
[28] See Id. at p. 308-311.
[29] K&L Gates invoice 3224364 p.6.

line with what he testified to.   Eddie Moses was paid a total of $401,817.34 in fees and expenses

of which Ranger contends were all related to Tradeco.

**Universe of Time Entries of K&L Gates regarding Eddie Moses[30]**

| 2/9/16 | J.H. Hines "lengthy conference call with Ranger personnel including E. Moses" |
|---|---|
| 2/29/16 | J.F. Sullivan "meet with T. Cunningham, E. Moses, G. Arreola and J. Lam to prepare for depositions" |
| 5/8/16 | J.D. Wagner "Outline statements for E. Moses and B. Lam" |
| 5/11/16 | E.A. Gilman  "Work on draft witness statement of E. Moses" |
| 5/12/16 | E.A. Gilman "Correspondence with E. Moses regarding draft statement" |
| 5/12/16 | J.D. Wagner "Draft and revise Witness Statements for B. Lam, J. Mitchener, and E. Moses" |
| 5/13/16 | E.A. Gilman "Assist with finalizing witness statement for E. Moses" |
| 5/23/16 | J.F. Sullivan "Prepare for tomorrow's examination of J. Peltiere and E. Moses" |
| 5/23/16 | J.D. Wagner "prepare demonstrative exhibits for direct examination of E. Moses" |
| 5/24/16 | J.F. Sullivan "attend hearing (Campbell, Moses, Peltier) |
| 8/16/16 | M.H. Truong "attention to E. Moses' testimony at the arbitration hearing regarding his services and charges for same" |
| 8/17/16 | M.H. Truong "continue to review hearing transcript and attention to E. Moses' testimony regarding his services and charge for same" |

The timeline of time entries of K&L Gates indicates extremely limited involvement in the

arbitration which is consistent with Moses' own testimony that his "involvement got quite a bit

lighter"[31] as of March 2015.   Moses was paid from March 2015 to June 2016 a total of

$185,632.01 in fees and expenses after his own testimony states his involvement "got quite a bit

lighter."

It is unknown if Ranger employed Moses for matters unrelated to Tradeco.   What is

known is that Moses' main involvement in this matter occurred well before legal proceedings

and arbitration commenced.   The payments to Moses after arbitration commenced do not align

---

[30] K&L Gates invoices 3224364 p.6-7, 20-21; invoice 3260971 p. 6, 10-12, 19-20; invoice 3297020 p.4-5. Attached as Exhibit "F".
[31] Arbitration Transcript p. 311.

with what could be characterized as necessary or reasonable given the services provided.  None of Mr. Moses' fees and costs should be awarded.

Ranger hired Eddie Moses, a retired industry insider and non-lawyer, who spent limited time meeting and communicating with Tradeco.  He spent limited time 2014 and almost no time on the matter in 2015 or 2016 yet his fees paid by Ranger never changed.  Ranger cannot recover costs paid to politicians, namely the Albright Stonebridge Group, which was tasked with using political contacts in Mexico to pressure Respondents.

### 3.     No Default Prior to July 31, 2014 was Part of the Arbitration.

Attorney fees and costs should not be allowed for time prior to July 31, 2014 because there is no arbitrable default prior to that date.  The Amendment was signed by Ranger and Tradeco on June 13, 2014 with an effective date of April 14, 2014.  The Amendment cured all defaults up to that point.  Indeed, Ranger relied on the amendment in order to prove its case for the pre-suspension amounts owed.

Under the Amendment, the parties agreed to satisfy past due amounts by means of six unconditional and unqualified *Pagarés* to wit:

> USD 600,000 payable no later than June 30, 2014
> USD 1,189,711.63 payable no later than July 31, 2014
> USD 1,189,711.63 payable no later than August 29, 2014
> USD 989,711.63 payable no later than September 30, 2014
> USD 989,711.63 payable no later than October 31, 2014
> USD 989,711.63 payable no later than November 28, 2014.[32]

This Panel correctly found that:

> Instead of pursuing its rights to recover the then past due sums, Ranger entered into the Amendment and accepted Tradeco's promise to pay the then outstanding charter hire in accordance with the payment schedule set out therein, using the six *Pagarés* as vehicles to facilitate the contemplated payments.

---

[32] The payment schedule was set out in the amendment itself and does not rely on the execution of the *Pagarés* (op. cit., supra).  Amendment, p. 1

. . . .

Under the Amendment, the parties agreed to substitute the unconditional obligation to pay in accordance with the terms of the *Pagarés* for the obligation to pay the outstanding charter hire due as of April 15, 2014.[33]

Therefore the Amendment had the effect of substituting the unconditional obligation to pay under the Charter Party with the payment schedule as outlined above.  According to the Panel, the first default on the Amendment that is within the Panel's jurisdiction until the date Pagaré 3 would have been delivered, presumably the date Pagaré 2 should have been paid, *i.e.* July 31, 2014.

If Ranger had sought to recover attorney fees and expenses incurred prior to the execution of the Amendment then it should have included those costs in the Amendment, but it did not.

No attorney fees and costs incurred by Ranger prior to July 31, 2014 are recoverable since the two Pagarés due or past due as of that date were held by the Panel to be recoverable only in a Mexican Panel[34].

Now, all six Pagarés were admitted into evidence as executed.[35]  This fact was not controverted.  Everything that occurred prior to July 31, 2016, is either related to the Amendment (which resolved outstanding disputes) or Pagarés 1 and 2 (which are only enforceable by a Mexican Panel).  This Panel must not award fees and costs incurred by Ranger before July 31, 2014.

---

[33] Partial Final Award p 14.
[34] Partial Final Award p. 14.
[35] The Panel's award misstates the record in this regard.  Attached as Exhibit "A" are all six signed Pagarés admitted as Exhibit C of Respondents Response to Ranger Offshore Mexico, S. de R.L. de C.V.'s Motion for Partial Summary Disposition of the Stipulated Amount of Respondents' Pre-suspension Debt.

C. **Much of Ranger's Remaining Fees and Costs are Unreasonable.**

After reduction for fees and costs that are not part of the arbitration, the analysis turns to whether the remaining fees and costs are reasonable. The standard for determining the reasonableness of attorneys' fees is "substantially similar under both federal law and state law."[36] In both jurisdictions, courts apply the lodestar method to determine the reasonableness of the fee requested. First, the Ranger must prove "reasonable" amount of hours expended or the "compensable time."[37] The Panel must exclude any hours "[w]here the documentation of hours is inadequate." and "are excessive, redundant, or otherwise unnecessary."[38] Ranger's "proof" is wholly inadequate. If compensable time is established, "an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases" must be proven.[39] Finally, the Panel determines the "lodestar" by multiplying the compensable time by the appropriate hourly rate in the community for similar work.[40] Finally, the Panel decides whether the lodestar amount should be adjusted upward or downward based on the 12 *Johnson* factors.[41] There is a strong presumption that the lodestar method yields a reasonable fee and enhancements are allowed only in "rare" and "exceptional" cases.[42] This case presents circumstances that are neither rare nor exceptional.

1. **Some Hours Claimed by Ranger are Excessive and Must be Rejected or Reduced.**

---

[36] *Amlin*, 2011 WL 3271335, *3 (quoting *Guity v. C.C.I. Enter. Co.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

[37] *Id.*

[38] *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

[39] *Lewallen v. City of Beaumont*, Civil Action No. 1:05-CV-733-TH, 2009 WL 2175637, at *2 (E.D. Tex. July 20, 2009), *aff'd*, 394 Fed.Appx. 38 (5th Cir. 2010).

[40] *Id.* (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993)).

[41] *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). *See also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818-19 (Tex. 1997).

[42] *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764-65 (Tex. 2012).

The Texas Supreme Court recently provided guidance regarding the lodestar method.[43] The court stated that although the lodestar method is meant to be an "objective measure," it provides "financial incentive for counsel to expend excessive time in unjustified work ..."[44] The court further warned that "[a] meaningful review of the hours claimed is particularly important because the usual incentive to charge only reasonable attorney's fees is absent when fees are paid by the opposing party."[45] In order to "avoid these pitfalls," the court directed trial courts "to obtain sufficient information to make a meaningful evaluation of the application for attorney's fees."[46] As part of that evaluation, "[c]harges for duplicative, excessive, or inadequately documented work should be excluded."[47] In addition, district courts should exclude hours that were overstaffed, unproductive, unnecessary, and performed by overqualified persons.[48] "The hours surviving this vetting process are those reasonably expended on the litigation."[49]

Ranger bears the burden (1) of proving reasonableness and necessity of the fees and therefore, that they exercised billing judgment, (2) of providing sufficient documentation to support an award and (3) to segregate recoverable fees from unrecoverable fees.[50] It is not Tradeco's burden to prove that Ranger's fees are unreasonable.[51]

As discussed above, Ranger utilized 56 timekeepers. No meaningful attempt was made to justify or eliminate the duplicative time. Ranger also implemented an inefficient staffing

---

[43] *Olivas*, 370 S.W.3d at 762.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Leroy*, 906 F.2d at 1079 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F.3d 795, 799 (5th Cir. 2006); *Peak Technical Servs., Inc. v. Land & Sea Eng'g, LLC*, Civil Action No. H-10-1568, 2012 WL 3234203, *7-8 (S.D. Tex. Aug. 6, 2012).
[49] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).
[50] *Chaparral Texas, L.P. v. W. Dale Morris, Inc.,* Civil Action No. H-06-2468, 2009 WL 455282, at *2 (S.D. Tex. Feb. 23, 2009), *amended by*, Civil Action No. H-06-2468, 2009 WL 1810125 (S.D. Tex. June 23, 2009); *Compass Bank v. 288/59 GP LLC*, Civil Action No. H-09-4099, 2011 WL 739341, at *1 (S.D. Tex. Feb. 23, 2011).
[51] *Leroy*, 906 F.2d at 1079.

scheme with partners and senior attorneys performing the majority of the work. Ranger's "times" are thus replete with hours that were duplicative, excessive, unnecessary, and resulted from overstaffing as well as entries that are vague beyond comprehension. Moreover, Ranger failed to offer evidence segregating its hours among recoverable and unrecoverable claims and failed to remove hours expended on pursuing claims outside of arbitration.[52] Moreover, many of the time entries are simply undecipherable as to a claim or a party. Fortunately, it is known that the entire fees and costs of Gardere, Garza, Eddie Moses, ASG, Control Risks, and Phenix Investigations were **not** incurred to prosecute Ranger's claims in arbitration rendering them unnecessary. In determining a reasonable fee, the Fifth Circuit instructs that all such objectionable hours must be excluded.[53] The lack of information and specificity requires the exclusion of all those "entries."

### 2. Plaintiff Failed to Prove Billing Judgment or Sufficient Billing Judgment.

Ranger must prove that billing judgment was exercised for fees sought.[54] "Billing judgment requires documentation of the hours charged and the hours written off as unproductive, excessive, or redundant."[55] When a fee applicant fails to submit evidence of billing judgment, the "fee award should be reduced accordingly by a percentage intended to substitute for the exercise of billing judgment."[56] This reduction is "a practical means of trimming fat from a fee application."[57]

Ranger's counsel failed to exercise billing judgment. Billing records from the five law firms that performed the work are completely devoid of any evidence of billing judgment. No

---

[52] *Chapa*, 212 S.W.3d at 310-14.

[53] "Hours which, though actually expended, nevertheless 'are excessive, redundant, or otherwise unnecessary,' or which result from the case being 'overstaffed,' are *not* hours 'reasonably expended' and are to be excluded from this calculation." *Leroy*, 906 F.2d at 1079 (emphasis in original).

[54] *Saizan*, 448 F.3d at 799.

[55] *Id.*

[56] *Id.*

[57] *Lewallen*, 2009 WL 2175637, at *2 (quoting *Hilton v. Exec. Self Storage Assocs., Inc.*, Civil Action No. H-06-2744, 2009 WL 1750121 (S.D. Tex. June 18, 2009)).

reduction to the bills was undertaken by Ranger for fees incurred on claims outside of arbitration nor a reduction for claims which Ranger was unsuccessful prosecuting. Specifically, Ranger lost in the amount of damages it sought under invoice 14MX-1060B.[58] After eliminating the massive requisite amount the fees and costs unassociated with arbitration, which are unrecoverable, a further reduction to the remaining fees should be applied to account for the extent to which Ranger brought unsuccessful claims. Ranger has not suggested any reduction for those claims or to account for duplication of efforts. Applying controlling precedent to the "time records" demonstrates that a small reduction is insufficient to account for all of the excessive, duplicative and unproductive and overstaffed hours that must be eliminated. Fat trimming would require a substantial reduction after requisite eliminations were made.

### 3. Ranger's Compensable Hours Should be Reduced to Account for Time Spent Advancing Unrecoverable Claims and Actions Outside of Arbitration.

Because Texas law does not allow the recovery of attorneys' fees unless authorized by statute or by contract,[59] fee applicants must segregate attorneys' fees between claims for which they are recoverable and those not. Ranger advanced numerous actions outside of arbitration. Thus, Ranger must segregate recoverable from unrecoverable fees.[60] Moreover, "[e]ven legal fees that advance both recoverable and non-recoverable claims must further be examined to determine what portion of the charges for each service should be allocated to the recoverable

---

[58] Partial Final Award, p. 36-37.
[59] *Chapa,* 212 S.W.3d at 310–11.
[60] *Chapa,* 212 S.W.3d at 313–14; *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) (requiring segregation where preparation of pleadings on fraud and preparation and presentation of proof on the defendants' net worth were not required to advance plaintiff's contract and DTPA claims arising out of a vehicle sale).

claims."[61] The Panel "should not examine the work product as a whole, but parse the work into component tasks."[62]

### 4.    Ranger Failed to Show that the Proposed Hourly Rate Reflects the Market Rate for Attorneys in the Southern District of Texas.

The party seeking fees bears the burden of establishing the market rate and should present the Panel with evidence showing the reasonableness of the proposed rate.[63] The evidence to support an hourly rate must also address the rates <u>actually</u> billed and paid in similar lawsuits.[64] The "trial court may use its own expertise and judgment to independently assess the value of an attorney's services."[65] Further, the Panel should be "guided by the overriding principles that a reasonable attorney's fee is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys,'"[66] A district court is entitled to consider state bar surveys, fees in similar cases, and the skills of the attorneys in setting an hourly rate.[67]

John F. Sullivan, III attested in his affidavit that the "rates charged by the Firm [K&L Gates] for work performed in connection with these matters are rates customarily charged for professional services of this kind."  Sullivan included information on five timekeepers including himself, but failed to include any information regarding another 33 timekeepers at his firm. Some of these timekeepers have rates as high as $640, $690 and $765 per hour without any explanation as to whether that rate is in line with the market rate.

### 5.    Ranger's Fee Request is Rife with Excessive Hours Resulting from Duplication of Services and Overstaffing and Must be Reduced.

