# EXHIBIT
# A-14

## HOUSTON MARITIME ARBITRATORS ASSOCIATION

| | | |
|---|---|---|
| RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V., | § | |
| | § | |
| | § | |
| *Claimant,* | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| TRADECO INFRAESTRUCTURA, S.A. DE C.V.; GRUPO TRADECO, S.A. DE C.V. | § | |
| | § | |
| | § | |
| *Respondents.* | § | |

## <u>AFFIDAVIT OF JOHN F. SULLIVAN III IN SUPPORT OF ATTORNEYS' FEES</u>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared John F. Sullivan III, known to me to be the person whose name is subscribed below and who, being first duly sworn by me, upon his oath deposed and stated as follows:

1.      "My name is John F. Sullivan III.  I am over the age of twenty-one (21) years, of sound mind, and have personal knowledge of the facts set forth below and know them to be true and correct.  I am an attorney and partner at K&L Gates LLP (the "Firm") and lead counsel for Claimant Ranger Offshore Mexico, S. de R.L. de C.V. ("Ranger").

2.      As a partner of the Firm, I am an owner and am familiar with the manner in which its fee invoices and billing statements are created and maintained by virtue of my duties and responsibilities.  Attached to Ranger's Motion for an Award of Fees and Costs are true and correct copies of the Firm's billing statements with respect to this matter.  Minimal redactions have been made to protect attorney-client privileged and work product protected information. These are the original records or exact duplicates of the original records. The records were made at or near the time of each act, event, condition, or opinion set forth. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth.  The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.

3.      In determining whether the amount of the Firm's attorneys' fees and expenses incurred by Ranger were reasonable, customary, and necessary, I have taken into account the factors set forth by the Texas Supreme Court in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818-19 (Tex. 1997) and Section 1.04 of the Texas Disciplinary Rules of Professional Conduct.

**Experience, Reputation and Ability of Counsel**

4.       I have been licensed to practice law in the State of Texas since November of 1987.  My license has remained in good standing, and I have continuously practiced law in the State of Texas since 1987. I have handled matters in other jurisdictions in the United States as well. I have concentrated on commercial litigation, trials and arbitration. I have represented clients in numerous trials and arbitrations.

5.       The Firm was retained by Ranger to prosecute its claims against Respondents Tradeco Infraestructura, S.A. de C.V. ("Tradeco") and Grupo Tradeco, S.A. de C.V. ("Grupo") (collectively, "Respondents") relating to their breach of a BIMCO Time Charter Party ("Time Charter") and BIMCO Charter Party Guarantee ("Guarantee").  I am familiar with the usual and customary rates charged by attorneys in the relevant jurisdictions when performing work and rendering legal services of the nature and type which the Firm has provided on behalf of Ranger in this matter.  Given that the Firm has many offices and a centralized billing system, I have access to the hourly billable rate of each attorney who worked on this matter and have familiarized myself with the reasonableness of their rate for their particular jurisdiction and specialty.

6.       My law partner, Mr. Julius H. Hines, has provided considerable professional legal services in this matter.  Mr. Hines was licensed to practice law in the State of South Carolina in November of 1992 and has practiced in the State of South Carolina and in other jurisdictions since that date.  Mr. Hines has focused his practice in maritime and admiralty litigation as well as international arbitration.  Mr. Hines is a partner in the Firm's Charleston, South Carolina office.

7.       Ms. Elizabeth A. Gilman is a senior associate in the Firm's Houston office who has also participated significantly in Ranger's representation in this matter. Ms. Gilman was licensed to practice law in the State of Texas in November of 2009 and has continued to practice throughout the State of Texas and elsewhere since that date.  Since being licensed as an attorney, Ms. Gilman has concentrated her practice in the areas of commercial litigation and trial practice.

8.       Mr. John Devin Wagner is an associate in the Firm's Houston office who has also provided substantial assistance in this matter.  Mr. Wagner was licensed to practice law in the State of Texas in May of 2014 and has continued to practice throughout the State of Texas since that date.  Since being licensed as an attorney, Mr. Wagner has concentrated his practice in the area of commercial litigation and trial practice.

