# EXHIBIT A-18

**Houston Maritime Arbitrators Association**

**Ranger Offshore Mexico, S. DE R.L. DE C.V. vs. Tradeco Infraestructura, S.A. DE C.V. and Grupo Tradeco, S.A. DE C.V.**

**ORDER**

Introduction

Ranger Offshore Mexico's ("Ranger" or "Claimant") demand for relief in this arbitration is currently found in its Second Amended Statement of Claim against Tradeco Infraestructura, S.A. and Grupo Tradeco, S.A. DE C.V. (sometimes referred to individually as "Tradeco" and/or "Grupo Tradeco" and collectively as "Respondents"). This order is based upon assertions made by Ranger in that pleading as well as its "Motion for Partial Summary Disposition on the Stipulated Amount of Respondents' Pre-Suspension Debt", initially filed on March 25, 2016 and a "Reply" subsequently filed on April 19, 2016. This order is also made in full consideration of arguments raised in opposition to Claimant's demands that are found in Respondents' Second Amended Statement of Defense and its independent Response to Ranger's motion. The Tribunal will not list all the attachments, exhibits and other materials referenced by the parties except to comment that they are multiple, detailed and were considered.

Background

Speaking in general terms, the parties agree on the basic occurrence and sequence of events that has given rise to this arbitration. Ranger and Tradeco entered into a charter party agreement using a commonly employed form for that purpose, called BIMCO (time charter for offshore service vessels code name: supplytime 2005), on January 31, 2014. Under the agreement, certain sums were due and payable to the vessel "owner" on a scheduled basis that the charterer failed to make or satisfied only in part. Thereafter, Ranger and Tradeco began discussions that would lead ultimately to a suspension of the charter's term of continuous employment on behalf of Tradeco as charterer and Ranger as disponent "owner" of the vessel.

A disponent owner is a person or entity not registered as the true owner of a ship, but rather one having control over its commercial operations through a bareboat or time charter. As such, it has the right, among others, to "dispose of" the ship by sub-chartering it to a third party.

It is worth pointing out that suspension of a charter is not an unusual turn of events in the broader scheme of things. The commercial realities of hiring a vessel to undertake offshore construction projects similar to the one contemplated here often carry the unintended or unforeseen risk of interruption, delay or even cancellation of the work assigned for completion. What Ranger and Tradeco sought to do in reaching an agreement to suspend their respective obligations under the charter party was to minimize the losses each was suffering or might suffer in the future because of circumstances concerning which, in this case, the parties

disagree. The document chosen to achieve this result is entitled "Amendment No. 1" to the charter.

By definition and description Amendment 1 modifies and extends the charter by introducing additional requirements, security for payment and a guarantee of performance. It contains a recitation of premises, an agreement to suspend the charter for a given period, and conditions dealing with costs and vessel operations. Also included is a list of remedies in the event of default under a schedule of payments the parties agreed were due and owing. Of particular note, this Amendment to the charter contains paragraph 2 which reads as follows:

"Charterers acknowledge that USD 5,948,558.15 in charterhire and related ancillary charges are past due and owing to Owners ("Past Due Charges")."

The Amendment refers at several locations to how the parties have agreed to satisfy this unpaid and acknowledged past due amount. One method calls for the issuance and delivery of unqualified and unconditional "Pagarés". The word "Pagaré" has been described as a document in the form of an agreement between two parties based on an understanding that one party will commit to paying the other party a sum certain at a specified time or on demand. In this way it is similar to a promissory note. Both Tradeco and Grupo Tradeco, its parent corporation, are identified as co-makers and co-obligors of these Mexican commercial instruments that could be called upon for satisfaction of charter hire and associated costs accrued from the initial date of the charter to the date of suspension.

In the event of default, paragraph 7 of the Amendment, in pertinent part, states:

"...[Ranger] shall have the immediate right to any or all of the following: suspend performance of the charter; withdraw the Vessel from the Charter; terminate the Charter; declare Charterers to be in fundamental breach of the Charter; and [Ranger] shall be free to pursue all of its rights and remedies, none of which have been waived by entering into this Amendment, including the right to arbitration of the charter; enforcement of the charter guarantee; enforcement of the Pagares, all in any sequence or combination of remedies, the choosing of any particular right or remedy in any sequence or combination shall not act as a waiver or relinquishment of any other."

Ranger asserts in its motion that it does not seek to enforce the conditions of the Pagares' themselves which are presumably governed by Mexican law. Rather, it seeks to enforce the Charter itself in reliance on the optional and co-extensive remedies afforded by paragraph 7.

The Amendment concludes as follows:

"No other rates, terms or conditions of the Charter are changed by this Amendment. Other than the Charter, this Amendment, and the Parent Company Charter Guarantee, there are no other agreements, oral or written, related thereto."

It bears repeating that the amounts Respondents acknowledged as being in arrears when Amendment 1 was executed on June 13, 2014 were "Past Due Charges". That is, they represented unpaid daily charter hire that had accumulated from the inception of the charter, up to presumably the point when the Amendment was executed.

Ruling

The Tribunal has considered Ranger's Motion for Partial Summary Disposition seeking, among other things, a declaration that the stipulated amount of Pre-Suspension debt found in paragraph 2 of Amendment 1 of the Charter is a valid and enforceable claim in this arbitration, together with arguments and authorities for and against that proposition.

The Motion is **GRANTED** to the extent we hold that Ranger had a valid and enforceable claim to the stipulated amount of debt in paragraph 2 at the time Amendment 1 was signed.

Based upon the current state of the record, the Tribunal believes and therefore concludes for the purpose of this motion that Tradeco breached the Charter Party by failing to satisfy the stipulated amounts of Amendment 1 in accordance with the schedule of payments therein.

To the extent the pagarés described in Amendment 1 were validly executed and delivered by Tradeco, Ranger's right of recovery is under Mexican law governing these commercial instruments and such right may be subject to exclusive Mexican jurisdiction. This Tribunal has no jurisdiction to enforce them.

To the extent the pagarés were not validly executed and delivered by Tradeco in breach of the agreement to do so, Ranger has the right to recover the stipulated amounts represented by such undelivered pagarés from Tradeco and/or to enforce its rights against Grupo Tradeco's Guarantee found in Amendment 1.

Based upon the current state of the record, the Tribunal believes and therefore concludes for the purpose of this motion that the choice of Mexican law and Mexican jurisdiction contained in the pagarés is enforceable. The Tribunal, thus, lacks jurisdiction over a request, claim, or defense from a party falling within the scope of the pagarés' Mexican jurisdictional clause. This advisory is offered not because Claimant sought such a ruling, but to avoid confusion inherent in granting its motion which deals with a commercial instrument presumably governed by foreign law and subject to a foreign jurisdiction.

The Tribunal cannot pass judgment upon, and therefore defers to whatever final award is rendered, whether the stipulated amount should be reduced by application of any affirmative claim, set off or defense raised by Respondents. Presently, there is lacking a sufficient factual basis for making a determination of that character. Likewise, an assessment of applicable post-Suspension interest is not possible at this time.

**April 30, 2016**

_____

**Gene Silva, Chair**
**For the Panel**