UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANGER OFFSHORE MEXICO, S. DE R.L. DE C.V., | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-00635 |
| | § | |
| GRUPO TRADECO, S.A. DE C.V., *et al*, | § § | |
| Defendants. | § § | |

## ORDER AND OPINION

Before the Court are Defendants Grupo Tradeco's (Grupo) and Tradeco Infraestructura's (Tradeco) Motion for Vacatur of the Arbitration Award (Document No. 64) and Plaintiff Ranger Offshore Mexico's (Ranger) Response in Opposition to Defendants' Motion (Document No. 69). After considering the pleadings, the record, and the applicable law, the Court concludes that Defendants' Motion for Vacatur (Document No. 64) is DENIED.

### BACKGROUND

In 2014, Tradeco and Ranger entered into an agreement to charter the offshore vessel *MV Lewek Toucan* (the "Vessel") for Tradeco's use in a pipeline project in the Gulf of Mexico for Pemex Exploration and Production (Pemex). Under the charter agreement (the Charter), Tradeco and Ranger agreed to settle all disputes via arbitration. Accordingly, the Charter provides that:

> any and all differences and disputes of whatsoever nature arising out of this contract shall be put to arbitration in the City of Houston, Texas, pursuant to the Maritime Laws of the United States, The Federal Arbitration Act, and the Rules of the Houston Maritime Arbitrators Association, before a panel of three persons, consisting of one Arbitrator to be appointed by each of the parties hereto and the third by the two so chosen.

Document No. 64-1 at 14.

Unfortunately, the project was delayed after the Vessel was delivered to Tradeco in

February 2014, and the Vessel was never used on the pipeline project. As a result in June 2014, Tradeco and Ranger agreed to amend the Charter and suspend the payment of the charter hire effective on April 14, 2014. Document No. 64-3 at 1. The Charter would be suspended for not more than eighty-five days during which Ranger could charter the Vessel out to others. Document No. 64-3 at 1. Before Ranger and Tradeco executed the Amendment, Grupo signed a BIMCO Charter Party Guarantee (the "Guarantee") agreeing to unconditionally and irrevocably guarantee any amount due from Tradeco to Ranger in connection with the Charter at a 12% interest rate. Document No. 64-2 at 1–2. But, by April 14, 2014, Tradeco was in default under the Charter in the amount of $5,948,558.15. Document No. 64-3 at 1.

Under the Amendment, Tradeco agreed to issue six unconditional and unqualified "Pagarés," which are similar to promissory notes. Document No. 64-3 at 1. Tradeco and Grupo (collectively "Defendants") acted as co-makers and co-obligors on each Pagaré to be paid as follows: (1) $600,000 payable no later than June 30, 2014; (2) $1,189,711.63 payable no later than July 31, 2014; (3) $1,189,711.63 payable no later than August 29, 2014; (4) $989,711.63 payable no later than September 30, 2014; (5) $989,711.63 payable no later than October 31, 2014; and (6) $989,711.63 payable no later than November 28, 2014. Document No. 64-3 at 1. Thereafter, Tradeco made three payments to Ranger totaling $1.33 million, which was credited against the amount owing as of April 14, 2014, bringing the amount due as of that date to $4,618,558.15. Tradeco also delivered two Pagarés to Ranger; the other four Pagarés were signed, but they were never delivered to Ranger.

During the suspension period, Ranger chartered the vessel out to another company, which complained about some problems with the Vessel's engine exhaust system. After the suspension period ended and the Vessel was returned to Tradeco, Tradeco challenged the Vessel's

seaworthiness and refused to accept its redelivery.

## PROCEDURAL HISTORY

On March 10, 2015, Ranger filed this action asserting breach of contract and sought damages against Defendants for both the amount of lost charter hire and the accrued interest and attorneys' fees. Defendants filed and answer and counterclaim arguing unseaworthiness, breach of contract, force majeure, and frustration of commercial purpose. On March 12, 2015, Ranger commenced arbitration against Tradeco and asked the Court to keep the case open pending the outcome of the arbitration. The Court later ordered that Ranger's claims against Grupo be decided in the arbitration as well, and stayed the case until the arbitration concluded.