---

[61] *Vill. Contractors, Inc. v. Trading Fair IV, Inc.,* Civil Action No. H-09-2701, 2011 WL 2693386, at *4 (S.D. Tex. July 11, 2011).
[62] *In re Lesikar*, 285 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist] 2009, no pet.).
[63] *Lewallen*, 2009 WL 2175637, *2 (citing *Riley*, 99 F.3d at 760).
[64] *Amlin*, 2011 WL 3271335, at *3 (quoting *Watkins*, 531 F.Supp.2d at 784).
[65] *Id.* (citing *Davis v. Bd. of Sch. Comm'rs of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976)).
[66] *Leroy*, 906 F.2d at 1078-79.
[67] *Davis v. Perry*, 2014 WL 106990, at *30 (W.D. Tex. Jan. 8, 2014); *Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013).

Fifth Circuit precedent requires scrutiny of "the application for evidence of duplication of effort."[68] "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized."[69] In fact, "the level of scrutiny should increase in direct proportion to the number of lawyers employed."[70] For example, if two or more lawyers are in a courtroom or involved in a conference when only one is necessary, the time should be reduced.[71] The Fifth Circuit makes clear that "there should [] be[] no compensation for hours spent in duplicative activity or spent in the passive role of an observer while other attorneys performed."[72] District courts in the Fifth Circuit "*must* eliminate excessive or duplicative time."[73] Fee reduction for duplicative billing was mandated where two attorneys billed their clients for a substantial number of conferences attended by both attorneys.[74] If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized.[75] The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted.[76]

---

[68] *Abrams v. Baylor Coll. of Med.,* 805 F.2d 528, 536 (5th Cir. 1986).

[69] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated by*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

[70] *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001).

[71] *Abrams*, 805 F.2d at 535 (quoting *Johnson*, 488 F.2d at 717); *Alexander v. City of Jackson*, 456 Fed.Appx. 397, 400 (5th Cir. 2011) (affirming reduction of hours for eight (8) attorneys because efforts were duplicative and/or excessive).

[72] *Leroy*, 906 F.2d at 1079.

[73] *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1232 (5th Cir. 1997) (citing *Watkins,* 7 F.3d at 457) (emphasis added).

[74] *In re Skyport Global Comm'cns, Inc.*, 450 B.R. 637, 649 (S.D. Tex. 2011); *In re Saunders*, 124 B.R. 234, 236-37 (W.D. Tex. 1991); *In re Teraforce Tech. Corp.*, 347 B.R. 838, 858 (N.D. Tex. 2006) (Court agreed that both attorneys did not need to be present at the hearings, based on each attorney's level of skill and experience. The court was not persuaded by the arguments that each attorney prepared for and addressed different aspects of these hearings and therefore both needed to be involved in the hearings. While that may have been what happened, the Court found such excessive senior-level attorney involvement at hearings neither reasonable nor necessary without greater explanation. Court found it unreasonable for two attorneys to prepare and attend the same hearings.)

[75] *Walker v. U.S. Dept. of Housing & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996).

[76] *Id.*

Ranger's duplication of efforts was extreme.  Ranger routinely had multiple timekeepers prepare for and/or attend depositions.[77] For example:

March 18, 2016, Deposition of David Ignacio Espinosa Guzman[78]

| | |
|---|---|
| John F. Sullivan | 17.5 hours to prepare and attend |
| John D. Wagner | 17.2 hours to prepare and attend |
| M.H. Truong | 11.0 hours to prepare for deposition |

March 16, 2016, Deposition of Federico Alberto Martinez Urmeneta[79]

| | |
|---|---|
| John F. Sullivan | 17.3 hours to prepare and attend |
| J.H. Hines | 23.8 hours to prepare |
| John D. Wagner | 42.5 hours to prepare and attend |
| M.H. Truong | 27.4 hours to prepare |

There is no evidence that such overstaffing was necessary. Ranger did not meet its burden to prove that this duplication was reasonable in the instances of duplication.

**6.    Some of Ranger's Time Entries are Incomplete, Extremely Vague, and Inadequate.**

The exceptionally large amounts of time logged and generic time records fail to justify such an award. It is impossible to determine all instances of duplicative or unnecessary work because entries lack specificity. There is nothing to tie these activities to this case, much less for recoverable claims. "To establish the number of hours reasonably spent on the case, the fee application and record *must* include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work and his or her specific rate."[80] The fee submission must include "sufficient details of the work performed" to allow the court to make a "meaningful review of the fee request."[81] Sufficient details are required to allow the trial court to "discern from the evidence how many hours each of the tasks required and whether that

---

[77] *See Lewis v. Hurst Orthodontics,* 292 F.Supp.2d 908, 910 (W.D.Tex.2003) (finding that two attorneys' preparation for and attendance at mediation were "duplicative efforts that should have been avoided" and excluding hours for the lower-billing attorney).
[78] K&L Gates invoice 3239305
[79] K&L Gates invoice 3224364
[80] *Olivas,* 370 S.W.3d at 765.
[81] *Id*. at 764.

time was reasonable." If the applicant's documentation of the hours claimed is "vague or incomplete," the hours should be reduced or eliminated.[82] In other words, when the billing entries are "not illuminating as to the subject matter" or "vague as to precisely what was done," the Panel has discretion to *accept or reject* the fee application.[83]  Vague, non-descriptive entries should all be eliminated.

Ranger's compensable hours must be further reduced because there is no or insufficient detail to determine "precisely what was done," "how many hours each of the tasks required and whether that time was reasonable." For example, all of Garza, Tello y Asociados' and Morales Banuet & Associados SC's time entries provide no information as to the task at all and, as such, should not be awarded.[84] There are numerous entries that provide no information beyond "study of the case"[85] or "study/legal opinion."[86]   For what reason?  For what claim?  For what defendant?   What documents?   The Fifth Circuit rejects similar entries for "analyzing documents."[87] Such vague entries make it impossible to segregate time spent on recoverable from nonrecoverable claims, discern the extent to which the work was duplicative of work performed by others, or to otherwise determine whether the hours expended on the task were reasonable.

Ranger seeks to recover fees based on vague descriptions that simply state "advice on," "assist in preparation for arbitration," or the like.  Courts routinely disallow fee applicants that

---

[82] *Roscoe Indep. Sch. Dist.,* 119 F.3d at 1233.
[83] *Kellstrom,* 50 F.3d at 326-27; *Barrow v. Greenville Independent School District*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *1 (N.D. Tex. Dec. 20, 2005) (declining to award attorney's fees for the services described in a vague and ambiguous manner such as "review file," "preparation of correspondence," "review correspondence," and "review email."
[84] Garza Tello y Asociados invoices provide no explanation only "Legal fees for attention to matter."
[85] Jose Benutto Montemayor and Rosybel Valdes Valerio have 12.5 hours of simply "study of the case."
[86] Rolando Varga Cordero has 15 hours for "study/legal opinion."
[87] *Walker v. U.S. Dep't of Hous. and Urban Dev.,* 99 F.3d 761, 770 (5th Cir. 1996) (rejecting *entire* fee request for Rhodes, finding such entries as "library research," "analyzing documents," and "reading background documents" with no further explanation and lumped entries were "woefully inadequate").

employ such ambiguous descriptions.[88] These entries preclude the Panel from conducting a meaningful evaluation of the precise work that was done and whether it is related to the arbitration at all.[89] Vague or uncertain billing entries "diminish [ ] the objectivity that the lodestar method aims to provide."[90] "Litigants take their chances when submitting ... fee applications ... provid[ing] little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision.'"[91] Further, "[a]ttorneys cannot be rewarded for failing to comply with basic billing requirements."[92]

The Panel must reduce the number of hours claimed when the documentation is insufficient to determine the amount of hours reasonably expended.[93] Because Ranger failed to satisfy its burden of providing documentation of specific tasks, its compensable hours should be further reduced.[94]

### 7.    Ranger Cannot Recover Fees for Clerical or Non-legal Work

The Court should further reduce Ranger's recoverable hours because it has improperly billed for clerical work. "[P]urely clerical or secretarial tasks should not be billed at a paralegal

---

[88] *Watkins*, 531 F.Supp.2d at 783 (holding "trial preparation" is too vague); *Wright v. Blythe-Nelson*, Civil Action No. 3:99CV2522-D, 2004 WL 2870082, at *5 (N.D. Tex. Dec. 13, 2004) (disallowing recovery for attorneys' fees when work performed was described as "Prepare for trial"); *Abner v. Kansas City S. Ry. Co.*, Civil Action No. 03-0765, 2007 WL 1805782, *3-4 n.8 (W.D. La. June 21, 2007), *aff'd*, 541 F.3d 372 (5th Cir. 2008) (reducing lodestar by 15% for billing entries such as "trial preparation" and "case work up" because "it is impossible to judge the reasonableness of the time expended from such ambiguous descriptions").

[89] *Lewallen*, 2009 WL 2175637, at *7.

[90] *Olivas*, 370 S.W.3d at 763.

[91] *Kellstrom*, 50 F.3d at 327.

[92] *Abner*, 2007 WL 1805782, at *4.

[93] *Amlin*, 2011 WL 3271335, at *5.

[94] *Compass Bank*, 2011 WL 739341, at *2 (holding courts have the discretion "to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous" and reducing the requested fees by 40%); *Hopwood v. State of Texas*, 236 F.3d 256, 279 (5th Cir. 2000) (affirming 25% reduction in fees claimed for "inadequacy of the time entries, duplicative work product, and lack of billing judgment").

rate, regardless of who performs them."[95] Paralegal fees can be recovered only if "the work is substantive legal work that has traditionally been done by an attorney."[96] Likewise, when an attorney performs clerical work, it is not recoverable.[97]

When obtaining payment for work done by paralegals or legal assistants, Texas courts have required more information, such as: (1) [T]he qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.[98] Hours spent by Ranger's attorneys and paralegals performing purely clerical or nonsubstantive legal tasks should be eliminated.

For example, many of Mai H. Truong's billing entries are entirely clerical in nature. Truong billed around 613 hours at a rate of $275 per hour to perform tasks such uploading documents to secured site and updating binders.[99]  At a minimum then, Ranger's claim for fees and costs should be reduced by the product of 613 and $275, *i.e.*, $168,575.00.

The aforementioned tasks are "largely clerical or housekeeping matters and not legal work."[100] Fees should not be awarded for such work.[101]

---

[95] *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

[96] *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, Civil Action No. 3:05-CV-2097-B, 2008 WL 1958998, at *6 (N.D. Tex. Apr. 30, 2008).

[97] *Lewallen*, 2009 WL 2175637, at *6.

[98] *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 758 (Tex. 2012).

[99] K&L Gates, Invoice 3072290, p. 7.; "Update data and pleading file with complaint", Invoice 3086097, p. 12; "Further attention to production binders for both parties," Invoice 3224364, p. 19; "Compile Respondents' supplemental production and update production binders with same," Invoice 3211639, p. 11. There are too numerous examples of purely clerical work such as updating three ring binders to list.

[100] *Kimberly-Clark Corp.*, 2008 WL 1958998, at *7; *Lewallen*, 2009 WL 2175637, at *6; *Watkins*, 807 F.Supp. at 414 (filing court documents is clerical).

[101] *Id.*

### 8.    Ranger's Attorneys' Fees for Travel Time Should be Reduced or Eliminated.

Ranger's attorneys' fees for travel time must be reduced by 50%. It is common practice in the Fifth Circuit to bill at a 50% reduced rate for travel time.[102] J.H. Hines "billed" for travel at $525 per hour for a total of $14,745.00.  Because Ranger's attorneys have not met their burden to show that they are entitled to recover their full rate for travel, Respondents request that any fees reflecting travel time be reduced by at least 50% (*i.e.* $7,372.50) if not eliminated outright.

### 9.    Ranger's Request for Award of Enforcement Fees Should be Denied.

Ranger's request for unspecified enforcement fees is speculative and should be denied. Fees incurred after the Award should not be included.  This is similar to asking for fees for appealing a judgment before those fees are incurred.  "As with fees awarded for work during a trial, 'there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees.'"[103]  Ranger offers no explanation, and does not provide any amount, just for the panel to approve a future figure nor does the Charter Party provide for an award of such fees. Ranger's request for enforcement attorneys' fees should be denied.

### D.    Opinion as to Recoverable Fees and Costs.

The opinion of Brent L. Vannoy is set out in his Declaration which is attached hereto for all purposes as Exhibit "D" and reaches the conclusion that, based on the foregoing factors, his experience and training, the amount Ranger seeks should be reduced as follows:

> Fees and costs sought by Ranger are unreasonable and/or unnecessary <u>at least</u> in the following amounts:  Fees and costs not part of the arbitration ($852,395.73), unrecoverable clerical ($168,575.00), travel ($7,372.50), unidentified legal work performed by Mexican law firms ($16,032.36 and $24,800.00) and that the remaining fees and costs should be reduced by at least 29.3%, to account both for

---

[102] *Lewallen,* 2009 WL 2175637, at *10 ("compensating travel time at 50% of actual time is a common practice within the Fifth Circuit"). *See also Nicolas v. MCI Health & Welfare Plan No. 501,* Civil Action No. 2:05-CV-00442-TJW, 2009 WL 430397, at *2 (E.D. Tex. Feb. 18, 2009); *Wilkerson v. Atascosa Wildlife Supply,* 307 S.W.3d 357, 360 (Tex. App.—San Antonio 2009, pet. denied) (affirming recovery for travel time at ½ hourly rate).
[103] *Amlin*, 2011 WL 3271335, at 10.

the amount by which Ranger pursued unsuccessful claims and for the lodestar reasonableness factors.

Tables showing the necessary reductions are attached as Exhibit "H."

WHEREFORE, PREMISES CONSIDERED, TRADECO INFRAESTRUCTURA, S. A. DE C.V. AND GRUPO TRADECO, S.A. DE C.V. respectfully requests the Panel DENY Ranger's Motion for Award of Attorneys' Fees and Costs, and for such other and further relief, at law or in equity, to which he may be entitled.

Respectfully submitted,

HUGHES WATTERS ASKANASE, LLP

*/s/ Brent L. Vannoy*
Brent L. Vannoy
TBN: 00794782
Total Plaza
1201 Louisiana, 28th Floor
Houston, Texas 77002
(713) 759-0818 – Telephone
(713) 759-6834 – Facsimile
bvannoy@hwa.com


BLANK ROME, LLP

*/s/ Michael K. Bell*
Michael K. Bell
TBN: 02081200
MBell@BlankRome.com
Jay T. Huffman
TBN: 24059980
JHuffman@BlankRome.com
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6601 – Telephone
(713) 228-6605 – Facsimile

ATTORNEYS FOR RESPONDENTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this Response was served via email on the following on November 21, 2016.

Gene Silva – ejsilva@swbell.net

Anibal Sabater – Anibal.Sabater@chaffetzlindsey.com

Patrick Cooney – Patrick.Cooney@roystonlaw.com

John F. Sullivan, III – john.sullivan@klgates.com

Brett J. Young – brett.young@klgates.com

Beth A. Gilman – beth.gilman@klgates.com

Devin Wagner – devin.wagner@klgates.com

Julius H. Hines – Julius.hines@klgates.com

Jay Huffman – Jhuffman@BlanRome.com

Mike Bell – Mbell@BlankRome.com


*/s/ Brent L/ Vannoy*
Brent L. Vannoy

**EXHIBIT**
**A**

PAGARÉ

Por este Pagaré, la Sociedad Mercantil denominada TRADECO INFRAESTRUCTURA, S.A. DE C.V., representada por sus apoderados el señor Ingeniero Hilario de Jesús Orozco Unzueta y el Ingeniero David Espinoza Guzmán (en delante, la SUSCRIPTORA) y la sociedad denominada GRUPO TRADECO, S.A. DE C.V. en su carácter de AVAL ('en adelante, el AVAL), por valor recibido, prometen pagar incondicionalmente a RENGER OFFSHORE MÉXICO, S. DE R.L. DE C.V. el día 30 de junio de 2014, la cantidad de US$600,000.00 (seiscientos mil dólares Moneda de Curso Legal en los Estados Unidos de América).