9.       Ms. Mai H. Truong has provided significant paralegal services in this matter.  Ms. Truong is a senior paralegal in the Firm's Houston office. Since being certified as a paralegal, she has focused her practice in the broad area of litigation and trial practice assistance

10.   In addition to the legal professionals listed above, other Firm personnel provided assistance in this matter.  I have reviewed the fee statements which contain the charges of each of these attorneys as well. The assistance of these other professionals was requested on an as-needed basis where the cost incurred would be appropriate and not result in a duplication of efforts.   In addition, the Firm used personnel with lower billing rates for discrete projects when appropriate. I am familiar with the services performed by the timekeepers listed in the Firm's statements, which are attached to Ranger's Motion for an Award of Fees and Costs.  I have

educated myself as to the reasonableness of the fees charge by those personnel based on their respective jurisdiction.

11.   It is my opinion that the attorneys and legal professionals who provided legal services in this matter meet or exceed the required level of skill and have the requisite skills to perform competently the services that are the subject of this affidavit.

## Nature and Extent of Legal Services Provided

12.   On March 10, 2015, Ranger filed its Original Verified Complaint and Application for Interim Relief in the United States District Court for the Southern District of Texas, seeking damages resulting from Respondents' breach of the Time Charter and the Guarantee. Ranger also sought an order for maritime attachment under Rule B of the Supplemental Rules of the Federal Rules of Civil Procedure. Ranger filed two similar actions in the federal courts of Florida and New York. On March 12, 2015, Ranger filed this arbitration against Respondent Tradeco in accordance with the Time Charter's dispute resolution provision. Tradeco subsequently filed a motion to compel arbitration in the federal court action pending in Texas. In the motion, Tradeco argued that Ranger's claims against Grupo (for breach of the Guarantee) belonged in this proceeding because they derived from Ranger's claims against Tradeco (for breach of the Time Charter). The court granted Tradeco's motion and, with the exception of Ranger's maritime attachment claim, compelled all claims against Respondents to this arbitration.

13.   Ranger served its notice of arbitration on March 12, 2015 duly appointing Mr. Aníbal Sabater as its party-appointed arbitrator.   The HMAA Rules do not contain a recommended time period for a party to respond to a demand for arbitration.   Nonetheless, Respondents refused to answer and/or confirm their party-appointed arbitrator in a reasonable amount of time.   Only after Ranger sent two letters to the HMAA complaining of its inability to progress the arbitration without a complete arbitral panel, did Respondents appoint their party-appointed arbitrator, Mr. Patrick Cooney, on May 27, 2015.   Similarly, Respondents delayed the appointment of the Panel's chair arbitrator by submitting late and unfounded objections to Ranger's recommended arbitrators.   This resulted in the Panel finally being constituted with the appointment of Mr. Eugene J. Silva on July 8, 2015—119 days after Ranger filed its demand. Respondents' resistance delayed the formation of the arbitral panel and made the appointment process substantially more expensive.

14.   In the Arbitration, the Firm expended significant resources prosecuting Ranger's claims to a favorable award after Final Hearing. During the pre-hearing phase, the Firm reviewed and analyzed the parties' documents in the federal court litigation, prepared numerous pleadings, conducted legal research, prepared and responded to discovery, produced, reviewed, and analyzed thousands of pages of documents (many requiring translation from English to Spanish), conducted and defended eight (8) depositions, prepared and defended numerous dispositive and non-dispositive motions, conducted meetings with several experts, analyzed expert reports, and prepared for and attended numerous telephonic hearings.

15.   In the days and weeks preceding the hearing, the Firm prepared comprehensive pre-hearing briefs addressing all claims and defenses raised in this matter, prepared and finalized nine (9) witness statements, organized and attended many conferences with Ranger and its

principals, prepared and finalized outlines for direct and cross-examination, organized and analyzed hundreds of exhibits and multiple exhibit lists, and coordinated the form and substance of an interactive hearing presentation with assistance from a third-party vendor.

16.     During the Final Hearing, the Firm conducted direct and cross-examination of multiple witnesses, addressed various evidentiary issues, including Respondents' unexpected and undisclosed submissions to the Panel, coordinated live and video appearances from eleven (11) fact and expert witnesses, and generally presided over the execution of Ranger's hearing presentation plan. Following the hearing, the Firm prepared post-hearing briefing on a number of issues requested by the Panel.  Ranger is still incurring fees and costs in seeking to recover its damages.