On September 30, 2016, after several months of discovery and a nine-day hearing, the three-member arbitration panel issued a Partial Final Award in favor of Ranger, found that Defendants were jointly and severally liable to Ranger for $16,491,713.88 in principal and interest as of the date of the award, and found that Grupo was separately liable for an additional $1,107,266.88 in interest. The Panel did not decide issues relating to fees, costs, and the Mexican value added tax (VAT), but reserved those issues for a separate phase of the arbitration.

After the parties completed briefing and discovery on the leftover issues, the Panel issued its Final Award on January 30, 2017, awarding Ranger $17,598,980.76[1] in damages and awarding Ranger $1,963,222.10 in attorneys' fees. Document No. 69-6 at 12. The Panel further held that because the parties had come to an agreement as to the Mexican VAT, the Panel declined to rule on the issue.

The Panel remained impaneled for another thirty days to hear any motions for clarification or correction of clerical errors. Defendants submitted a Motion for Correction and Clarification to the Panel on February 22, 2017. The motion requested a correction of a

---

[1] This amount includes the panel's Partial Final Award.

typographical error affecting a date and a clarification from the Panel on its use of the word "executed" when discussing the Pagarés in the Partial Final Award. In response, the Panel issued a clarification order on March 1, 2017, correcting the typographical error and clarifying the meaning of "executed." After issuing the clarification order, the Panel declared its status "Functus Officio."

## STANDARD OF REVIEW

When reviewing an arbitration award, the Court is "very deferential" to the arbitrators' decision. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994). "The Court must sustain an award 'as long as the arbitrator's decision draws its essence from the contract.'" *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015) (quoting *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013)).

Under the Federal Arbitration Act, there are only four grounds upon which a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). The party moving to vacate an arbitration award bears the burden of proof. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*, 364 F.3d 274, 288 (5th Cir. 2004). Further, "all doubts implicated by an award must be resolved in favor of the arbitration." *Rain CII Carbon, LLC v. ConocoPhillips,* 674 F.3d 469, 474 (5th Cir. 2012); *see also Taylor v. Univ. of Phoenix/Apollo Grp.,* 487 F. App'x 942, 944–45 (5th Cir. 2012).

## DISCUSSION

### A. Attorneys' Fees

Defendants put forth several arguments in support of their motion to vacate. First, Defendants argue that the Panel exceeded its authority in its calculation of attorneys' fees because it awarded fees paid by Ranger Offshore, Inc. (ROI), Ranger's parent company. Document No. 64 at 6. According to Defendants, ROI was not a party to the arbitration, and therefore, it should not have received attorneys' fees. Ranger argues that the fees and expenses paid by ROI were incurred by Ranger during the course of the arbitration. Document No. 69 at 10.

"It is well-established that courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005) (citing *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989)). But, the Court will sustain the Panel's award, even if it disagrees with the Panel's decision, so long as the Panel's decision "'draws its essence' from the contract." *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).

Here, the Charter states that "any and all differences and disputes of whatsoever nature arising out of this contract shall be put to arbitration . . . . Awards made in pursuance to this Clause may include costs, including a reasonable allowance for attorney's fees." Document No. 69-2 at 15. The Guarantee also provides for payment of fees "including any recoverable costs and expenses that may be incurred by [Ranger] in enforcing any of their rights under or in connection with the Charter Party, whether in legal proceedings or otherwise." Document No.

69-4 at 2. The Guarantee further provides that Grupo "will reimburse [Ranger] on demand for all costs, charges and expenses incurred by [Ranger] in maintaining, exercising or enforcing any of their rights or powers under the Guarantee." Document No. 69-4 at 4.