PAGO: El pago se efectuará sin compensación alguna y sin necesidad de previo cobro, presentación, ni diligencia alguna, en fondos inmediatamente disponibles, en el domicilio convencional de RANGER OFFSHORE MÉXICO, S. DE R.L. DE C.V. ubicado en Av. Edzna #49, Parque Industrial Mundo Maya, Ciudad del Carmen, Campeche, México, C.P. 24153. La SUSCRIPTORA podrá realizar pagos parciales al total estipulado en el presente pagaré antes de la fecha de vencimiento.

CAPITAL: Será pagada por el SUSCRIPTORA en una sola exhibición al término del plazo, el cual vencerá el día 30 de junio de 2014. El pago se realizará en pesos (Moneda Nacional) y será de acuerdo al tipo de cambio que publique el Banco de México en la fecha de pago.

INTERESES: A partir de la fecha de suscripción del presente PAGARÉ y hasta la fecha de pago antes señalada, la suma principal insoluta devengará intereses ordinarios, que serán pagados en una sola exhibición junto con el principal, con base en el cual se calcularán los intereses que cause la suma principal de este Pagaré, a una tasa de interés anual igual al promedio de los últimos cuatro (4) meses de la tasa de interés interbancaria de equilibrio (TIIE) a 28 días publicada por el Banco de México mediante la Red Electrónica Mundial con el nombre de dominio www.banxico.org.mx, más un (1) punto.

En caso de que el suscriptor incumpla con el pago de principal que se obliga a realizar conforme al presente PAGARÉ, la suma insoluta vencida y no pagada devengará intereses moratorios diarios, desde la fecha en que incurra en mora hasta la fecha de su pago total, a la tasa anualizada que resulte multiplicar por 2.0 + 1 la tasa de interés ordinaria prevista en el presente PAGARÉ.

Asimismo, la SUSCRIPTORA se obliga a pagar al tenedor, junto con la suma principal y los intereses ordinarios y/o moratorios respectivos, los gastos en que, en su caso, tenga que incurrir el tenedor para hacer efectivo el cobro del presente Pagaré, incluyendo los honorarios de los abogados del tenedor.

La SUSCRIPTORA y/o el AVAL harán todos los pagos en relación con principal, intereses y las demás cantidades pagaderas conforme a este PAGARÉ, libres de y sin deducción alguna por cualquier responsable fiscal en relación con dichos pagos, pagaderos en cualquier jurisdicción.

Para todo lo relativo a la interpretación, ejecución y cumplimiento del presente PAGARÉ, las partes se someten a las leyes aplicables y a los tribunales competentes en la Ciudad de México, Distrito Federal, y expresamente renuncian a cualquier otro fuero, presente o futuro, que en razón de sus domicilios, de la ubicación de sus bienes o de cualquier otro concepto, pudiere corresponderles.

Este Pagaré se suscribe en la Ciudad de México, Distrito Federal a las 11 de junio de 2014.

Acepto y pagaré a su vencimiento:

*[handwritten: Reserve Pagare po time + Juely]*

**EXHIBIT**
**C**

Tradeco Infraestructura S.A. de C.V.
Suscriptora
Domicilio: Insurgentes Sur 1647 Local D, México D.F.

Grupo Tradeco, S.A. de C.V.
Aval
Domicilio: Insurgentes Sur 1647 Local D, México, D.F.

Ing. Hilario de Jesús Orozco Unzueta
Ing. David Ignacio Espinosa Guzmán

Ing. David Ignacio Espinosa Guzmán
Ing. Hilario de Jesús Orozco Unzueta

tradeco 000516

PAGARÉ

Por este Pagaré, la Sociedad Mercantil denominada TRADECO INFRAESTRUCTURA, S.A. DE C.V., representada por sus apoderados el señor Ingeniero Hilario de Jesús Orozco Unzueta y el Ingeniero David Espinoza Guzmán (en delante, la SUSCRIPTORA) y la sociedad denominada GRUPO TRADECO, S.A. DE C.V. en su carácter de AVAL ( en adelante, el AVAL), por valor recibido, prometen pagar incondicionalmente a RANGER OFFSHORE MÉXICO, S. DE R.L. DE C.V. el día 31 de Julio de 2014, la cantidad de US$1,189,711.63 (un millón ciento ochenta y nueve mil setecientos once dólares 63/100 moneda de Curso Legal en los Estados Unidos de América).

PAGO: El pago se efectuará sin compensación alguna y sin necesidad de previo cobro, presentación, ni diligencia alguna, en fondos inmediatamente disponibles, en el domicilio convencional de RANGER OFFSHORE MÉXICO, S. DE R.L. DE C.V. ubicado en Av. Edzna #49, Parque Industrial Mundo Maya. Ciudad del Carmen, Campeche, México, C.P. 24153. La SUSCRIPTORA podrá realizar pagos parciales al total estipulado en el presente pagaré antes de la fecha de vencimiento.

CAPITAL: Será pagada por el SUSCRIPTORA en una sola exhibición al término del plazo, el cual vencerá el día 30 de junio de 2014. El pago se realizará en pesos (Moneda Nacional) y será de acuerdo al tipo de cambio que publique el Banco de México en la fecha de pago.

INTERESES: A partir de la fecha de suscripción del presente PAGARÉ y hasta la fecha de pago antes señalada, la suma principal insoluta devengará intereses ordinarios, que serán pagados en una sola exhibición junto con el principal, con base en el cual se calcularán los intereses que causa la suma principal de este Pagaré, a una tasa de interés anual igual al promedio de los últimos cuatro (4) meses de la tasa de interés interbancaria de equilibrio (TIIE) a 28 días publicada por el Banco de México mediante la Red Electrónica Mundial con el nombre de dominio. www.banxico.org.mx, más un (1) punto.

En caso de que el suscriptor incumpla con el pago de principal que se obliga a realizar conforme al presente PAGARÉ, la suma insoluta vencida y no pagada devengará intereses moratorios diarios, desde la fecha en que incurra en mora hasta la fecha de su pago total, a la tasa anualizada que resulte multiplicar por 2.0 + 1 la tasa de interés ordinaria prevista en el presente PAGARÉ.

Asimismo, la SUSCRIPTORA se obliga a pagar al tenedor, junto con la suma principal y los intereses ordinarios y/o moratorios respectivos, los gatos en que, en su caso, tenga que incurrir el tenedor para hacer efectivo el cobro del presente Pagaré, incluyendo los honorarios de los abogados del tenedor.

La SUSCRIPTORA y/o el AVAL harán todos los pagos en relación con principal, intereses y las demás cantidades pagaderas conforme a este PAGARÉ, libres de y sin deducción alguna por cualquier responsable fiscal en relación con dichos pagos, pagaderos en cualquier jurisdicción.

Para todo lo relativo a la interpretación, ejecución y cumplimiento del presente PAGARÉ, las partes se someten a las leyes aplicables y a los tribunales competentes en la Ciudad de México, Distrito Federal, y expresamente renuncian a cualquier otro fuero, presente o futuro, que en razón de sus domicilios, de la ubicación de sus bienes o de cualquier otro concepto, pudiere corresponderles.

Este Pagaré se suscribe en la Ciudad de México, Distrito Federal a las 11 de junio de 2014.

Acepto y pagaré a su vencimiento:

Tradeco Infraestructura S.A. de C.V.
Suscriptora
Domicilio: Insurgentes Sur 1647 Local D, México, D.F.

Grupo Tradeco, S.A. de C.V.
Aval
Domicilio: Insurgentes Sur 1647 Local D, México, D.F.

Ing. Hilario de Jesús Orozco Unzueta
Ing. David Ignacio Espinosa Guzmán

Ing. David Ignacio Espinosa Guzmán
Ing. Hilario de Jesús Orozco Unzueta

tradeco 000517

PAGARE

Por este Pagaré, la Sociedad Mercantil denominada TRADECO INFRAESTRUCTURA, S.A. DE C.V., representada por sus apoderados, el señor Ingeniero Hilario de Jesús Orozco Urzúa y el Ingeniero David Espinoza Guzmán (en adelante la SUSCRIPTORA), la Sociedad denominada GRUPO TRADECO, S.A. DE C.V. en su carácter de AVAL (en adelante el AVAL), por valor recibido prometen pagar incondicionalmente a RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V. el día 29 de agosto de 2014, la cantidad de US$1,189,711.63 (un millón ciento ochenta y nueve mil setecientos once dólares 63/100 moneda de Curso Legal en los Estados Unidos de América).

PAGO: El pago se efectuará sin compensación alguna y sin necesidad de previo cobro, presentación ni diligencia alguna, en fondos inmediatamente disponibles, en el domicilio convencional de RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V. ubicado en Av. Ezdna #49, Parque Industrial Mundo Maya, Ciudad del Carmen, Campeche, México, C.P. 24153. La SUSCRIPTORA podrá realizar pagos parciales al total estipulado en el presente pagaré antes de la fecha de vencimiento.

CAPITAL: Será pagada por el SUSCRIPTORA en una sola exhibición al término del plazo, el cual vencerá el día 29 de agosto de 2014. El pago se realizará en pesos (Moneda Nacional) y será de acuerdo al tipo de cambio que publique el Banco de México en la fecha de pago.

INTERESES: A partir de la fecha de suscripción del presente PAGARE y hasta la fecha de pago antes señalada, la suma principal insoluta devengará intereses ordinarios, que según pactan las partes, que sean por la exhibición junto con principal por base en la obligación de cargar los intereses que cause la suma principal de este Pagaré a una tasa de interés anual a la promedio de los últimos cuatro (4) meses de la tasa de interés interbancaria de equilibrio (TIIE) a 28 días publicada por el Banco de México mediante en la Red Electrónica Mundial con el nombre de dominio www.banxico.org.mx, más un interés 4%.

En caso de que el suscriptor incumpla con el pago de principal o pago total para realizar conforme al presente PAGARE la suma insoluta vencida y no pagada devengará intereses moratorios diarios. Desde la fecha en que ocurra en mora hasta la fecha de su pago total a la tasa anualizada que resulte multiplicar de 2.0 x a la tasa de interés ordinaria prevista en el presente PAGARE.

Asimismo la SUSCRIPTORA se obliga a pagar al tenedor junto con la suma principal e intereses moratorios los costos y gastos respectivos de gastos en que, en su caso, tenga que incurrir el tenedor para hacer efectivo el cobro del presente Pagaré, incluyendo los honorarios de los abogados del tenedor.

La SUSCRIPTORA y el AVAL harán todos los pagos en relación con la suma e intereses y las demás cantidades pagaderas conforme a este PAGARE, libres de retención de algún fiscal en caso de estar sujetos a retención. Todos dichos pagos pagaderos en cualquier jurisdicción.

Para todo lo relativo a las interpretación, ejecución y cumplimiento del presente PAGARE, las partes se someten a las leyes aplicables y a los tribunales competentes en la Ciudad de México, Distrito Federal, y expresamente renuncian a cualquier otro fuero, presente o futuro que en razón de sus domicilios, de la ubicación de sus bienes o de cualquier otro concepto, pudiere corresponderles.

Este Pagaré se suscribe en la Ciudad de México, Distrito Federal a las 17h del 11 de Junio de 2014.

Acepto y pagaré a su vencimiento

Tradeco Infraestructura S.A. de C.V.                    Grupo Tradeco S.A. de C.V.
Suscriptora                                                              Aval

Domicilio: Insurgentes Sur 1647 Local D, México D.F.    Domicilio: Insurgentes Sur 1647 Local D, México D.F.

Ing. Hilario de Jesús Orozco Urzúa                          Ing. David Ignacio Espinoza Guzmán
Ing. David Ignacio Espinoza Guzmán                        Ing. Hilario de Jesús Orozco Urzúa

Tradeco 000518

PAGARÉ

Por este Pagaré, la Sociedad Mercantil denominada TRADECO INFRAESTRUCTURA, S.A. DE C.V., representada por sus apoderados el señor Ingeniero Hilario de Jesús Orozco Unzueta y el Ingeniero David Espinoza Guzmán (en adelante, la SUSCRIPTORA) y la sociedad denominada GRUPO TRADECO, S.A. DE C.V. (en su carácter de AVAL, (en adelante el AVAL), por valor recibido, prometen pagar incondicionalmente a RANGER OFFSHORE MÉXICO S. DE R.L. DE C.V. el día 30 de septiembre de 2014 la cantidad de US\$989,711.63. (novecientos ochenta y nueve mil setecientos once dólares 63/100 Moneda de Curso Legal en los Estados Unidos de América).

PAGO: El pago se efectuará sin compensación alguna y sin necesidad de previo cobro, presentación, ni diligencia alguna, en fondos inmediatamente disponibles, en el domicilio convencional de RANGER OFFSHORE MÉXICO, S. DE R.L. DE C.V. ubicado en Av. Edzna #49, Parque Industrial Mundo Maya, Ciudad del Carmen, Campeche, México. C.P. 24153. La SUSCRIPTORA podrá realizar pagos parciales al total estipulado en el presente pagaré antes de la fecha de vencimiento.

CAPITAL: Será pagada por el SUSCRIPTORA en una sola exhibición al término del plazo, el cual vencerá el día 30 de septiembre de 2014. El pago se realizará en pesos (Moneda Nacional) y será de acuerdo al tipo de cambio que publique el Banco de México en la fecha de pago.

INTERESES: A partir de la fecha de suscripción del presente PAGARÉ y hasta la fecha de pago antes señalada, la suma principal insoluta devengará intereses ordinarios, que serán pagados en una sola exhibición junto con el principal con base en el cual se calcularán los intereses que causará la suma principal de este Pagaré, la una tasa de interés anual igual al promedio de los últimos cuatro (4) meses de la tasa de interés interbancaria de equilibrio (TIIE) a 28 días publicada por el Banco de México mediante la Red Electrónica Mundial con el nombre de dominio www.banxico.org.mx mas un (+) punto.

En caso de que el suscriptor incumpla con el pago de principal que se obliga a realizar conforme al presente PAGARÉ, la suma insoluta vencida y no pagada devengará intereses moratorios diarios desde la fecha de que incurra en mora hasta la fecha de su pago total, pactase anualizada que resulta multiplicar por 2 (dos) la tasa de interés ordinaria prevista en el presente PAGARÉ.

Asimismo, la SUSCRIPTORA se obliga a pagar al tenedor junto con la suma principal y los intereses ordinarios y/o moratorios, respectivos, gastos en que, en su caso, incurra que el tenedor para hacer efectivo el cobro del presente Pagaré, incluyendo los honorarios de los abogados del tenedor.