### Customary Fee Charged for Legal Services

17.     The hourly rates charged by the Firm for the work performed in connection with these matters are rates customarily charged for professional legal services of this kind.   The fees that Ranger is seeking to recover are based on the Firm's normal hourly charges for work performed on matters of this kind at the time the services were rendered. Taking into consideration the time and labor spent, the nature and extent of the representation and the complexity of the issues involved, the amount of attorneys' fees and expenses incurred in the preparation of these claims are customary and reasonable.

### Novel and Difficult Questions Presented

18.     It is difficult to relate this proceeding to other "similar" cases in that each legal dispute involves a different mix of problems and issues. That being said, this matter required the resolution of an unusual number of incidental or collateral legal arguments introduced by Respondents throughout this proceeding. As a result, what appeared to be a relatively straight forward breach of charter party case was transformed into a convoluted, multi-faceted dispute. Claimants raised several counterclaims and numerous defenses which were confusing and fact-intensive.   The case was further complicated by a substantial amount of Spanish language documents and Respondents' Spanish-speaking witnesses.   All of Respondents' depositions had to be taken in Spanish with several Spanish-to-English interpreters. Respondents defended Ranger's claims for unpaid charter hire under the doctrine of *force majeure* by claiming that the alleged decisions and conduct of Tradeco's third-party client, Petróleos Mexicanos ("Pemex") caused Tradeco to default.  To combat this defense, counsel for Ranger was forced to immerse themselves into the claims administration process between Tradeco and Pemex. This required an extended and thorough review of technical and legal documentation generated entirely in Spanish.

19.     Respondents also attempted to evade liability by claiming that Ranger breached the Time Charter by delivering an unseaworthy vessel. To successfully defeat these allegations, the Firm was forced to perform an extremely fact-intensive review of ship logs and daily reports along with conducting many witness interviews. The process was further complicated when Respondents attempted to bring surprise evidence and witnesses before the Panel on the subject. Before concluding the hearing, the Panel asked the parties to research and submit case law in which a court or tribunal found an unseaworthy condition because a vessel emitted excessive

smoky exhaust.   No such case law was found or submitted—which is indicative of the novelty of the Respondents' position.

20.     Respondents also asserted several counter-claims, including one for Ranger's alleged "bad faith" breach of confidentiality. In presenting this claim, Respondents argued that Ranger's decision to file its federal garnishment actions interfered with Respondents' construction contracts and ultimately caused Respondents to lose certain work. Respondents' theory of causation and description of damages were difficult to understand and address both before and during the hearing. Respondents were ambiguous about the nature and number of the contracts lost and could not establish a causal nexus between Ranger's garnishment actions and the loss of their work. Nonetheless, it required significant work on Ranger's part to try to understand this counter-claim and contest it by presenting controverting evidence.

21.     Respondents also attempted to use procedural maneuvers to complicate and/or disrupt this proceeding.   For instance, in March of 2015, Respondents filed a motion to compel arbitration in the federal court action then-pending in Houston, which resulted in this arbitration proceeding.   Roughly one year later, after the parties and the Panel had devoted numerous hours and substantial resources toward the resolution of this matter in this arbitration, Respondents challenged the Panel's jurisdiction to conduct the arbitration by filing a motion to dismiss. Respondents argued that the parties' claims and defenses were subject to exclusive jurisdiction in Mexico pursuant to a "Master Services Agreement," which had never been made part of any of the pleadings.   Ranger was forced to respond to this motion with extensive briefing on the contractual enforceability and application of this alleged agreement.   Respondents' motion was eventually denied.

22.     The preceding paragraphs are merely descriptive (and not all-inclusive) of the types of claims, defenses and tactics used by Respondents which required an unusual amount of effort and Firm resources to combat and rebut.