Defendants argue that the attorneys' fees awarded to Ranger were actually incurred by ROI and, therefore, were improperly awarded to Ranger by the Panel. While the invoices presented to the Panel by Ranger's attorneys were sent to ROI for payment, Ranger was the entity that incurred those fees and costs. At the heart of this issue is the difference between "paid" and "incurred." According to the American Heritage Dictionary, "paid" means "[t]o give money to in return for goods or services rendered," and "incurred" means "[t]o become liable or subject to as a result of one's actions." *Incur*, *Pay*, THE AM. HERITAGE DICTIONARY at 891, 1295 (5th ed. 2011). Ranger incurred the costs and fees by retaining the attorneys to represent it throughout the arbitration. ROI merely picked up the tab; it never utilized the services of Ranger's attorneys during the arbitration because ROI was not a party to the arbitration. Accordingly, even though ROI paid for the attorneys' services, Ranger was the entity that incurred the costs of those services, and the Panel did not exceed its authority in granting its award of fees and costs to Ranger. *See Cintas Corp. v. Perry*, 517 F.3d 459, 468–69 (7th Cir. 2008) (holding that the defendant incurred the attorneys' fees awarded even though those fees were paid by his new employer); *Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 111 F.3d 588, 591 (8th Cir. 1997) ("Although [parent company] paid some of [subsidiary's] attorneys' fees during the course of the lawsuit, this does not change the fact that the attorneys represented [subsidiary] and that [subsidiary] was liable for their fees."); *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 875 F. Supp. 165, 179 (S.D.N.Y. 1993) ("[T]hough the fees were actually paid by [a third party], [Plaintiff] was among the parties to retain plaintiff's counsel . . . , and

would have been liable for its fees had the [third party] refused to pay.").

### B. Final and Definite Award

Defendants also argue that the arbitration award is not final. According to Defendants, the award is not final because the Panel left open the question of whether the prerequisites for the enforcement of the Pagarés were met. Defendants argue that the award is conditional on the enforceability of the Pagarés, which is governed by Mexican law and Mexican courts. Document No. 64 at 8.

Defendants' argument has no merit. "As a general rule, a final and definite arbitration award 'must both resolve all the issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award.'" *Lummus Glob. Amazonas S.A. v. Aguaytia Energy Del Peru S.R. Ltda.*, 256 F. Supp. 2d 594, 639 (S.D. Tex. 2002) (quoting *Puerto Rico Mar. Shipping Auth. v. Star Lines Ltd.*, 454 F. Supp. 368, 372 (S.D.N.Y. 1978)); *see also* 9 U.S.C. § 10(a)(4) (mandating that a court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made"); *In re Texans CUSO Ins. Grp., LLC*, 421 B.R. 769, 782 (Bankr. N.D. Tex. 2009) ("In this context, the terms 'mutual' and 'final' require that the arbitrator must have resolved the entire dispute (to the extent possible) submitted for resolution, while 'definite' requires that the award be sufficiently clear and specific to be enforced."). Here, Defendants argue that the Pagarés prevent the award from being final. But that argument fails because the Panel addressed the Pagarés.

In the Partial Final Award, the Panel held that because Tradeco failed to deliver four Pagarés, those Pagarés were not enforceable by Ranger. Document No. 69-5 at 33–34. As for the other two Pagarés, the Panel recognized that those were delivered and enforceable under

Mexican law and subject to exclusive Mexican jurisdiction. Document No. 69-5 at 15. As a result, the Panel held that it did not have jurisdiction over the two Pagarés that were delivered and did not include the amount they represented as part of the award. Document No. 69-5 at 16 ("However, as noted in our Order of April 27, the two Pagarés that were actually delivered to Ranger can only be enforced under Mexican law in a Mexican tribunal and cannot be included as part of this Award."). The Panel stated that Ranger retained its rights to collect on the two Pagarés by seeking enforcement in Mexico. It did not tie the outcome of arbitration award to the enforcement of the remaining Pagarés. Therefore, the arbitration award is not conditional on the enforceability of the Pagarés.