La SUSCRIPTORA y/o el AVAL harán todos los pagos en relación con principal, intereses y las demás cantidades pagaderas conforme a este PAGARÉ, libres de y sin deducción alguna por cualquier responsable fiscal en relación con dichos pagos, pagaderos en cualquier jurisdicción.

Para todo lo relativo a la interpretación, ejecución y cumplimiento del presente PAGARÉ, las partes (se) someten a las leyes aplicables y a los tribunales competentes en la Ciudad de México, Distrito Federal, y expresamente renuncian a cualquier otro fuero, presente o futuro, que, en razón de sus domicilios, de la ubicación de sus bienes o de cualquier otro concepto, pudiere corresponderles.

Este Pagaré se suscribe en la Ciudad de México, Distrito Federal, las 11 de junio de 2014.

Acepto y pagaré a su vencimiento.

Tradeco Infraestructura, S.A. de C.V.                Grupo Tradeco, S.A. de C.V.
Suscriptora                                          Aval
Domicilio: Insurgentes Sur 1647 Local D, México D.F.   Domicilio: Insurgentes Sur 1647 Local D, México, D.F.

Ing. Hilario de Jesús Orozco Unzueta                Ing. David Ignacio Espinoza Guzmán
Ing. David Ignacio Espinoza Guzmán                  Ing. Hilario de Jesús Orozco Unzueta

tradeco 000519



PAGARE

Por este Pagaré, la Sociedad Mercantil denominada TRADECO INFRAESTRUCTURA, S.A. DE C.V., representada por sus apoderados el señor Ingeniero Hilario de Jesús Orozco Unzueta y el Ingeniero David Espinoza Guzmán (en delante la SUSCRIPTORA) y la sociedad denominada GRUPO TRADECO, S.A. DE C.V., en su caracter de AVAL (en adelante el AVAL), por valor recibido, prometemos pagar incondicionalmente a RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V. el día 28 de noviembre de 2014, la cantidad de US$989,711.63 (novecientos ochenta y nueve mil setecientos once dólares 63/100 Moneda de Curso Legal en los Estados Unidos de América).

PAGO: El pago se efectuará sin compensación alguna, y sin necesidad de previo cobro, presentación, ni diligencia alguna, en fondos inmediatamente disponibles, en el domicilio convencional de RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V. ubicado en Av. Edzna #49, Parque Industrial Mundo Maya, Ciudad del Carmen, Campeche, México, C.P. 24154. La SUSCRIPTORA podrá realizar pagos parciales al total estipulado en el presente pagaré antes de la fecha de vencimiento.

CAPITAL: Será pagada por la SUSCRIPTORA en una sola exhibición al término del plazo, el cual vencerá el día 28 de noviembre de 2014. El pago se realizará en pesos (Moneda Nacional) y será de acuerdo al tipo de cambio que publique el Banco de México en la fecha de pago.

INTERESES: A partir de la fecha de suscripción del presente PAGARE y hasta la fecha del pago antes señalada, la suma principal insoluta devengará intereses ordinarios que serán pagados en una sola exhibición junto con el principal, con base en el cual se calcularán los intereses que causa la suma principal de este Pagaré a una tasa de interés anual igual al promedio de los últimos cuatro (4) meses de la tasa de interés interbancaria de equilibrio (TIIE) a 28 días, que cada uno el Banco de México reconoce en el Diario Electrónico, publicado con el nombre de dominio www.banxico.org.mx más un interés.

En caso de que la suscriptora incumpla con el pago del principal se obliga a realizar conforme al presente PAGARE, la suma insoluta vencida y no pagada devengará intereses moratorios desde los daños, hasta la fecha de vencimiento y hasta la fecha de su pago total, a la tasa anualizada equivalente al tipo de interés ordinario la tasa de interés ordinaria revista en el presente PAGARE.

Asimismo la SUSCRIPTORA se obliga a pagar al tenedor, tanto como la suma principal y los intereses ordinarios y/o moratorios respectivos, los gastos en que en su caso incurra el tenedor para hacer efectiva el cobro del presente Pagaré, incluyendo los honorarios de los abogados del tenedor.

La SUSCRIPTORA y el AVAL hará todos los pagos en relación con principal, intereses y/o demás cantidades pagaderas conforme a este PAGARE libres de cualquier deducción alguna por cualquier responsabilidad en relación con dichos pagos, pagaderos en cualquier jurisdicción.

Para todo lo relativo a la interpretación, ejecución y cumplimiento del presente PAGARE, las partes se someten a las leyes aplicables y a los tribunales competentes en la Ciudad de México, Distrito Federal y expresamente renuncian a cualquier otro fuero presente o futuro, que en razón de sus domicilios, de la ubicación de sus bienes o de cualquier otro concepto, pudiere corresponderles.

Este Pagaré se suscribe en la Ciudad de México, Distrito Federal a las 11 de junio de 2014.

Acepto y pagaré a su vencimiento.

Tradeco Infraestructura S.A. de C.V.
Suscriptora

Domicilio: Insurgentes Sur #647, Local D, México D.F.

Grupo Tradeco, S.A. de C.V.
Aval

Domicilio: Insurgentes Sur 647, Local D, México D.F.

Ing. Hilario de Jesús Orozco Unzueta
Ing. David Daniel Espinosa Guzmán

Ing. David Daniel Espinosa Guzmán
Ing. Hilario de Jesús Orozco Unzueta

Tradeco_00052

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RANGER OFFSHORE MEXICO, S. DE
R.L. DE C.V.,

                 Plaintiff,

       v.

GRUPO TRADECO, S.A. DE C.V., and,
TRADECO INFRAESTRUCTURA, S.A.
DE C.V.

                 Defendants.
-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUL 0 1 2015
```

15 CV 01806 (AJN)

**NOTICE OF VOLUNTARY
DISMISSAL AND ORDER**

PLEAS TAKE NOTICE that the above-entitled action is hereby voluntarily dismissed

without prejudice by Plaintiff as to the named Defendants pursuant to Rule 41(a)(1) of the Rules

of Civil Procedure for the United States Courts. Defendants have not appeared, answered, or

filed a motion for summary judgment in this action. No costs are to be assessed to any party.

Dated: New York, New York
      June 29, 2015

                           K&L GATES, LLP
                           Attorneys for Plaintiff
                           RANGER OFFSHORE MEXICO, S. DE
                           R.L. DE C.V.

            By:

                           George K. Kontakis (GK-0484)
                           599 Lexington Avenue
                           New York, New York 10022
                           Tel:  (212) 536-3900
                           Fax:  (212) 536-3901
                           Email: george.kontakis@klgates.com

SO ORDERED:  4/1/15

Hon. Alison J. Nathan, U.S.D.J.

**EXHIBIT
B**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

#### CASE NO. 15-20985-CIV-UNGARO/OTAZO-REYES

#### "IN ADMIRALTY"

RANGER OFFSHORE MEXICO, S. DE
R.L. DE C.V.,

        Plaintiff,

v.

GRUPO TRADECO, S.A. DE C.V.,

        Defendant.

_____/

#### NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE

Plaintiff, Ranger Offshore Mexico, S. de R.L. de C.V., by and through its undersigned

counsel, hereby submits its Notice of Voluntary Dismissal of Action Without Prejudice for the

instant case pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  Defendant has not appeared, answered, or

filed a motion for summary judgment in this action.  No costs are to be assessed to any party.

Dated: April 20, 2015

                                       Respectfully submitted,

                                       */s/  Christina M. Paul*
                                       Christina M. Paul, Esq.
                                       Florida Bar No. 596876
                                       christina.paul@klgates.com
                                       **K&L GATES LLP**
                                       Southeast Financial Center
                                       200 S. Biscayne Boulevard, Suite 3900
                                       Miami, FL  33131-2399
                                       Telephone:     305-539-3300
                                       Facsimile:     305-358-7095
                                       *Attorneys for Plaintiff*
                                       *Ranger Offshore Mexico, S. de R.L. de C.V.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:15-cv-20985-UU

RANGER OFFSHORE MEXICO,
S. DE R.L. DE C.V.,

       Plaintiff,

v.

GRUPO TRADECO, S.A. DE C.V.,

       Defendant.

_____/

## ORDER

THIS CAUSE is before the Court *sua sponte*.

THE COURT has reviewed the record and is otherwise fully advised in the premises. On

April 20, 2015, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice, D.E. 14,

notifying the Court that Plaintiff voluntarily dismisses this action. Accordingly, it is hereby

ORDERED AND ADJUDGED that, for Administrative Purposes, this case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th day of April, 2015.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record

**Brian S. O'Rear**

| | |
|---|---|
| **From:** | Gilman, Beth A. <Beth.Gilman@klgates.com> |
| **Sent:** | Tuesday, November 15, 2016 11:22 AM |
| **To:** | Brent L. Vannoy |
| **Cc:** | Brian S. O'Rear; Sullivan III, John F.; Hines, Julius H.; Wagner, Devin |
| **Subject:** | RE: Ranger v. Tradeco [KLG-USW_Active01.FID96780] |
| **Attachments:** | Albright Stonebridge_001.pdf; ASG-Ranger Nigeria LOE 11-25-15 Signed.pdf |

Brent,

The ASG agreements are attached.  We're still tracking down legible copies of the other documents.

Regards, Beth

**K&L GATES**

**Elizabeth A. Gilman**
Direct: 713-815-7327
Mobile: 713-702-1676
Fax: 713-815-7301
beth.gilman@klgates.com
www.klgates.com

**From:** Gilman, Beth A.
**Sent:** Tuesday, November 15, 2016 9:22 AM
**To:** 'Brent L. Vannoy'
**Cc:** Brian S. O'Rear
**Subject:** RE: Ranger v. Tradeco [KLG-USW_Active01.FID96780]

Brent,

I'll work on getting you legible copies and follow up about the agreements.

Regards, Beth

**K&L GATES**

**Elizabeth A. Gilman**
Direct: 713-815-7327
Mobile: 713-702-1676
Fax: 713-815-7301
beth.gilman@klgates.com
www.klgates.com

**From:** Brent L. Vannoy [mailto:blv@hwallp.com]
**Sent:** Monday, November 14, 2016 3:26 PM
**To:** Gilman, Beth A.
**Cc:** Brian S. O'Rear
**Subject:** RE: Ranger v. Tradeco

Beth,



1

I was out of the office Friday. Thanks for the inquiry. We are still reviewing your materials. However, I do have a few questions at this point.

Albright.

Behind invoice 6586 are about 5 pages that are illegible. If you have legible copies, can you please provide those? Also, the Albright invoices reference an agreement dated June 5, 2015. I'd like to see that agreement, please. Likewise, Mr. Lam refers to "other agreements" with Albright. In order to compare what was done under one, as opposed to another agreement, I'd like to see the other agreements, as well, please.

Best regards,

**Brent L. Vannoy | Partner**
T: (713) 328-2828 | F: (713) 759-6834 | E: blv@hwa.com
**HUGHES, WATTERS & ASKANASE, L.L.P.**
Total Plaza | 1201 Louisiana St., 28th Fl. | Houston, TX 77002



*CONFIDENTIALITY STATEMENT: This electronic message transmission contains information from the law firm of Hughes, Watters & Askanase, L.L.P. and is confidential or privileged. The information is intended only for the use of the person(s) named above. If you are not the intended recipient, any disclosure, copying, distribution or use of or any other action based on the contents of this information is strictly prohibited. If you received this electronic transmission in error, please notify us by telephone at (800) 284-0818.*

---

**From:** Gilman, Beth A. [mailto:Beth.Gilman@klgates.com]
**Sent:** Friday, November 11, 2016 11:31 AM
**To:** Brent L. Vannoy
**Subject:** Ranger v. Tradeco

Brent,

Now that you've had a chance to review all the invoices, do you want to have a call to confer? I'm available this afternoon or Monday.

Regards, Beth



**Elizabeth A. Gilman**
Associate
K&L Gates LLP
1000 Main St.
Suite 2550
Houston, TX 77002
Direct: 713-815-7327
Mobile: 713-702-1676
Fax: 713-815-7301
beth.gilman@klgates.com
www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Beth.Gilman@klgates.com.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Beth.Gilman@klgates.com.



ALBRIGHT
STONEBRIDGE
GROUP

June 5, 2015

*Proprietary & Confidential*
VIA ELECTRONIC MAIL

Mr. Bill J. Lam
Chief Executive Officer
Ranger Offshore, Inc.
10370 Richmond Avenue
Suite 1000
Houston, TX 77042

Dear Bill:

We enjoyed our conversations with you and your colleagues at Ranger, and are pleased to present this proposal for Albright Stonebridge Group LLC ("ASG") to advise and assist Ranger Offshore, Inc. and/or its affiliates ("Ranger" or the "Company") with respect to obtaining payment of an outstanding debt owed by Grupo Tradeco, S.A. de C.V. and Tradeco Infraestructura, S.A. de C.V. ("Tradeco").

We are enthusiastic about the prospect of working alongside you and your colleagues, and our team is well-positioned to help Ranger. The ASG team and network are composed of former government officials and leaders from the business community who maintain strong, senior-level relationships in government, business, and civil society in Mexico, and have significant experience helping clients build and protect value in challenging markets around the world.

### BACKGROUND AND STRATEGY

Ranger has been providing marine and subsea construction support services for the offshore oil and gas industry in the Gulf of Mexico and other regions for about 15 years. Ranger was engaged by and provided services to Tradeco in the the Gulf of Mexico starting in early 2014. Despite Ranger's best efforts to accommodate Tradeco's changing business circumstances (including entering into a series of contract amendments), Tradeco failed to make payment of invoices for services rendered under the contract. Recently, Ranger initiated litigation and arbitration proceedings to obtain payment for the approximately $20 Million owed by Tradeco to Ranger. The Company and its investors, SunTx Capital Partners, seek ASG's advice and assistance to pursue an alternative resolution mechanism for payment.

### APPROACH AND SCOPE OF WORK

ASG is prepared to implement an outreach strategy whereby ASG will engage key Tradeco and Mexican officials to pursue an acceptable resolution of this outstanding debt and strengthen Ranger's ability to continue doing business with Mexican offshore oil companies. Our proposed approach to this strategy will consist of the following elements:

1. Maximize Recovery of Outstanding Debt

   To increase the probability of recovering the outstanding debt, we will seek to engage the highest levels of Tradeco management and explain the litigation and reputational risks associated with continuing non-resolution of this dispute.

   As with any debt negotiation, we expect negotiations will be an iterative process, and we will consult with you and your team to provide regular updates and ensure alignment in strategy and implementation. For instance, in the event that Tradeco continues to delay payments, ASG could support Ranger in seeking to identify assets and projects that Ranger could target in litigation and/or arbitration proceedings.

   Based on our preliminary understanding of this matter, both Carlos Gutierrez and Ricardo Rodriguez will be pivotal in our efforts. During his private and public life, Secretary Gutierrez built a strong reputation as an honest broker in U.S.-Mexico disputes, and remains widely respected as a business leader in both countries. A Mexican native, Ricardo Rodriguez has worked on numerous occasions with the business groups associated with Tradeco. He knows and has a good relationship with Federico Martínez Urmeneta, Chairman and CEO of Tradeco, as well as other senior executives at Tradeco such as the Chief Financial Officer.

2. Navigating Current Business Landscape in Mexico

   Ranger seeks to continue doing business in Mexico, generally, and with Petroleos Mexicanos ("PEMEX") specifically. During the term of this engagement, ASG will provide high-level advisory services to help Ranger understand the political and economic dynamics resulting from the implementation of the energy reforms approved in Mexico. Additionally, where appropriate, ASG will deploy its resources, expertise and networks to the benefit of Ranger, arranging introductions and assisting the Company in identifying business opportunities in Mexico.

3. Advice on Business and Political Climate Beyond Mexico

   Ranger also seeks to expand its opportunities beyond the Gulf of Mexico, particularly in Nigeria. As part of this engagement, ASG is prepared to provide high-level advice related to the political and commercial climate in Nigeria. Additionally, where appropriate, ASG will deploy its resources, expertise and networks to the benefit of Ranger, arranging introductions and assisting the Company in identifying business opportunities in Nigeria.

   If the inquiries related to these or other areas or regions evolve into matters that call for ongoing, substantial efforts by ASG, the parties will discuss and agree on appropriate adjustments to the business terms of this agreement.

**ABOUT ALBRIGHT STONEBRIDGE GROUP**

ASG is a leading commercial diplomacy and global strategy firm that helps clients navigate the intersection between business, finance, government, and civil society in markets around the world. ASG collaborates with leading organizations to assess and manage risk, realize

opportunities, and solve commercial, political and regulatory challenges. The firm also provides clients strategic advice and opportunity analyses that include discreet political due diligence, and supports commercial negotiations, dispute resolution, and crisis management. We serve as a thought partner with the clients we serve and assist in planning corporate responsibility and citizenship initiatives.

Our firm, led by former Secretary of State Madeleine Albright, National Security Advisor Samuel Berger, and Secretary of Commerce Carlos Gutierrez, offers perspectives honed from a range of high-level private and public sector experience, including senior roles at the White House; State, Treasury and Commerce Departments; Office of the U.S. Trade Representative; the U.S. Congress; and Ambassadors from and to the U.S. We provide insights informed by an unparalleled global team that includes persons who have held senior positions in the public and private sectors around the world. The firm has advised and assisted clients in more than 100 countries.

**The ASG Team**

The team for this engagement has exceptional and unmatched background, reach and leverage into government and industry around the world, with a particularly strong network in Mexico. The core members of our team for this engagement will include:

Co-Chair *Carlos Gutierrez* oversees projects in Latin America. He served as U.S. Secretary of Commerce from 2005 to 2009, as Chairman and CEO of Kellogg Company, and as Vice Chairman of Citicorp Institutional Clients Group and member of the Senior Strategic Advisory Group. Secretary Gutierrez was born in Havana, Cuba, and spent much of his career in Mexico.

Senior Counselor **Donald Gips** served as U.S. Ambassador to South Africa from 2009 through 2012. Previously, he served as Special Assistant to the President and Director of Presidential Personnel in 2009; Chief Domestic Policy Advisor for Vice President Al Gore; and Chief of the International Bureau at the Federal Communications Commission. In the private sector, Ambassador Gips was Group Vice President of Corporate Strategy and Development for Level 3 Communications where he led merger and acquisition efforts, as well as an Executive Manager at McKinsey & Company.

Senior Advisor **Ricardo Rodriguez** has broad international experience in major oil and gas and other energy sectors. He advises service, production and operating companies on business opportunities; sovereign investment funds, private equity and venture capital firms on invest-ments and portfolio management; and new ventures on business development. Mr. Rodriguez was formerly CEO of Bioverda Holdings, LLC, a major U.S. corn-to-ethanol producer. He held senior management positions in Royal Dutch Shell, including Managing Director of Shell Technology Ventures, Shell International Exploration & Production's PE/VC firm, and Head of M&A, Shell Oil Company. He serves and has served on the board of directors of several public and private companies.

Senior Vice President **Joel Velasco** manages our Latin American practice. A Brazilian-American, he was previously a senior executive at Amyris, a California-based industrial biotechnology company, where he also oversaw all external relations. He served as the Chief

North America Representative for the Brazilian Sugarcane Industry Association (UNICA), as a Senior Advisor to the U.S. Ambassador in Brazil, and as a personal aide to Vice President Al Gore in the White House.

Director **Juan Carlos Hartasanchez** has experience in the financial sector in Mexico, where he participated in telecommunications and energy projects in the region. He has also worked as a consultant for the Ministry of Finance of Mexico City, and as an intern for the Central Bank. He completed his MBA at Harvard Business School and holds a BEc from the Instituto Tecnológico Autonómo de México (ITAM).

Don Gips will have overall responsibility for our work with Ranger, and Juan Carlos Hartasanchez will coordinate our day-to-day collaboration.

## COMPENSATION & TERMS

In consideration of ASG's ongoing advice and assistance as described above, we propose an engagement with compensation based on a monthly retainer of $10,000 plus reimbursement of reasonable and actual expenses related to travel and other reasonable out-of-pocket expenses. In connection with travel by ASG on behalf of the Company, the Company will reimburse for business class as follows: (1) overseas international travel; (2) same-day travel originating on the East Coast of the United States and terminating in Mexico or on the West Coast of the United States; (3) same-day travel originating on the West Coast of the United States and terminating in Mexico or on the East Coast of the United States; or (4) other business class travel approved in advance by the Company's Chairman.

In addition, for ASG's contributions in assisting the Company to achieve its objectives, Ranger shall pay to ASG a performance fee of 7.5% of total amounts recovered from Tradeco beyond the $5 Million due that has not been contested. The obligations of Ranger to pay ASG perform-ance fees shall survive until the later of the first anniversary of the date of this Agreement or sixty (60) days after the date this Agreement is terminated and thereafter shall be at the discretion of the Company based on the contributions made by ASG.

The first payment of the monthly retainer will be due upon execution of this agreement, and subsequent payments for fees and expenses will be due 30 days following invoicing by ASG.

We recognize a mutual obligation to maintain the confidentiality of information and to comply with all applicable laws and regulations, including those pertaining to foreign corrupt practices. ASG does not undertake engagements for which registration and reporting under U.S. lobbying, foreign agent laws and U.S. securities regulations would be applicable. ASG is an independent contractor and shall, unless specifically agreed in writing, have no authority to act for or bind the Company in any way or otherwise be deemed an agent thereof. ASG acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company has been or may be disclosed by the Company to ASG or its employees, affiliates, attorneys, subcontractors and advisors (collectively, "Representatives"). ASG agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other party (other than to

those Representatives who need access to any Confidential Information for purposes of performing the services to be provided hereunder, or as may be required by law or regulatory authority). The term "Confidential Information" does not include any information: (a) that was already in the possession of ASG or any of its Representatives, or that was available to ASG or any of its Representatives on a non-confidential basis, prior to the time of disclosure to ASG or such Representatives; (b) obtained by ASG or any of its Representatives from a third party which, insofar as is known to ASG or such Representatives, is not subject to any prohibition against disclosure; (c) which was or is independently developed by ASG or any of its Representatives without violating any confidentiality obligations under this paragraph; or (d) which was or becomes generally available to the public through no fault of ASG. If ASG becomes required by legal process or requested by regulatory authority to disclose any Confidential Information, prompt notice thereof (to the extent legally permissible) shall be given to the Company (provided that no notification shall be required in respect of any disclosure to regulatory authorities having jurisdiction over ASG), and ASG may disclose only that information which its counsel advises it is compelled to disclose. The obligations of ASG and its Representatives set forth in this paragraph shall remain in effect for a period of two years after the date of this Agreement. For the avoidance of doubt, Confidential Information furnished to ASG, and materials prepared by the Company with ASG's assistance, shall remain the property of the Company and ASG shall not claim ownership of such Confidential Information or material.

As a condition of this engagement, the Company agrees to indemnify ASG, its members, officers, employees, agents and consultants (ASG and each such other person being referred to as an "Indemnified Person"), against any and all liability, damages and expenses (including attorney fees and disbursements) asserted against or incurred in connection with any claims by third parties against them or the Company, arising out of or in any way related to this engagement and not from breach, negligence or wrongdoing on the part of Company; *provided, however*, that the Company shall not be responsible for any claims, liabilities, losses, damages, expenses or actions of any Indemnified Person to the extent that such claims, liabilities, losses, damages, expenses or actions resulted from the fraud, willful misconduct or gross negligence of the Indemnified Person.

Additionally, ASG agrees that in connection with providing to the Company the services described in this Agreement, it will do so in accordance with applicable U.S. federal and state laws, including but not limited to the Foreign Corrupt Practices Act; and with respect to providing such services outside of the United States, it will provide such services in accordance with the laws and regulations applicable to it in in such jurisdiction.

During the term of this Agreement and for a period of one year thereafter, the Company, or its affiliates, will not, without the prior written consent of ASG, solicit or attempt to solicit on behalf of the Company or on behalf of others, directly or indirectly, any officer, member, employee or consultant of ASG to terminate their relationship with ASG or hire or retain separately from ASG the services of such persons.

The Company and ASG have discussed the scope of work and acknowledge that it does not limit ASG's ability to work on similar subject matter, sectors, or geography, provided that ASG concludes that there is no conflict with the work ASG has been engaged to undertake. ASG

agrees to bring to the attention of the Company any work that may raise questions and to work to resolve any such questions. We will of course respect the Company's confidentiality as required by this Agreement.

The term of this engagement is effective June 5, 2015 and will continue until April 30, 2016, and thereafter until terminated by either party upon 60 days' written notice. If no settlement has been reached by December 15, 2015, or if the total performance fee payable to ASG is less than U.S. $500,000, ASG will have the option to terminate this Agreement immediately unless the Company agrees to increase the remaining monthly retainer payments by an amount equal to the difference between $500,000 and the amount of performance fee actually earned by ASG, divided by the number of monthly retainer payments remaining between such date and April 30, 2016. The parties may extend the term of this letter agreement on mutually agreed terms. Rights and obligations accrued prior to termination shall survive termination.

If the foregoing meets with your approval, please sign where indicated below and return a copy. Should you wish to discuss our agreement further, please do not hesitate to contact me or my colleagues. We are delighted by the prospect of working with you and your colleagues.

Sincerely,

ALBRIGHT STONEBRIDGE GROUP LLC

Michael J. Warren
Managing Principal

AGREED:

RANGER OFFSHORE, INC.

By: _____

Name: *BILL LAM*

Title: *Pnrs / CEO*

On _____June 21, 2015_____



**ALBRIGHT
STONEBRIDGE
GROUP**

November 25, 2015

***Proprietary & Confidential***
*VIA ELECTRONIC MAIL*

Mr. Bill J. Lam
Chief Executive Officer
Ranger Offshore, Inc.
10370 Richmond Avenue, Suite 1000
Houston, TX 77042

Dear Bill:

We are pleased to present this proposal for Albright Stonebridge Group LLC ("***ASG***") to advise and assist Ranger Offshore, Inc. and/or its affiliates ("***Ranger***" or the "***Company***") in expanding its business in Nigeria. We have enjoyed working with Ranger in Mexico and deeply value the opportunity to expand our relationship to Africa.

## BACKGROUND & OBJECTIVES

Ranger is a leading global marine and subsea construction and support services contractor to the offshore oil and gas industry, operating around the world including in Nigeria. As part of the Company's strategic plan to grow into key global regions, Ranger is focused on expanding its market presence in Nigeria, where there is strong demand for marine and subsea construction and support services. With its high-quality capabilities and services, Ranger is well-positioned to capitalize on growth in Nigeria's oil and gas sector.

Following the historic election this spring of Muhammadu Buhari as Nigeria's president, Ranger has identified a potential opening to expand its operations in the country. However, the transfer in government administrations has slowed movement within the oil and gas industry as President Buhari seeks to address security concerns, root out corruption, and get Nigeria's stalled economy back on track. There are also indications of potential policy changes within the oil and gas sector, including a structural reshuffle of the Nigerian National Petroleum Corporation (NNPC), as well as fluctuations in government and private sector stakeholders, including Buhari's cabinet, expected to be announced this month.

Understanding this shifting political and commercial climate will be critical to Ranger's success in capturing opportunity in the Nigerian market. Ranger seeks ASG's support in identifying suitable partners from both a commercial and reputational standpoint. As we have discussed, ASG is well suited to support Ranger's growth in Nigeria. Our firm has a wealth of experience assisting clients in Nigeria, with particular expertise in the oil and gas sector. We maintain strong relationships at all levels of the Nigerian government and with key players in the oil and gas industry.

## SCOPE OF ENGAGEMENT

Based on our discussions to date, and in addition to our ongoing work in Mexico related to the Tradeco matter, we propose a separate engagement through which ASG will work closely with Ranger to strengthen its corporate position in Nigeria. Key components of the engagement will include:

- **Monitoring and Analysis of Political and Commercial Climate:** As Nigeria's oil and gas sector continues to experience policy and structural shifts, ASG will closely track related commercial and political developments in order to inform Ranger's on the ground operations in the country. This will include monitoring federal bodies, such as the NNPC, and providing updates on policy changes that affect the oil and gas industry. ASG will also share insights into relevant developments from corporate actors in the sector.

- **Strategic Guidance:** Based on the political and commercial analysis described above and ASG's extensive experience operating in Nigeria, ASG will assist Ranger in making decisions around the timing of strategic business decisions. We will work closely with Ranger to understand the Company's priorities in Nigeria and serve as a thought-partner to Ranger in identifying the most opportune moments and pathways for engagement with public and private sector stakeholders.

- **Stakeholder Mapping and Targeted Engagement:** To provide Ranger with an informed understanding of the key actors with influence over Nigeria's oil and gas industry, ASG will share insight into important stakeholders for outreach and relationship building. Building on ASG's understanding of the key players within the oil and gas industry, we will work with Ranger to develop and implement a strategy with relevant stakeholders and decision-makers to raise the Company's profile and win new business in Nigeria.

- **Partner Identification:** Leveraging our extensive relationships in Nigeria, ASG will assist Ranger as it seeks to establish lasting and meaningful relationships with potential partners in the region. We will provide input on the suitability of private and public sector actors in the oil and gas industry. ASG will support Ranger in aligning its strategic interests with appropriate partners.

## THE ASG TEAM

Key members of the ASG team for this engagement in Nigeria will include the following, although we will draw on members of our extended, on-the-ground network on an as needed basis:

Senior Counselor **Donald Gips** served as U.S. Ambassador to South Africa from 2009 through 2012. Previously, he served as Special Assistant to the President and the Director of Presidential Personnel in 2009; Chief Domestic Policy Advisor for Vice President Al Gore; and Chief of the International Bureau at the Federal Communications Commission. In the private sector, Ambassador Gips was Group Vice President of Corporate Strategy and Development for Level 3 Communications where he led merger and acquisition efforts, as well as an Executive Manager at McKinsey & Company.

Senior Advisor **Johnnie Carson** is an accomplished diplomat who brings extensive expertise in Africa to ASG's clients. Ambassador Carson served as U.S. Assistant Secretary of State for African Affairs from 2009 to 2013. During his distinguished 37-year Foreign Service career, he held senior positions in the State Department, including as Ambassador to Kenya, Zimbabwe, and Uganda, and Principal Deputy Assistant Secretary for the Bureau of African Affairs.

**Malik Dechambenoit** is a leading political analyst and advisor to enterprises operating across Africa. Mr. Dechambenoit brings to clients extensive experience working with government agencies at the international, central and local levels in Africa. Previously, Mr. Dechambenoit served in a Senior Political Advisory role at the United Nations, focused mainly on international peace-making efforts in Central and East Africa. In that capacity he served as a Senior Advisor to former Presidents Obasanjo of Nigeria, Mkapa of Tanzania, and Masire of Botswana. Mr. Dechambenoit also served at UN headquarters in New York, where he planned, backstopped and managed some of the world's largest Peacekeeping Operations. He participated in high-level Inter-State Mediation processes and worked closely with senior Government officials in the U.S., UK, France, Belgium, the African Union, the International Criminal Court, as well as multilateral donors like the European Union and Commission, World Bank, IMF and African Development Bank.

**Ekenem Isichei** advises domestic and international organizations operating in Nigeria from his base in Abuja. He has served clients in both the public and private sectors, including energy firms, consumer goods companies, healthcare, and financial services. He maintains relationships at all levels of the federal and state governments in Nigeria, and has worked closely with leading ministries at the federal level, including the Nigerian National Petroleum Corporation (NNPC), Ministry of Finance and Ministry of Petroleum Resources. Mr. Isichei has an engineering background and has extensive experience in the private sector through roles with Chevron, Marathon Oil, and BP North America.

Vice President **Nicole Wilett-Jensen** most recently served as a Senior Professional Staff Member on the Senate Foreign Relations Committee (SFRC), where she managed SFRC oversight of U.S. policy on Africa and global health. Ms. Wilett-Jensen has served twice as Director for African Affairs on the NSC at the White House. From 2012 to 2013, she was Senior Advisor and Chief of Staff to the Ambassador at the U.S. Embassy in Pretoria, South Africa. Previously, Ms. Wilett-Jensen served in other capacities at the Department of State, including in the Bureau of Democracy, Human Rights, and Labor, where she managed portfolios in Africa and South Asia, and on assignment to several U.S. missions in Africa, including in Uganda and Zimbabwe.

Director **Cassady Walters** works with clients to expand and strengthen their business operations around the globe. Ms. Walters brings first-hand experience with Africa's unique political and economic landscape to assist clients in the region. She has worked across East and West Africa with the Institute for State Effectiveness, USAID, Education Development Center, and the Peace Corps.

As needed, we will draw upon the expertise of other members of our global team, in Washington and beyond. Don Gips will have overall responsibility for our work with Ranger, and Cassady Walters will coordinate our day-to-day work with the Company in Africa.

## COMPENSATION AND TERMS

In consideration of ASG's advice and assistance related to Nigeria as described above, Ranger will pay to ASG an initial monthly retainer of $10,000 during first two months (November and December 2015), then $32,500 per month for the four subsequent months (January, February, March and April 2016), and then $25,000 per month thereafter, plus reimbursement of reasonable and actual expenses related to travel and other reasonable out-of-pocket expenses. In connection with travel by ASG on behalf of the Company, the Company will reimburse for business class as follows: (1) overseas international travel; (2) same-day travel originating on the East Coast of the United States and terminating on the West Coast of the United States; (3) same-day travel originating on the West Coast of the United States and terminating on the East Coast of the United States; or (4) other business class travel approved in advance by the Company's Chairman. The first payment of monthly retainer will be due upon execution of this agreement, and subsequent fees and expense reimbursements will be due 30 days following monthly invoice by ASG.

This proposed monthly retainer is significantly below our normal client retainer rates and reflects our desire to expand our ongoing relationship with Ranger and expand our engagement as the Company grows. Therefore, in addition to the monthly retainer, Ranger shall pay to ASG a performance fee of 4% of Ranger's gross contracted revenue from the contracts entered into with private sector customers which Ranger and ASG agree in advance are to be secured with ASG's support in Nigeria, Mexico, or elsewhere. Ranger will pay such performance fees to ASG as follows: 5% within thirty (30) days following receipt by Ranger of its first payment under such contract; 85% within thirty (30) days following receipt by Ranger of 50% of its payments under such contract; and the final 10% within thirty (30) days following receipt by Ranger of the final payment under such contract. Payment of one-half of the performance fees in excess of $1,000,000 shall be reduced by the amount of monthly retainer fees paid by Ranger to ASG up until the date of the final 10% of such fees being due and payable, up to a maximum reduction of $600,000.

Recognizing that ASG's services could be instrumental in facilitating new contracts and that concluding that process may extend beyond the term of this Agreement, the obligation of Ranger to pay ASG performance fees for new contracts shall survive termination of this Agreement for a period of twelve months and thereafter shall be at the discretion of the Company based on the contributions made by ASG.

Ranger and ASG may, on a case-by-case basis, mutually agree on alternative performance fees and payment schedules, including, but not limited to, different percentages of gross contract revenues. Additionally, with respect to contracts or agreements undertaken with state-owned or state-controlled enterprises in Nigeria, or elsewhere, Ranger shall, in its reasonable discretion, consider ASG for similar and equivalent performance fees based on the Company's assessment of ASG's contributions in securing such contracts.

For support on specific projects or services beyond the scope of this agreement, ASG and Ranger will discuss and mutually agree upon appropriate business terms.

We recognize a mutual obligation to maintain the confidentiality of information and to comply

with all applicable laws and regulations, including those pertaining to foreign corrupt practices. ASG does not undertake engagements for which registration and reporting under U.S. lobbying, foreign agent laws and U.S. securities regulations would be applicable.

ASG is an independent contractor and shall, unless specifically agreed in writing, have no authority to act for or bind the Company in any way or otherwise be deemed an agent thereof.

ASG acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company has been or may be disclosed by the Company to ASG or its employees, affiliates, attorneys, subcontractors and advisors (collectively, "Representatives"). ASG agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other party (other than to those Representatives who need access to any Confidential Information for purposes of performing the services to be provided hereunder, or as may be required by law or regulatory authority). The term "Confidential Information" does not include any information: (a) that was already in the possession of ASG or any of its Representatives, or that was available to ASG or any of its Representatives on a non-confidential basis, prior to the time of disclosure to ASG or such Representatives; (b) obtained by ASG or any of its Representatives from a third party which, insofar as is known to ASG or such Representatives, is not subject to any prohibition against disclosure; (c) which was or is independently developed by ASG or any of its Representatives without violating any confidentiality obligations under this paragraph; or (d) which was or becomes generally available to the public through no fault of ASG. If ASG becomes required by legal process or requested by regulatory authority to disclose any Confidential Information, prompt notice thereof (to the extent legally permissible) shall be given to the Company (provided that no notification shall be required in respect of any disclosure to regulatory authorities having jurisdiction over ASG), and ASG may disclose only that information which its counsel advises it is compelled to disclose. The obligations of ASG and its Representatives set forth in this paragraph shall remain in effect for a period of two years after the date of this Agreement. For the avoidance of doubt, Confidential Information furnished to ASG, and materials prepared by the Company with ASG's assistance, shall remain the property of the Company and ASG shall not claim ownership of such Confidential Information or material.

As a condition of this engagement, the Company agrees to indemnify ASG, its members, officers, employees, agents, and consultants (ASG and each such other person being referred to as an "Indemnified Person"), against any and all liability, damages and expenses (including attorney fees and disbursements) asserted against or incurred in connection with any claims by third parties against them or the Company, arising out of or in any way related to this engagement and not from breach, negligence or wrongdoing on the part of Company; provided, however, that the Company shall not be responsible for any claims, liabilities, losses, damages, expenses or actions of any Indemnified Person to the extent that such claims, liabilities, losses, damages, expenses or actions resulted from the fraud, willful misconduct or gross negligence of the Indemnified Person.

Additionally, ASG agrees that in connection with providing to the Company the services described in this Agreement, it will do so in accordance with applicable U.S. federal and state laws, including but not limited to the Foreign Corrupt Practices Act; and with respect to providing such services outside of the United States, it will provide such services in accordance with

the laws and regulations applicable to it in in such jurisdiction.

During the term of this Agreement and for a period of one year thereafter, the Company, or its affiliates, will not, without the prior written consent of ASG, solicit or attempt to solicit on behalf of the Company or on behalf of others, directly or indirectly, any officer, member, employee or consultant of ASG to terminate their relationship with ASG or hire or retain separately from ASG the services of such persons.

Ranger and ASG have discussed the scope of work and acknowledge that it does not limit ASG's ability to work on similar subject matter, sectors, or geography, provided that ASG concludes that there is no conflict with the work ASG has been contracted to undertake. ASG agrees to bring to Ranger's attention any work that may raise questions and to work to resolve any questions. We will of course respect Ranger's confidentiality as required by this agreement.

The term of this engagement is effective November 1, 2015 and will continue for twelve months, and continue thereafter until terminated by either party upon 30 days' written notice. Rights and obligations accrued prior to termination shall survive termination, including the payment of performance fees associated with contracts in Nigeria which extend beyond the term of this engagement and which were secured with ASG's support.

If the foregoing meets with your approval, please sign where indicated below and return a fully executed copy. Should you wish to discuss our agreement further, please do not hesitate to contact Don Gips or me. We will be delighted to collaborate with Ranger in Nigeria, and we look forward to supporting the Company's continued growth.

Sincerely,

ALBRIGHT STONEBRIDGE GROUP LLC

Michael J. Warren
Managing Principal

AGREED:

RANGER OFFSHORE, INC.

By: _____
Name: _Bill Lam_
Title: _Pres / CEO_
On: _December 15_, 2015

| | |
|---|---|
| **From:** | Brent Vannoy |
| **To:** | vesteves@albrightstonebridge.com; ricardo.rodriguez1954@gmail.com |
| **Subject:** | Ranger Offshore; Tradeco |
| **Date:** | Thursday, July 02, 2015 12:15:00 PM |

Gentlemen,

I am outside counsel for Grupo Tradeco, S.A. de C.V., *et. al.*, with regard to pending legal matters involving one more entitites that you know by the name "Ranger Offshore." I understand that you have represented that you have been engaged by Ranger Offshore to attempt to resolve the legal matters between it and my clients, and that you are attempting to have substantive communications with representatives of my clients in this regard. I know that you and your organization are credentialed and sophisticated. As such, you will appreciate my clients' need to make me your point of contact moving forward. Further, I understand that your organization is not a law firm and that despite the fact that Mr. Rodriguez is an attorney, that has not acted as a lawyer in regard to his communications with my clients. I am not contending otherwise. However, this is one more reason I am sure you can understand the need for any further communications to go through me. I do thank you for your interest and invite you to contact me at your convenience should you want to discuss these matters further. In that event, it would help me a great deal if you would begin by clarifying for me whether and to what extent you are authorized to speak for Ranger Offshore.


Very truly yours,

Brent L. Vannoy
Shareholder
Johnson DeLuca Kurisky & Gould, P.C.
4 Houston Center
1221 Lamar Street, Suite 1000
Houston, Texas 77010
Telephone: 713.652.2525
Facsimile: 713.652.5130


CONFIDENTIALITY NOTICE: This electronic transmission (including any files attached hereto) contains confidential information that is legally privileged, confidential, and exempt from disclosure. The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or any employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any disclosure, dissemination, copying, distribution, or the taking of any action in reliance on the contents of this confidential information is strictly prohibited. If you have received this communication in error, please destroy it and immediately notify us by telephone.

## §HOUSTON MARITIME ARBITRATORS ASSOCIATION

| | |
|---|---|
| **RANGER OFFSHORE MEXICO., S. DE R.L. DE C.V.,** | § §  § § § |
| *Claimant,* | § |
| **vs.** | § § |
| **TRADECO INFRAESTRUCTURA, S.A. DE C.V.; GRUPO TRADECO, S.A. DE C.V.** | § § § § § |
| *Respondents.* | |

---

### Declaration of Brent L. Vannoy in Support
### Of Response to Claimant's Motion in Support for Attorney's Fees

---

"My name is Brent L. Vannoy.  I am of sound mind, over the age of twenty-one (21) years and capable of making this Declaration.  I am a partner with the law firm of Hughes Watters Askanase, LLP ("HWA") in Houston, Texas.   The facts stated in this Declaration are within my personal knowledge and are true and correct.

1.     "I am an attorney licensed to practice in the courts of the State of Texas since 1995.  My practice is primarily in arbitration and federal and state district courts of Texas in contested commercial and business litigation matters.  I have previously represented clients in connection with matters similar to the disputes in this arbitration, and I am familiar with the attorney's fees customarily charged by attorneys in Harris County, Texas, for handling complex commercial arbitrations.  I am also familiar with the attorney's services normally required for the proper prosecution of such arbitrations.

2.     "I have previously represented clients in connection with matters similar to the disputes in this arbitration, and I am familiar with the attorney's fees customarily charged by attorneys in Harris County, Texas, for handling arbitrations of this nature.  I am also familiar with the attorney's services normally required for the proper prosecution of such arbitrations.

3.     "I represented Respondents and lead counsel for Tradeco Infraestructura, S. A. de C.V. ("Tradeco") and Grupo Tradeco, S.A. de C.V. ("Grupo Tradeco" and together with Tradeco "Respondents") in this arbitration and am familiar with the pleadings, discovery and all other matters attendant to this case.

**EXHIBIT**

*tabbies*  D

4.      "I have reviewed the Motion for Award of Declarations Fees filed on behalf of Claimants and the Declarations in support of attorney fees attached thereto by the attorneys for Claimants.  In reviewing the Declarations and being familiar with this case and the pleadings and discovery described above, combined with the criteria set forth in Rule 1.04 of the Texas Rules of Professional Conduct governing attorneys, I am of the opinion that attorney fees requested by Plaintiffs totaling $2,533,198.73 are excessive and are neither reasonable nor necessary to prosecute this case."

5.      In my opinion, the fees and costs sought by Ranger are unreasonable and/or unnecessary <u>at least</u> in the following amounts:  Fees and costs not part of the arbitration ($852,395.73), unrecoverable clerical ($168,575.00), travel ($7,372.50), unidentified legal work performed by Mexican law firms ($16,032.36 and $24,800.00) and that the remaining fees and costs should be reduced by at least 29.3%, to account both for the amount by which Ranger pursued unsuccessful claims and for the lodestar reasonableness factors.  In reaching my opinions, I have considered the lodestar factors: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the fee customarily charged in the locality for similar legal services; (3) the amount involved and the results obtained; and (4) the experience, reputation, and ability of the lawyer or lawyers performing the services.  I have also considered (1) duplication of efforts; (2) incomplete, vague and inadequate time entries; and (3) excessive and unnecessary hours.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Houston, Texas, on this 21st day of November, 2016.

Brent L. Vannoy

# K&L GATES

## FEES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| 07/01/15 | E. A. Gilman | 1.80 | Analysis of process for Rule B attachment against additional banks with suspected TxDOT funds; correspondence with client regarding ███████; analysis of ███████ attention to subpoenas to bond companies | 720.00 |
| 07/01/15 | J. F. Sullivan | 3.10 | Review challenge to Sutcliffe filed by Respondents; correspond with client regarding same; analyze ███████ teleconference with A. Sabater regarding status, selection of chair; analyze ███████; review pleadings and motions in preparation; review numerous correspondence regarding selection and extension of time | 1,968.50 |
| 07/01/15 | M. H. Truong | 1.30 | Compile Respondent's Challenge to Prospective Arbitrator, J. Sutcliffe; compile numerous biographies from various individuals and forward same to counsel; compile final third-party subpoenas to various bonding agencies; prepare third-party subpoenas request chart for same | 344.50 |
| 07/02/15 | E. A. Gilman | 1.50 | Correspondence and analysis regarding ███████; incorporate revisions to and finalize affidavits regarding enforcement of powers of attorney for execution; correspondence with opposing counsel regarding same; correspondence regarding consultant group | 600.00 |
| 07/02/15 | G. K. Kontakis | 0.30 | Receipt and review Order granting Voluntary Dismissal; draft updated status report to client and co-counsel regarding same | 142.50 |
| 07/02/15 | J. F. Sullivan | 1.80 | Review correspondence from A. | 1,143.00 |

EXHIBIT
E
tabbies®

# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | Sabater; review information from opposing counsel regarding contact on Tradeco by ASG; ███████████ ███████████ review names and bios of numerous chair candidates proposed by arbitrator Cooney | |
| 07/02/15 | M. H. Truong | 0.40 | Update arbitration file with Respondent's Challenge to Prospective Arbitrator, J. Sutcliffe; review correspondence to J. Huffman regarding letter agreement; update pleadings file with signed Notice of Voluntary Dismissal and Order in the New York proceeding | 106.00 |
| 07/06/15 | E. A. Gilman | 0.50 | Review emails related to chair selection; correspondence with client ███████████; review information related to consultants | 200.00 |
| 07/06/15 | R. R. Young | 0.80 | Engagement regarding Ranger Offshore settlement discussions and arbitrator selection | 612.00 |
| 07/07/15 | J. F. Sullivan | 1.50 | Teleconference with A. Sabater regarding arbitration status and G. Silva as chair candidate; prepare for conference with client regarding ███████████ ██████; review correspondence with arbitrators; review correspondence from A. Sabater regarding chair candidate and qualifications and disclosure; analyze issues relative to ASG and effect on arbitration and possible settlement approaches; conferences with team ███████████ | 952.50 |
| 07/07/15 | R. R. Young | 0.80 | Teleconferences regarding ███████████ | 612.00 |
| 07/08/15 | E. A. Gilman | 2.20 | Review disclosures from prospective arbitrator; correspondence with client ███████████; lengthy conference call with client regarding ███████; attention | 880.00 |

# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | communicate with J. Lam | |
| 08/17/16 | J. H. Hines | 1.60 | Emails regarding ▮▮▮▮ billing records; begin review of same; conference call regarding Tradeco submission on status of Pemex claim; further emails regarding Pemex claim report | 640.00 |
| 08/17/16 | J. F. Sullivan | 1.20 | Review supplemental submission from counsel for Tradeco; strategy conference regarding response; prepare ▮▮▮▮▮ | 810.00 |
| 08/17/16 | M. H. Truong | 2.70 | Attention to ASG invoices and forward same to counsel; ▮▮▮▮▮ update fee and expense spreadsheet; follow up conference with counsel regarding same; continue to review hearing transcript and attention to E. Moses' testimony regarding his services and charges for same | 742.50 |
| 08/18/16 | J. H. Hines | 1.60 | Emails and document review for fee/cost affidavits; further review of attorney's fee recovery provisions; conference with John Sullivan regarding ▮▮▮▮▮ | 640.00 |
| 08/18/16 | J. F. Sullivan | 1.40 | Several conferences regarding additional evidence to provide Panel, strategy; correspondence to J. Lam regarding same; prepare response to Panel; prepare correspondence regarding rationale; conference with J. Hines regarding same, recoverable costs under the Guarantee | 945.00 |
| 08/18/16 | M. H. Truong | 0.20 | Attention to upcoming Initial Conference; conference with counsel regarding request to | 55.00 |

# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | video conference with S. Hines and J. Sullivan discussing updates list of action items in connection with deposition preparation | |
| 02/05/16 | J. D. Wagner | 0.70 | Prepare summary evaluation of expert witness candidates for client review | 220.50 |
| 02/05/16 | J. D. Wagner | 0.60 | Attention to case development strategy; create updated list of action-items to complete in immediate future | 189.00 |
| 02/08/16 | J. H. Hines | 2.40 | Review various recent emails; follow-up conference call with possible expert witness; continue review of additional client documents | 960.00 |
| 02/08/16 | J. F. Sullivan | 1.30 | Conference call with S. Hogue, putative expert witness; review correspondence from S. Hogue and testifying history of K. Highfield; review correspondence from counsel for Tradeco regarding privileged documents | 877.50 |
| 02/08/16 | M. H. Truong | 2.10 | Prepare draft of pre-arbitration checklist; review and compare Spanish documents and translation of same | 577.50 |
| 02/08/16 | J. D. Wagner | 0.80 | Prepare for and attend follow-up interview with S. Hogue to discuss additional items of inquiry related to Ranger's potential retention of S. Hogue and London Offshore Consultants | 252.00 |
| 02/08/16 | J. D. Wagner | 1.60 | Attention to preparing action-item checklist; review correspondence from opposing counsel regarding Tradeco's list of persons with knowledge of relevant facts; conference with co-counsel regarding strategy | 504.00 |
| 02/09/16 | J. H. Hines | 2.80 | Email regarding items for corporate deposition of Tradeco; lengthy conference call with Ranger personnel including E. Moses, J. Sullivan, and D. Wagner; review text string | 1,120.00 |
| 02/09/16 | J. F. Sullivan | 3.20 | Prepare for telephone interview | 2,160.00 |

**EXHIBIT**

F

# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | with E. Moses; extended telephone interview with E. Moses; correspondence to client regarding interview with witness; prepare Tradeco 30(b)(6) notice; extended telephone interview with E. Moses; prepare for depositions of F. Umberto and 30(b)(6) witness of Respondents; prepare for meeting with experts | |
| 02/09/16 | M. H. Truong | 2.30 | Review and research additional text messages previously produced by client; attention to Respondents' correspondence transmitting missing production; attention to production binders with same | 632.50 |
| 02/09/16 | J. D. Wagner | 3.00 | Prepare for and attend telephone conference with J. Lam, T. Cunningham and E. Moses in connection with deposition preparation | 945.00 |
| 02/09/16 | J. D. Wagner | 0.40 | Revise topics to include Tradeco's corporate representative deposition notice | 126.00 |
| 02/09/16 | J. D. Wagner | 0.70 | Identify and examine certain communications between the parties' officers regarding Tradeco's debt to Ranger | 220.50 |
| 02/10/16 | J. H. Hines | 0.50 | Review additional documents related to Pemex inspections; email regarding additional documents for production | 200.00 |
| 02/10/16 | J. H. Hines | 0.50 | Review additional documents related to Pemex inspections; email regarding additional documents for production; review prior charter documents; emails regarding D. Burt interview | 200.00 |
| 02/10/16 | K. R. Slavik | 1.20 | Perform complex searches in Ringtail to identify documents ▮▮▮▮▮▮▮▮▮▮▮ at the request of M. Truong | 108.00 |
| 02/10/16 | J. F. Sullivan | 1.80 | Prepare correspondence to counsel for Tradeco regarding depositions and discovery issues; review documents and | 1,215.00 |

# K&L GATES

Invoice # 3224364
2700105.00008
Page 20 of 22

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | conduct Ringtail search for production documents containing communications with D. Espinoza | |
| 02/27/16 | J. H. Hines | 3.00 | Review ███████████ by J. Lam; conference call with D. Wagner and J. Sullivan to review status and discuss R. Carillo's notice | 1,200.00 |
| 02/28/16 | I.L. Ascott | 0.20 | At the request of D. Wagner, conduct Ringtail search for production documents containing communications with D. Espinoza | 59.00 |
| 02/28/16 | J. H. Hines | 5.40 | Research on seaworthiness standard; further drafting of proposed arbitration award; further review of Spanish language documents and translations to date; research regarding ██████████ articles, including interpretive guidance form BIMCO; further planning for R. Zapata's deposition; review various emails | 2,160.00 |
| 02/28/16 | J. D. Wagner | 3.20 | Prepare Motion to Conditionally Quash the Notice of Deposition of R. Zapata | 1,008.00 |
| 02/29/16 | I.L. Ascott | 0.20 | At the request of D. Wagner, coordinate with Ringtail Analyst to search for production documents containing communications with D. Espinoza for support of deposition preparation | 59.00 |
| 02/29/16 | J. H. Hines | 7.80 | Witness preparation meeting (Cunningham and Arreola); further research on law of ██████████ further preparation for R. Carillo's deposition | 3,120.00 |
| 02/29/16 | J. F. Sullivan | 8.50 | Prepare for meeting with clients to prepare for depositions; meet with T. Cunningham, E. Moses, G. Arreola and J. Lam to prepare for depositions; prepare motion for protection; prepare joint motion to modify scheduling order | 5,737.50 |
| 02/29/16 | M. H. Truong | 5.30 | Compile numerous documents in preparation for meeting with | 1,457.50 |

# K&L GATES

Invoice # 3224364
2700105.00008
Page 21 of 22

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | witnesses; attention to additional documents to produce to Respondents; prepare and produce same; attention to numerous correspondence between counsel regarding extension deadline for experts reports and rescheduling of deposition of R. Zapata; attention to team deadlines calendar and new deadline for experts reports; compile additional documents for translation; conferences with translation service regarding same; attention to Respondents' deposition notices of Claimant's witnesses; compile additional SAT system documents for secured site | |
| 02/29/16 | J. D. Wagner | 12.00 | Prepare for day-long conference with Ranger's corporate designees regarding their scheduled depositions; construct powerpoint discussing the ███████████; identify, gather and organize relevant documentation concerning the ███ prepare timeline of ███████████ include references to relevant documentation; prepare T. Cunningham, J. Lam, E. Moses and G. Arreola for direct and cross-examination | 3,780.00 |
| | TOTAL FEES | 435.10 hrs | | $ 172,575.50 |

# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | up on status of court's ruling to request to reset initial conference; prepare inspection reports & surveys binder | |
| 05/06/16 | J. D. Wagner | 2.30 | Prepare and revise Ranger's Exhibit List; draft and revise D. Burt's witness statement | 724.50 |
| 05/08/16 | J. H. Hines | 6.00 | Work on statements of G. Arreola, R. Campbell, D. Burt; conference with team; revisions to pre-hearing procedure summary; other preparation for arbitration | 2,400.00 |
| 05/08/16 | J. F. Sullivan | 3.30 | Prepare hearing procedure summary; correspondence to Respondents' counsel; extended conference with team regarding action items and strategy; review and edit drafts of witness statements including G. Arreola; prepare for hearing | 2,227.50 |
| 05/08/16 | J. D. Wagner | 2.10 | Status conference with J. Sullivan and S. Hines regarding witness lists, exhibits and pre-hearing brief; develop immediate action items for execution in the upcoming week; examine witness sequence of presentation to include in Ranger's proposed hearing procedure | 661.50 |
| 05/08/16 | J. D. Wagner | 2.10 | Continue drafting and revising D. Burt's witness statement; outline statements for E. Moses and B. Lam | 661.50 |
| 05/08/16 | J. D. Wagner | 0.20 | Review Panel's Order regarding Tradeco's objection to the declaration of J. Lam and forward to client with explanation of same | 63.00 |
| 05/08/16 | J. D. Wagner | 1.60 | Revise Ranger's exhibit list by removing documents or identifying additional documents to include on the list, which totals more than 250 pieces of documentary evidence; craft brief explanations for each newly added document | 504.00 |
| 05/09/16 | J. H. Hines | 5.90 | Order re: objection to J. Lam declaration; emails regarding | 2,360.00 |

# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| 05/11/16 | E. A. Gilman | 2.30 | Work on draft witness statement of E. Moses | 1,000.50 |
| 05/11/16 | J. H. Hines | 11.00 | Pre-hearing conference; further work on J. Mitchener statement; further review of additional documents in anticipation of arbitration; work on T. Cunningham statement; emails regarding damages spreadsheets; emails and conferences throughout day | 4,400.00 |
| 05/11/16 | J. F. Sullivan | 6.20 | Prepare for pre-arbitration hearing conference; prepare joint hearing procedures summary; prepare multiple correspondence to opposing counsel; prepare motion to disregard witness statements of Carrillo and Trujillo; review correspondence regarding recording of conversation between G. Arreola and G. Tujillio; correspondence to client; call with client; correspondence to B. Vannoy regarding deposition of D. Campbell; prepare for arbitration hearing | 4,185.00 |
| 05/11/16 | M. H. Truong | 4.50 | Continue to prepare Claimant's hearing exhibits and binder for same; prepare Respondents' Preliminary Exhibit List and cross-reference the parties' exhibits | 1,237.50 |
| 05/11/16 | J. D. Wagner | 3.10 | Examine all documents, including deposition exhibits and hearing exhibits, ███████████████ in connection with responding to Tradeco's objection to D. Campbell as a hearing witness; prepare for and participate in pre-hearing conference with arbitration panel; post-conference discussion with J. Lam regarding ██████████ | 976.50 |
| 05/11/16 | J. D. Wagner | 6.10 | Supplement Ranger's Hearing Exhibit List; revise witness | 1,921.50 |

# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | statement of J. Mitchener; draft and revise witness statement of B. Lam; review and analyze documents from Ranger's production in connection with same | |
| 05/12/16 | E. A. Gilman | 5.80 | Correspondence with E. Moses regarding draft statement; finalize same; work and correspondence with opposing counsel regarding hearing schedule; begin work on pre-hearing brief | 2,523.00 |
| 05/12/16 | J. H. Hines | 8.00 | Draft T. Cunningham's statement; revise and excerpt sat dive system schematic; review and emails regarding J. Peltier spreadsheets; review B. Lam statement; further revisions to J. Mitchener statement and emails/conferences regarding same; further review of P. Power's report in preparation for cross-examination | 3,200.00 |
| 05/12/16 | J. F. Sullivan | 5.10 | Prepare for arbitration hearing; review and edit several witness statements; correspond with counsel regarding hearing procedures and deposition of R. Campbell; review orders of the Panel; review and analyze ▮▮▮▮▮▮; correspondence to E. Carlock; prepare demonstrative exhibits for hearing | 3,442.50 |
| 05/12/16 | M. H. Truong | 10.60 | Continue to prepare and update hearing exhibits list and binder with additional exhibits; compile and prepare binders with Claimants and Respondents' various motions, responses, and replies for counsel; attention to G. Silva's orders and prepare binder for same; continue to review Respondents' exhibits list and cross-reference same; attention to Respondents' deposition notice of R. Campbell | 2,915.00 |
| 05/12/16 | J. D. Wagner | 0.80 | Review and analyze Tradeco's preliminary list of hearing exhibits and identify documents | 252.00 |

# K&L GATES

Invoice # 3260971
2700105.00008
Page 12 of 23

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | that address, undermine or contract same | |
| 05/12/16 | J. D. Wagner | 5.70 | Draft and revise Witness Statements for B. Lam, J. Mitchener, and E. Moses; send same to J. Lam for review; confer with B. Gilman regarding ▮▮▮▮▮ | 1,795.50 |
| 05/13/16 | E. A. Gilman | 6.30 | Assist with finalizing witness statement for E. Moses; correspondence regarding same; draft outline for pre-hearing brief; general arbitration preparation | 2,740.50 |
| 05/13/16 | J. H. Hines | 6.30 | Conferences and emails; extensive work on finalization of statements; prepare for arbitration hearing | 2,520.00 |
| 05/13/16 | J. F. Sullivan | 6.80 | Prepare for arbitration hearing; prepare demonstratives; prepare time line; meet with E. Carlock regarding demonstratives; review and edit witness statements; prepare for examination of witnesses; correspondence to and from client | 4,590.00 |
| 05/13/16 | M. H. Truong | 8.10 | Attention to witnesses' statements; continue to update Claimant's hearing Exhibits List and binders for same; continue to cross-reference Respondents' hearing exhibits and prepare memorandum to counsel regarding same; prepare parties' motions, responses and replies binders for counsel | 2,227.50 |
| 05/13/16 | J. D. Wagner | 6.70 | Draft, revise and finalize Ranger's seven fact witness statements; numerous conferences with J. Lam regarding ▮▮▮▮▮; extended conference with T. Cunningham concerning ▮▮▮▮▮ complete service of statements on the Panel | 2,110.50 |
| 05/13/16 | J. D. Wagner | 0.50 | Review and analyze Tradeco's | 157.50 |

# K&L GATES

Invoice # 3260971
2700105.00008
Page 19 of 23

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| 05/22/16 | M. H. Truong | 8.10 | Attention to updating Joint Exhibit List and new exhibits for same; conferences with opposing counsel regarding access to exhibits; assist counsel with preparation for upcoming arbitration | 2,227.50 |
| 05/22/16 | J. D. Wagner | 10.20 | Continue and complete final hearing preparations, including outlines for direct and cross examination and finalizing demonstrative exhibits | 3,213.00 |
| 05/23/16 | E. A. Gilman | 0.90 | Attention to securing enforceable award in Mexico | 391.50 |
| 05/23/16 | J. H. Hines | 11.00 | Arbitration, Day 1, including direct-examination of G. Arreola; prepare for direct-examination of R. Campbell | 4,400.00 |
| 05/23/16 | J. F. Sullivan | 9.40 | Prepare for hearing; prepare examination and opening; meet with clients; attend hearing (opening, Cunnigham and G. Arreola and arguments); prepare for tomorrow's examination of J. Peltiere and E. Moses | 6,345.00 |
| 05/23/16 | M. H. Truong | 8.40 | Assist counsel with arbitration hearing during and after procedure | 2,310.00 |
| 05/23/16 | J. D. Wagner | 10.20 | Prepare for and attend first day of final arbitration hearing; post-hearing conference with client; prepare demonstrative exhibits for the direct examination of E. Moses | 3,213.00 |
| 05/23/16 | R. R. Young | 3.60 | Discuss ███████; advise regarding ███████ follow-up regarding the same; arrange ███████ | 2,790.00 |
| 05/24/16 | E. A. Gilman | 0.70 | Finalize joint hearing schedule and order; transmit same to client; correspondence related to ███████ | 304.50 |
| 05/24/16 | J. H. Hines | 10.50 | Preparations; examination of R. Campbell; remainder of Arbitration Day 2; prepare for Day 3, including conference with | 4,200.00 |

# K&L GATES

Invoice # 3260971
2700105.00008
Page 20 of 23

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | J. Mitchener to prepare for direct-examination | |
| 05/24/16 | J. F. Sullivan | 10.50 | Prepare for arbitration hearing; attend hearing (Campbell, Moses, Peltier); prepare for examination of D. Burt, B. Lam | 7,087.50 |
| 05/24/16 | M. H. Truong | 11.40 | Conference with D. Mitchener regarding review of Joint Hearing Exhibits and Pre-Hearing Exhibits; continue to assist counsel during and after arbitration proceedings; prepare hearing transcripts binders; conference with court reporter regarding daily transcripts; attention to D. Espinosa's deposition transcript and prepare summary for same | 3,135.00 |
| 05/24/16 | J. D. Wagner | 10.40 | Prepare for and attend day two of the final arbitration hearing; post-hearing preparation conference with J. Mitchener | 3,276.00 |
| 05/24/16 | R. R. Young | 1.50 | Meeting with S. Hines regarding ▮▮▮▮▮; meeting with S. Hines and D. Wagner regarding ▮▮▮▮▮ follow-up regarding the same | 1,162.50 |
| 05/25/16 | E. A. Gilman | 0.90 | Teleconference with E. Garza to discuss ▮▮▮▮▮; conference call with R. Morales to discuss ▮▮▮▮▮ | 391.50 |
| 05/25/16 | J. H. Hines | 14.00 | Arbitration Day 3, including direct-examination of J. Mitchener; extensive preparation for A. Benton cross on Day 4 | 5,600.00 |
| 05/25/16 | J. F. Sullivan | 10.50 | Prepare for arbitration hearing; prepare for examination of D. Burt, J. Peltiere, B. Lam; attend hearing and present witnesses; conferences with client and team | 7,087.50 |
| 05/25/16 | M. H. Truong | 5.40 | Continue to assist counsel during and after arbitration | 1,485.00 |

## HOUSTON MARITIME ARBITRATORS ASSOCIATION

| | |
|---|---|
| **RANGER OFFSHORE MEXICO., S. DE R.L. DE C.V.,** | § § § |
| *Claimant,* | § § |
| vs. | § § |
| **TRADECO INFRAESTRUCTURA, S.A. DE C.V.; GRUPO TRADECO, S.A. DE C.V.** | § § § § § |
| *Respondents.* | § |

---

### Declaration of Eduardo Andres Benton Zavalla

---

1.      My name is Eduardo Andres Benton Zavalla. I am over the age of twenty-one (21) years, of sound mind, and have personal knowledge of the facts set forth below and know them to be true and correct. I am a general construcción director with Tradeco Infraestructura, S. A. de C.V. ("Tradeco").

2.      During the period of April 8, 2014 through June 23, 2016 Mr. Moses was in contact with Respondents. Some of the contacts were substantive. Others were non-substantive. All of Mr. Moses contact was with either myself, David Espinosa or Federico Martinez, Jr.

3.      In this regard, Mr. Moses' substantive contact consisted of telephone calls, meetings, emails and to a certain extent, text messages. I have reviewed Tradeco's records of those contacts and based on that review state: Mr. Moses participated in around 25 meetings with Tradeco between April 2014 and January 2015. The total time of those meetings was less than 60 hours. Mr. Moses and Tradeco personnel exchanged approximately 55 emails and he was involved in the copy of around 80 more emails. Mr. Moses and Tradeco personnel exchanged approximately 60 substantive text messages.



# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | regarding ███████ ██████████████ ████████████████ continue to review legal invoices and redact same | |
| 08/16/16 | E. A. Gilman | 1.20 | Attention to preparation of fee submission; correspondence with Mexican law firms to secure declaration in support of submission | 522.00 |
| 08/16/16 | J. H. Hines | 0.50 | Various emails and conference with E. Gilman regarding preparation of individual declarations in support of fee/cost petition; email from opposing counsel regarding status of Pemex claim | 200.00 |
| 08/16/16 | I. Meredith | 0.50 | Assist client in ██████████ ████████████████ | 550.00 |
| 08/16/16 | J. F. Sullivan | 0.80 | Review correspondence from E. Silva and respond to same; correspondence with client; review supplemental submission by Tradeco | 540.00 |
| 08/16/16 | M. H. Truong | 5.80 | Attention to firm's legal bills and prepare redactions for same in preparation for final award; attention to E. Moses' testimony at the arbitration hearing regarding his services and charges for same; compile Garza Tello y Asociados' invoices and forward same to counsel; follow-up conference with counsel regarding fees and expenses discrepancies | 1,595.00 |
| 08/16/16 | J. D. Wagner | 0.50 | Review and analyze communications concerning status of attorneys' fees affidavits establishing fees charged to Ranger by other legal providers in connection with the case; review and analyze correspondence from G. Silva concerning extension of deadline to release final reasoned award; review and analyze written update from Tradeco regarding status of claims with Pemex; | 157.50 |

# K&L GATES

| DATE | NAME | HOURS | DESCRIPTION | AMOUNT |
|------|------|-------|-------------|--------|
| | | | communicate with J. Lam ▮▮▮▮ | |
| 08/17/16 | J. H. Hines | 1.60 | Emails regarding ▮▮▮ ▮▮▮ billing records; begin review of same; conference call regarding Tradeco submission on status of Pemex claim; further emails regarding Pemex claim report | 640.00 |
| 08/17/16 | J. F. Sullivan | 1.20 | Review supplemental submission from counsel for Tradeco; strategy conference regarding response; prepare ▮▮▮▮ | 810.00 |
| 08/17/16 | M. H. Truong | 2.70 | Attention to ASG invoices and forward same to counsel; ▮▮▮ ▮▮▮ update fee and expense spreadsheet; follow up conference with counsel regarding same; continue to review hearing transcript and attention to E. Moses' testimony regarding his services and charges for same | 742.50 |
| 08/18/16 | J. H. Hines | 1.60 | Emails and document review for fee/cost affidavits; further review of attorney's fee recovery provisions; conference with John Sullivan regarding ▮▮▮▮ | 640.00 |
| 08/18/16 | J. F. Sullivan | 1.40 | Several conferences regarding additional evidence to provide Panel, strategy; correspondence to J. Lam regarding same; prepare response to Panel; prepare correspondence regarding rationale; conference with J. Hines regarding same, recoverable costs under the Guarantee | 945.00 |
| 08/18/16 | M. H. Truong | 0.20 | Attention to upcoming Initial Conference; conference with counsel regarding request to | 55.00 |

4.      During the same period Mr. Moses had contact with Tradeco personnel of a non-substantive nature.  The nature of these contacts was to simply stay in touch.  The total time I spent corresponding with Mr. Moses on these non-substantive matters during this period was approximately 15 hours.  Due to the non-substantive nature of these contacts, the time Mr. Moses would have spent was likewise limited and approximately equal to the time I spent on them.

5.      I declare under penalty of perjury that the foregoing is true and correct and based on my personal knowledge or knowledge I gained in my capacity as a representative of Tradeco.

_____
EDUARDO ANDRES BENTON ZAVALLA
Date:_____

Fees incurred prior to any Actionable Default Before the Tribunal held to be July 31, 2014

| Name | Fee Sought | Fees Incurred before 7/31/14 | Difference |
|---|---|---|---|
| Gardere | $29,007.80 | -$29,007.80 | $0.00 |
| Garza | $16,032.36 | -$2,088.00 | $13,944.36 |
| Moses Fees | $325,000.00 | -$60,000.00 | $265,000.00 |
| Moses Exp. | $76,817.34 | -$13,663.54 | $63,153.80 |
|  |  |  |  |
| Totals | $446,857.55 | -$104,759.34 | $342,098.16 |


EXHIBIT
tabbies
H

**Fees and Costs Associated with Garnishment Suits**

| Name | Fee Sought | Expended on Garnishments | Difference |
|---|---|---|---|
| K & L Gates | $1,555,752.89 | -$242,939.06 | $1,312,813.83 |
| Control Risks | $13,514.41 | -$13,514.41 | $0.00 |
| Phenix | $990.00 | -$990.00 | $0.00 |
| Total | $1,570,257.30 | $257,443.47 | $1,312,813.83 |

**Further Breakdown of K&L Gates Fees Associated with Garnishments**

| K&L Gates LLP | | | | | | |
|---|---|---|---|---|---|---|
| | | | | Fees (highlighted in yellow) | | |
| Invoice Date | Invoice Number | Total Fees | 9% Fee Discount Applied | Total Amount | 9% Fee Discount Applied | Disputed Amount |
| Feb. 16, 2015 | 3058473 | $69,584.00 | (6,262.56) | $46,232.00 | (4,160.88) | $42,071.12 |
| March 17, 2015 | 3072290 | $41,693.00 | (3,752.37) | $26,762.50 | (2,408.625) | $24,353.88 |
| April 16, 2015 | 3086097 | $119,574.00 | (10,761.66) | $92,525.50 | (8,327.295) | $84,198.21 |
| May 18, 2015 | 3099169 | $40,795.50 | (3,671.60) | $20,182.00 | (1,816.38) | $18,365.62 |
| June 25, 2015 | 3113434 | $21,791.50 | (1,961.24) | $11,860.00 | (1,067.4) | $10,792.60 |
| July 21, 2015 | 3125144 | $80,014.00 | (7,201.26) | $47,861.50 | (4,307.535) | $43,553.97 |
| August 17, 2015 | 3136319 | $41,283.50 | (3,715.52) | $18,708.50 | (1,683.76) | $17,024.74 |
| Sept. 9, 2015 | 3145557 | $9,421.50 | (847.94) | $2,834.00 | (255.06) | $2,578.94 |
| Total | | $424,157.00 | (38,174.15) | $266,966.00 | (24,026.94) | $242,939.06 |

**K&L Gates Summary of Disputed Fees**

| Garnishment | $242,939.06 |
|---|---|
| Travel 50% | $7,372.50 |
| Clerical Work | $168,575.00 |
| Total | $418,886.56 |

**Summary of Non-arbitration Related Fees and Costs**

| Summary of Amount of Unrelated Fees and Costs to be Reduced | |
|---|---|
| K&L Gates | -$242,939.06 |
| Gardere | -$29,007.80 |
| Eddie Moses | -$401,817.34 |
| Albright Stonebridge | -$164,127.12 |
| Control Risks | -$13,514.41 |
| Phenix Investigations | -$990.00 |
| Total | $852,395.73 |

**Summary of Travel, Non-legal Clerical Work and Ambiguous Invoices of Mexican Law Firms**

| Summary of Amount of travel, non-legal clerical work and ambiguous invoices of Mexican law firms | |
|---|---|
| K&L Gates | -$175,947.50 |
| Garza | -$16,032.36 |
| Morales | -$24,800.00 |
| Total | $216,779.86 |

**Summary of Amounts Proposed to be Reduced before Reduction for Reasonableness**

| Summary of Amount Proposed to be Reduced | |
|---|---|
| K&L Gates | -$418,886.56 |
| Gardere | -$29,007.80 |
| Garza | -$16,032.36 |
| Morales | -$24,800.00 |
| Eddie Moses | -$401,817.34 |
| Albright Stonebridge | -$164,127.12 |
| Control Risks | -$13,514.41 |
| Phenix Investigations | -$990.00 |
| Total | $1,069,175.59 |

**Summary Total**

| | |
|---|---|
| Total Fees Sought | $2,533,198.73 |
| Disputed Fees | -$1,069,175.59 |
| Subtotal | $1,464,023.14 |
| Reduction for Unsuccessful Claim, duplication of efforts, etc. 29.3% | -$428,958.78 |
| Total | $1,035,064.36 |