23.     This matter also involved some complexity relating to the calculation of Ranger's recoverable damages. Ranger commenced this action under three contractual documents that combined to form the basis of Respondents' liability: The Time Charter, Amendment No. 1 to the Time Charter (the "Amendment"), and the Guarantee. Ranger's claims against Tradeco arose from the former two documents, while its claims against Grupo arose from the Guarantee. The Time Charter and Guarantee applied different interest rates to the principal balance of unpaid sums. To account for these differences, the Firm calculated and prepared separate damage models for each Respondent. The Firm also addressed various issues concerning the proper calculation of Respondents' "stipulated" debt on the one hand and the "disputed" debt on the other. The stipulated debt reflected the unpaid charter hire and related expenses that Tradeco incurred during the first hire period. The disputed amount reflected the unpaid charges incurred during the second. Neither party disputed the stipulated debt (as reflected by the terms of the Amendment). The Amendment stipulated the amount of the unpaid balance and included terms for re-payment. While these provisions lent some clarity to the calculation of damages, the terms of re-payment injected certain complexities that required substantial attention. In this regard, the Firm analyzed and addressed questions concerning the series of "pagares," or Mexican promissory notes, that Tradeco contractually agreed (but ultimately failed) to fully deliver to Ranger as required by the re-payment schedule. The Firm also prepared legal briefing and argument addressing what effect, if any, the "issued" pagares

had on the amount of Ranger's recoverable damages. This involved research and argument on a number of issues, including choice-of-law, the rules of contract interpretation and arbitral power.

24.      The calculation of Ranger's recoverable damages also involved careful consideration of questions relating to offset and credit. The parties specifically disputed whether Respondents were entitled to reduce the amount of Ranger's recoverable damages by the costs that Ranger's parent company avoided as a result of Tradeco's repudiatory breach of the Time Charter. In this regard, the Firm performed extensive legal research and briefing addressing the duty to mitigate damages in response to a charterer's repudiatory breach, with specific emphasis on how the absence of an available market affects this duty. Questions of offset and credit also required legal research and briefing on corporate separateness, contractual interpretation and concepts of equity.

## Time and Labor Involved & Opinion

25.      When considering the time committed to the legal services, the skill of the personnel performing the work, the questions presented and the details involved, I believe that the Firm's fees and expenses in the amount of $1,555,752.89 charged to Ranger have been reasonably and necessarily incurred in prosecuting Ranger's claims, both in federal court and arbitration, and defending Respondents' counter-claims in this proceeding. All such fees are customary and reasonable at the time and place rendered and were necessary to the representation provided to Ranger in this matter.

26.      This total includes costs and expenses relating to automated research, filing costs, arbitration costs, other alternative dispute resolution costs, travel costs, office services costs, mail and shipping costs, electronic discovery costs, and other costs that are more fully detailed at the end of each bill.

27.      Some of the taxable costs and litigation expenses (from service providers hired by the Firm or at its request) were billed directly to Ranger and, therefore, are not reflected in the Firm's invoices. The following chart reflects the additional costs and litigation expenses that were reasonably and necessarily incurred under the circumstances and should be paid by Respondents:

| Vendor | Total Billed |
|---|---|
| Arbitrator Fees and Expenses | $172,923.15 |
| LOC Marine & Engineering Consultants | $55,652.05 |
| CarlockDesign | $27,685.00 |
| Depo Texas | $12,124.77 |
| Kim Tindall & Associates, LLC | $250.00 |
| U.S. Legal Support | $1,269.34 |
| Consortra Translations - Translation Costs | $12,953.34 |
| Consortra Translations - Interpreter Fees | $8,075.00 |
| Veritext Legal Solutions - Court Reporting Fee | $612.47 |
| Veritext Legal Solutions - Certified Hearing Transcripts | $15,898.88 |

The fees and expenses included in this affidavit are not inclusive of all the fees and expenses Ranger seeks to recover from Respondents. However, the other fees and expenses are supported by other affidavits.

28.    All of the above requested fees and expenses were incurred in prosecuting Ranger's claims against Respondents, both in federal court and arbitration, and in defending against Respondents' counter-claims in this proceeding. Accordingly, taking into consideration the time and labor spent, the training and skill of the lawyers and other providers, the nature and extent of the representation, and the complexity of the issues involved, the attorneys fees, costs and expenses are reasonable and were necessary for this matter."

FURTHER, AFFIANT SAITH NAUGHT.

John F. Sullivan III

SUBSCRIBED AND SWORN TO BEFORE me this 2nd day of November, 2016, to certify which witness my hand and official seal.

Shameeza Y Alli
My Commission Expires
11/20/2016

Notary Public for the State of Texas

My Commission Expires:

11.20.2016