### C. Postponement

Finally, Defendants argue that the award should be vacated because the Panel refused to postpone the arbitration hearing. Less than two months before the arbitration hearings, Defendants filed a motion to postpone the arbitration with the Panel. Defendants argued that two "Mexican Agreements" mandated that the arbitration take place in Mexico under Mexican law. Both agreements predate the Charter, and Ranger alleges that one of the agreements never went into effect.

In denying Defendants' motion, the Panel noted that Defendants had participated in over a year's worth of pre-arbitration proceedings and discovery without ever questioning the validity of the Charter's arbitration clause. The Charter's arbitration clause mandated arbitration in Houston, Texas, under the Maritime laws of the United States, the Federal Arbitration Act, and the Rules of the Houston Maritime Arbitrators Association, which directly contradicts the Mexican Agreements' arbitration clauses. Further, the Panel held that granting Defendants' motion would not only complicate "resolution of issues raised by all the parties to date . . . it

would also require significant additional preparation and the application of foreign law for which [the Panel] lack[ed] jurisdiction." Document No. 69-20 at 3.

"A court's review of an arbitrator's refusal to grant a postponement is confined to determining whether the refusal to postpone was a result of misconduct." *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 736 (N.D. Tex. 1997) (citing *Agrawal v. Agrawal*, 775 F. Supp. 588, 590 (E.D.N.Y. 1992)). The Court will vacate an arbitration award based on a failure to postpone the arbitration hearing only when the arbitrators' decision so affects the rights of a party that the party was deprived of a fair hearing. *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006). Defendants bear the burden of showing that there was no reasonable basis for the refusal. *Sungard Energy Sys. Inc. v. Gas Transmission Nw. Corp.*, 511 F. Supp. 2d 608, 613 (S.D. Tex. 2008). "If there is any reasonable basis for the arbitrator's decision not to postpone a hearing, the court should not intervene." *Mantle*, 956 F. Supp. at 736 (citing *DVC-JPQ Invs. v. Gershman*, 5 F.3d 1172, 1174 (8th Cir. 1993)).

Defendants have failed to show that there was no reasonable basis for the Panel's denial. In fact, the Court finds that there were several reasonable bases upon which the Panel could have denied Defendants' request, including the amount of the delay, the untimeliness of the request, or under the Panel's first agreed order where both parties agreed that there were "no pending or anticipated parallel or duplicative proceedings." Most importantly, though, Ranger brought suit and sought arbitration under the Charter, not the Mexican Agreements. Under those agreements, assuming arguendo that both are valid, Ranger agreed to provide assistance to Tradeco in securing a contract with Pemex. Ranger also agreed to provide equipment, personnel, and services to assist Tradeco in carrying out any project with Pemex. Under the Charter, on the other hand, Ranger agreed to charter the Vessel to Tradeco for its use on the pipeline project in

exchange for a $98,000 per day charter hire. The basis for the arbitration is Defendants' refusal to pay overdue amounts under the Charter, the Guarantee, and the Amendment. The Mexican Agreements were therefore irrelevant to the issues before the Panel, and the Panel reasonably denied Defendants' request to postpone the hearing.

CONCLUSION

As outlined in more detail above, Defendants failed to present any grounds for vacatur of the Panel's award. Accordingly, the Court hereby

**ORDERS** that Defendants' Motion for Vacatur of the Arbitration Award (Document No. 64) is **DENIED**. It is further **ORDERED** that the arbitration award, which includes the Partial Final Award, dated September 30, 2016; the Final Award, dated January 30, 2017; and the Disposition of Motion for Correction and Clarification, dated March 1, 2017, is **AFFIRMED**.

SIGNED at Houston, Texas, this 7th day of February, 2018.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE